Hearing Date and Time:   November 18, 2015 at 9:45 a.m.
Objection Date and Time: November 11, 2015 at 5:00 p.m.

Jil Mazer-Marino, Esq.
Jessica G. Berman, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Email: jmazermarino@msek.com
       jberman@msek.com

*Proposed Counsel for Interim Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

ORGANIC AVENUE, LLC

                        Debtor.
------------------------------------------------------------X

Chapter 7

Case No. 15-12787 (REG)

## CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER FIXING THE ADMINISTRATIVE EXPENSES TO BE PAID FROM PROCEEDS FROM THE SALE OF PACA TRUST ASSETS

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for the bankruptcy estate of Organic Avenue, LLC (the "**Debtor**"), by her proposed counsel, Meyer, Suozzi, English & Klein, P.C., hereby moves (the "**Motion**") this Court, pursuant to sections 105(a) and 704(a)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") for an order fixing the commissions, fees, and expenses to be paid from proceeds of the sale of assets impressed with a trust under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("**PACA**"). In support of the Motion, the Trustee sets forth as follows:

### OVERVIEW

1.       Prior to filing its bankruptcy petition in this case, the Debtor was in the business

of manufacturing and retailing juices and cleanses. For this reason, the Debtor made substantial wholesale purchases of perishable produce. Based upon her preliminary investigation into the Debtor's affairs, the Trustee believes that the Debtor may be classified as a "dealer" pursuant to PACA and that, due to the Debtor's unpaid produce purchases, certain, or possibly all, of the Debtor's assets may be impressed with a statutory trust in favor of unpaid PACA creditors.

2. While assets impressed with a PACA trust are not property of the estate and will only benefit PACA creditors, the Trustee is required to administer such assets. The Trustee's efforts to monetize such assets will result in certain administrative expenses, including: the fees and expenses of a marketing and sales agent and auctioneer to liquidate the Debtor's assets; the fees and expenses of the custodian to secure the assets pending the sale; the fees and expenses of counsel to obtain court approval of asset sales; the commissions and expenses of the Trustee herself; court filing fees; rent and certain utilities; and, insurance.

3. However, as set forth more fully below, relevant case law provides that a trustee's fees and expenses incurred in connection with the administration of PACA trust assets may be reimbursed out of the trust *res* itself.

4. By this Motion, the Trustee is requesting an order that establishes which administrative expenses may be paid from the sale of assets that are determined to be PACA trust assets. The Trustee is not seeking to fix the allowed amount of PACA claims at this time or to fix the dollar amount of administrative expenses to be charged against the PACA trust at this time. Rather, the Trustee only seeks an order that fixes the categories of administrative expenses that will be paid out of PACA trust assets. This is necessary to ensure that funds are available to pay the Trustee's professionals and to pay other administrative expenses in connection with liquidating assets.

5. Prior to filing this motion, the Trustee conferred with the Debtor's largest potential PACA creditors and each one has indicated that it would be amenable to certain costs of administration being paid from the PACA trust. However, due to (a) the uncertainty as to the existence of a PACA trust; (b) the uncertainty surrounding the identity of the PACA creditors; (c) the uncertainty regarding the dollar amount of the PACA claims; and (d) the urgent need to commence the liquidation of the Debtor's assets, the Trustee has not obtained consent to the specific proposal set forth in this Motion from all potential PACA creditors. Nevertheless, the Trustee will attempt to consensually resolve objections, if any, prior to any hearing on this Motion.

## JURISDICTION

6. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief are Bankruptcy Code sections 105(a) and 704(a).

## FACTS

A. **The Bankruptcy Case**

7. On October 15, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

8. On October 16, 2015, the Trustee was appointed as the interim chapter 7 trustee in the Debtor's case.

9. A meeting of creditors, pursuant to Bankruptcy Code section 341, is scheduled for November 9, 2015.

10. The Trustee has received numerous expressions of interest in the Debtor's leases, intellectual property, furniture, machinery and equipment. Based on those inquiries, the Trustee

believes that the Debtor's assets could have substantial value and has determined to run a sale process to maximize value.

11. It is critical that the Debtor's leases be disposed of as quickly as possible. The monthly rent under the leases is highly burdensome to the estate, and minimizing those administrative expenses will be critical to creating a pool of assets from which to make distributions to creditors.

12. By separate applications, the Trustee is seeking authority to retain appropriate professionals to run a sale process and to safeguard the estate's assets pending a sale.

### B.   The PACA Claims

13. Prior to the Petition Date, the Debtor was in the business of manufacturing and retailing juices, cleanses and food items. For this reason, the Debtor made substantial purchases of perishable produce. At this time, it appears that certain of those purchases remain unpaid, possibly resulting in the impression of a PACA trust on the Debtor's assets.

14. The Trustee reviewed the Debtor's schedules with the Debtor's in-house accountant to identify creditors that sold perishable agricultural goods to the Debtor. Based on the Debtor's schedules, the Trustee believes that potential PACA claims are less than $350,000.00. Ace Natural, Four Seasons and Albert's Organics, scheduled as having claims of $122,235.00 and $177,906.00 and $28,763.00, respectively, are believed to be the three largest potential PACA creditors, albeit, the Trustee has not had the opportunity to review their claims and has not determined which portion of their claims are claims for perishable food items.[1] The

---

[1] On the Petition Date, the Debtor had inventory on hand consisting primarily of perishable food items. The Trustee, in consultation with her proposed custodian, determined the inventory was of *de minimis* value mainly due to the likelihood of imminent spoliation. As the inventory could not be monetized, the Trustee invited the three largest potential PACA creditors to visit the Debtor's commissary to reclaim the items they sold to the Debtor. The Trustee permitted those creditors to reclaim or purchase inventory with the purchase price to be applied dollar for dollar against the creditor's PACA claim, thus, obtaining value for inventory that could not be

Trustee believes there may be additional creditors that could be protected by PACA. Based on the Debtor's schedules, the Trustee believes that those additional PACA claims aggregate to less than $15,000.00.

15. The Trustee conferred with representatives from, or counsel for, each of Ace Natural, Four Seasons and Albert's Organics and informed each of the Trustee's intent to seek the relief requested herein.

C. **The Anticipated Administrative Expenses**

16. The Trustee believes that the following administrative expenses may be incurred in liquidating the assets and should be paid from the PACA trust, to the extent such trusts exists:

> (a) Commissions and Expenses of Keen Summit Capital Partners LLC ("**Keen-Summit**") and the Equipment Liquidator. By separate applications, the Trustee is seeking to retain Keen-Summit to market the estate's interest in leaseholds and intellectual property and to retain a liquidator to auction the Debtor's furniture, machinery, and equipment. The proposed compensation for Keen-Summit is a 5% commission from proceeds from the disposition of leases and intellectual property plus reimbursement of out of pocket expenses up to $10,000.00 (provided that Keen-Summit may incur additional expenses with the prior approval of the Trustee). Similarly, the liquidator's commission is anticipated to be 5% and may be reimbursed for certain expenses.
>
> (b) Fees and Expenses of MYC & Associates, Inc. ("**MYC**"). By separate application the Trustee is seeking to retain MYC as custodian for the estate to safeguard the Debtor's assets pending the sale. To date, MYC inspected and secured all of the Debtor's premises, responded to landlord inquiries, and assisted the Trustee in its negotiations with PACA creditors. MYC is expected to assist the Trustee in packing and storing the Debtor's books and records and disposing of the Debtor's remaining inventory.
>
> (c) Fees and Expenses of Meyer, Suozzi, English & Klein, P.C. ("**MSEK**"). The Trustee intends to retain MSEK as her general counsel to, among other things, represent the estate in connection with the sale of the Debtor's assets. MSEK's fees and expenses incurred in connection with the sale process would be paid from the PACA trust.
>
> (d) Commissions and Expenses of the Trustee. The Trustee's commissions, calculated under Bankruptcy Code section 326, and expenses for administering PACA trust assets.
>
> (e) Certain Post-Petition Rent and Utilities. The Trustee has received expressions of

---

sold and reducing the PACA trust claims. The Trustee anticipates that remaining inventory will be donated to charity.

interest from entities seeking an assignment of the Debtor's real property leases. In addition, the Trustee anticipates that certain leased premises may be used to stage the sale of the Debtor's furniture, machinery and equipment. Therefore, the Trustee is not prepared to surrender the leased premises and the estate may incur administrative rent charges in connection with the sale process. However, there is a risk that certain of the real property leases might not be successfully assumed and assigned. To the extent such premises are not assumed and assigned, the administrative expenses for rent would constitute an administrative expense to be paid from the PACA trust. Similarly, the Trustee requires that electric and other utilities remain on so that potential bidders can inspect the Debtor's premises and equipment. Accordingly, certain utility costs would be charged against the PACA trust as well.

(f) <u>Property Insurance Premiums</u>. Pending the sale of the Debtor's assets, the Trustee may need to insure the Debtor's premises to the extent the Debtor's insurance policies are insufficient. Such Premiums would constitute administrative expenses to be paid from the PACA trust.

## REQUEST FOR RELIEF

17. By this Motion, the Trustee seeks the entry of an order, substantially in the form attached hereto as Exhibit "A," that establishes the categories of the administrative expenses that will be charged against the PACA trust, to the extent such trust exists.

## BASIS FOR RELIEF

### A. PACA's Statutory Scheme

18. Congress enacted PACA to regulate the sale of "perishable agricultural commodities" and to provide protections to the sellers of those commodities. 7 U.S.C. § 499a; *see Endico Potatoes, Inc. v. CIT Group/Factoring*, 67 F.3d 1063, 1067 (2d Cir. 1995). The term "perishable agricultural commodity" is generally defined as "[f]resh fruits and fresh vegetables of every kind and character [whether or not frozen or packed in ice]." 7 U.S.C §499a(b)(4).

19. PACA applies to sales to commission merchants, brokers, and dealers. 7 U.S.C. § 499e(c). A "dealer," as such term is defined in PACA, is "any person engaged in the business of buying or selling in wholesale or jobbing quantities, . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b). Generally, a buyer of produce purchased

6

solely for sale at retail is not considered a dealer until the invoiced cost of such purchases in any calendar year exceed $230,000. *See In re Magic Restaurants, Inc.*, 205 F.3d 108, 117 (3d Cir. 2000); *Royal Foods Co. v. RJR Holdings Inc.*, 252 F.3d 1102 (9th Cir. 2001); *In re Old Fashioned Enterprises Inc.*, 236 F.3d 422 (8th Cir. 2001).

20. To properly assert a PACA claim, a seller of perishable agricultural commodities must provide written notice to the buyer of such goods of its intent to preserve the benefits of the PACA Trust. *See Merrill Farms Corp. v. H.R. Hindle & Co. (In re H.R. Hindle & Co.)*, 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993). This written notice can take one of two forms. A claimant can either (a) put the statutorily-mandated language on the face of its invoices (*see* 7 U.S.C. § 499e(c)(4)) or (b) provide written notice[2] to the buyer of fresh produce within thirty (30) days after the time payment is due (*see* 7 U.S.C. §499e(c)(3)-(4)).

21. A wholesale seller of perishable agricultural commodities to a merchant, broker, or dealer, who provides proper statutory notice of its intent to preserve its PACA rights is entitled to take part in a statutorily created constructive trust. *See* 7 U.S.C. § 499e(c)(2); *Rinella & Co. v. Bartlett (In re Bartlett)*, 397 B.R. 610, 620 (Bankr. D. Mass. 2008). This trust consists of a buyer's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products. *See* 7 U.S.C. § 499e(c)(2). Assets subject to a PACA trust are preserved as a non-segregated floating trust and may be commingled with non-trust assets. *See Rinella*, 397 B.R. at 620. To the extent that PACA trust assets are insufficient to satisfy the claims against the trust, qualified claimants are entitled to a pro rata distribution of the trust res. *See C&E Enters., Inc. v.*

---

[2] The notice must be filed with the Secretary of Agriculture within 30 calendar days after (i) expiration of the time by which payments are due in full pursuant to the applicable federal regulation (generally 10 days after acceptance or invoicing), (ii) expiration of the time by which payment must be made pursuant to a written agreement between buyer and seller, or (iii) receipt by the seller of notice of a dishonored check. 7 U.S.C. § 499e(c)(3).

*Milton Poulos, Inc. (In re Milton Poulos, Inc.)*, 947 F.2d 1351, 1353 (9th Cir. 1991); *Rajala v. Guar. Bank & Trust (In re United Fruit & Vegetable, Inc.)*, 191 B.R. 445, 447 (Bankr. D. Ks. 1996).

### B. The Application of PACA in Bankruptcy

22. In the event that a PACA trustee files for bankruptcy protection, the PACA trust assets are not property of the bankruptcy estate. *See Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 284 (2nd Cir. 1995); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993). As a result, the distribution of PACA trust assets to PACA claimants falls outside the priority scheme of the Bankruptcy Code. *See Tom Lange*, 81 F.3d at 284; *In re W.L. Bradley Co.*, 75 B.R. 505, 513 (Bankr. E.D. Penn. 1987). PACA claimants holding allowed PACA claims are, thus, entitled to payment from the PACA trust fund ahead of the Debtors' other creditors. *See Tom Lange*, 81 F.3d at 284. However, the disposition of PACA trust assets is subject to the jurisdiction of the bankruptcy court. *See Monterey Mushrooms, Inc. v. Carolina Produce Distribs., Inc. (In re Carolina Produce Distribs., Inc.)*, 110 B.R. 207, 211 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v. United Fruit and Produce Co. (In re United Fruit & Produce Co.)*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988).

23. Although the PACA trust assets are not property of the debtor's bankruptcy estate, a debtor's chapter 7 trustee is obligated to administer the PACA trust in the course of his or her duties. *See In re United Fruit and Produce Co.*, 119 B.R. 10, 13 (Bankr. Conn. 1990). The debtor's chapter 7 trustee, therefore, becomes the *de facto* PACA trustee of the PACA trust. *Id.* at 13 ("Upon the filing of the bankruptcy case, the trustee becomes the de facto trustee of the PACA trust.").

24. In the course of his or her administration of a PACA trust, a chapter 7 trustee may

incur administrative fees and expenses. "PACA contains no mechanism for administering and distributing trust assets," however, the administration of a PACA trust is governed by general trust law to the extent the statute does not provide otherwise. *In re United Fruit*, 119 B.R. at 13; *see American Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 41 (2d Cir. 2004) (noting that PACA trusts are governed by general principles of trust law). Pursuant to general trust law a trustee's fees and expenses incurred in connection with the administration of a trust may be reimbursed out of the trust res itself. *See C&E Enters.*, 947 F.2d at 1353 (holding that attorneys' fees may be paid out of PACA trust res because attorneys' efforts created a common fund for the benefit of the PACA creditor body); *Six L's Packing Co. v. Post & Taback, Inc.*, 132 F. Supp. 2d 306, 309 (S.D.N.Y. 2001). This is because the trustee's costs were incurred for the direct benefit of the PACA creditor body as a whole. *Fishgold v. Onbank & Trust Co.*, 43 F. Supp. 2d 346, 351 (W.D.N.Y. 1999) (attorney's recoverable from PACA trust under "common fund" exception to rule that each party bears its own costs).

25. Moreover, in the bankruptcy context, providing for PACA trust-related costs to be paid out of the trust res provides for an equitable result for the non-PACA creditor body, which is not entitled to a distribution from trust assets, and prevents a windfall for the PACA claimants, who would otherwise obtain free administrative services. *See In re United Fruit*, 119 B.R. at 13 ("The non-PACA creditors of this estate should not pay for these services and the trustee should not be forced to donate them."), *cited with approval in Bank of L.A. v. Official PACA Creditors' Committee (In re Southland + Keystone)*, 132 B.R. 632, 643 (B.A.P. 9th Cir. 1991) (reasoning that denying a bank its collection costs would be "unfair" to the bank and "provide a windfall to the PACA claimants").

### C. Payment of Administrative Expenses from the PACA Trust

26. As set forth above, prior to the Petition Date, the Debtor was in the business of retailing juices, cleanses, and other food products, may have purchased more than $230,000 of perishable agricultural products per year, and, therefore, may be deemed a "dealer" as defined by PACA and subject to PACA's requirements. Certain of the Debtor's suppliers of perishable agricultural products may be eligible to assert PACA claims if such suppliers provided the requisite notice.

27. In these early stages of the case, it is too soon to ascertain whether the Debtor is a "dealer" or the extent to which Four Seasons, Ace Natural, Albert's Organics or any of the other creditors have valid PACA claims. Moreover, due to the risk of mounting post-petition rent claims, the Trustee must liquidate the Debtor's assets as quickly as possible and should not wait for those issues to be resolved.

28. As set forth above, controlling case law permits the costs of administration to be deducted from the PACA Trust. The largest potential PACA trust creditors have indicated that they would be amenable to certain costs of administration being paid for from the PACA trust, to the extent such trust exists. However, fixing that agreement by order of this Court is necessary to insure administrative expense creditors that their claims will be paid if it is determined that all of the Debtor's assets are assets of a PACA trust. The Trustee believes allocating administrative expenses to the PACA trust is fair and reasonable because, absent a bankruptcy sale process, it is highly unlikely that any value could be realized from the Debtor's assets.

### D. Conclusion

29. The Trustee believes that the relief requested herein is well within the Court's equitable powers under Bankruptcy Code sections 105(a) and 704. Furthermore, the Trustee

believes the relief requested is fair and equitable to holders of PACA claims and is in the best interests of the Debtor's estate and creditors.

## NOTICE

30.   Notice of this Motion will be given to all creditors, all parties that filed a notice of appearance, the Debtor's bankruptcy counsel, and the United States Trustee for the Southern District of New York. The Trustee submits that, under the circumstances, no other or further notice is required.

**WHEREFORE,** the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit "A," fixing the commissions, fees, and expenses that may be paid out of the PACA Trust.

Dated: Garden City, New York
October 27, 2015

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Proposed Counsel for the Chapter 7 Trustee*

By: */s/ Jil Mazer-Marino*
Jil Mazer-Marino
Jessica Berman
990 Stewart Avenue, Suite 300
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Email: jmazermarino@msek.com
jberman@msek.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

**ORGANIC AVENUE LLC,**

Chapter 7

15-12787 (REG)

Debtor.
------------------------------------------------------------X

### ORDER FIXING THE ADMINISTRATIVE EXPENSES TO BE PAID FROM PROCEEDS FROM THE SALE OF PACA TRUST ASSETS

Upon the motion (the "**Motion**") of Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for Organic Avenue LLC, the above-captioned chapter 7 debtor (the "**Debtor**"), for an order under sections 105(a) and 704 of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order fixing the administrative expenses to be paid from proceeds from the sale of assets that are impressed with a trust under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a *et seq.* ("**PACA**"), and upon the record of the hearing (the "**Hearing**") held on November 18, 2015 with respect to the Motion; and any objections having been withdrawn, resolved, or overruled; and good and sufficient notice of the Motion and the Hearing having been given and no other or further notice of the Motion or the Hearing being required; and after due deliberation, and sufficient cause appearing therefor it is hereby

**ORDERED**, the Motion is granted to the extent set forth herein; and it is further

**ORDERED**, that the proceeds from the sale of assets that are impressed with a trust under PACA shall be first used to pay (a) the commissions, fees and expenses of the Trustee, and the sales and marketing agent, liquidator, and custodian retained by the Trustee on behalf of the estate; (b) the fees and expenses of Trustee's counsel, to the extent such fees and expenses relate to the sale of the assets; (c) administrative expenses for rent and utilities incurred pending the

sale of the assets; and (d) insurance premiums, if any, incurred to insure the assets pending conclusion of the sale process.

Dated: New York, New York
      November ___, 2015

                                              _____
                                              HON. ROBERT E. GERBER
                                              UNITED STATES BANKRUPTCY JUDGE