**Jil Mazer-Marino, Chapter 7 Trustee**
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**Telephone: (516) 741-6565**
**Facsimile: (516) 741-6706**
**jmazermarino@msek.com**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**In re:**

**ORGANIC AVENUE LLC,**

**Chapter 7**

**15-12787 (REG)**

**Debtor.**
-----------------------------------------------------------------X

**TRUSTEE'S APPLICATION FOR AUTHORITY TO RETAIN AND
EMPLOY KEEN-SUMMIT CAPITAL PARTNERS LLC AS MARKETING
AND SALES AGENT FOR THE ESTATE'S REAL PROPERTY LEASES
AND INTELLECTUAL PROPERTY**

**TO THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**:

Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for the above-captioned chapter 7 debtor (the "**Debtor**"), by this application (the "**Application**") seeks entry of an order under sections 105(a), 327(a), 328 and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), authorizing the Trustee's retention of Keen-Summit Capital Partner LLC ("**Keen-Summit**"), as sales and marketing agent for the Debtor's estate's real property leases and intellectual property. In further support of the Application, the Trustee respectfully represents as follows:

# BACKGROUND

### A.     The Bankruptcy Case

1.     On October 15, 2015, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2.     On October 16, 2015, the Trustee was appointed the interim chapter 7 trustee of the Debtor's estate pursuant to Bankruptcy Code section 701(a).

### B.     The Debtor's Business and Assets

3.     The Debtor was in the business of producing and retailing "grab and go" organic or all natural juices, cleanses, and food items. The Debtor produced its products at its commissary located in Long Island City, New York and sold its products at retail boutiques in prime Manhattan locations that operated under the name Organic Avenue. The Debtor leases the commissary space and the retail locations.

4.     In addition to the Organic Avenue trademark, the Debtor owns other trademarks and other intellectual property, such as customer lists and domain names.

5.     The Debtor also owns furniture and equipment, including: bottling equipment; mixers; filling equipment; juicers; refrigeration equipment; handling equipment; blenders; supporting equipment; and, tables, racks, shelving, and office furniture

6.     The Debtor also owns inventory that consists primarily of fresh and frozen produce, dry goods and other perishable items.[1]

7.     Upon information and belief, the Debtor's estate has an interest in other assets, including cash and causes of action.

---

[1] The Trustee determined, in consultation with MYC & Associates, Inc., the Trustee's proposed custodian, that the value of the inventory was negligible considering that most of the inventory was highly perishable with expiration dates that were fast approaching; and inventory on hand was not substantial enough to warrant the expense of an auction, which would need to be performed on an expedited basis.

**C.      PACA Trust Claims**

8.      Upon information and belief, the Debtor's assets are not encumbered by liens or security interests. However, the Trustee believes that certain of the Debtor's assets may be subject to the statutory trust created under the Perishable Agricultural Commodities Act of 1930, as amended 76 U.S.C. § 499a *et. seq* ("**PACA**"), which trust is for the benefit of dealers that sold perishable agricultural products to the Debtor that remain unpaid.

9.      By separate motion, the Trustee is seeking an order authorizing the payment of certain administrative expenses, including Keen-Summit's commissions and expenses, from the proceeds of assets impressed with a PACA trust. As set forth more fully in that motion, the Trustee has conferred with the Debtor's largest PACA creditors and has reached an agreement in principal regarding the payment of administrative expenses.

**D.      Facts Related to Keen-Summit**

10.     As set forth more fully in the *Affidavit of Disinterested*, a copy of which is annexed hereto as Exhibit "A," Keen-Summit has extensive experience in creating and executing real estate and business strategies designed to maximize values and minimize ongoing liabilities. With a particular expertise in workouts and restructurings, Keen-Summit represents property owners, retail and commercial tenants, investors, developers, and creditors across various industries.

11.     Keen-Summit has specific experience with the Debtor's real property leases and intellectual property that makes it uniquely suited to act as the Trustee's marketing and sales agent. In or about December 1, 2014, Keen-Summit's corporate predecessor, GA Keen Realty Advisors, LLC, and then Keen-Summit, was retained by the Debtors, as part of the so-called Phase One Services, to "perform an analysis of the potential value to third parties of the Company's Properties" and, thereafter, as part of the so-called Phase Two Services, to represent

3

the Company in connection with "an in-court or out-of-court sale, assignment or transfer of title to one or more of the Properties, including a lease assignment, sale of 'designation rights', sublease, lease termination or lease surrender…." In connection with that engagement, Keen-Summit evaluated Debtor's leasehold interests, developed a target list of potential replacement tenants, and initiated conversations with potential replacement tenants. (Keen-Summit was fully paid for its services and played no role in the sale of the business in 2015 from Weld North to Vested Capital Partners.) As a result of its experience, Keen is already up-to-speed on the Debtor's business and assets. Accordingly, Keen-Summit is best able to efficiently and effectively market these assets and to start the sale process as quickly as possible.

12. It is critical that the Debtor's leases be disposed of as quickly as possible. The monthly rent under the leases is highly burdensome to the estate, and minimizing those administrative expenses will be critical to creating a pool of assets from which to make distributions to creditors.

13. Keen-Summit is seeking to be retained as marketing and sales agent for the Debtor's estate's real property leases and intellectual property on the terms and conditions set forth in the *Retention Agreement* (the "**Agreement**"), a copy of which is annexed hereto as Exhibit "B."

14. The most salient terms of the agreement are as follows:[2]

    (a)    Services

        (i)    On request, review pertinent documents and will consult with Trustee's counsel, as appropriate;

        (ii)    Coordinate with Trustee the development of due diligence materials;

        (iii)    Develop, subject to Trustee's review and approval, a marketing plan and implement each facet of the marketing plan;

---

[2] The summary of the Agreement is qualified entirely by the terms of the Agreement.

4

(iv) Communicate regularly with prospects and maintain records of communications;

(v) Solicit offers for a transaction;

(vi) Assist Trustee in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed transaction;

(vii) Develop and implement, subject to Trustee's review and approval, an auction plan, including arranging auction logistics, assisting Trustee's counsel with auction bid procedures, assisting the Trustee to qualify bidders, and running the auction at the offices of Meyer, Suozzi, English & Klein, P.C. or such other location that may be designated by the Trustee;

(viii) Communicate regularly with Trustee and her professional advisors in connection with the status of her efforts; and

(ix) Work with Trustee's attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.

(x) Communicate and cooperate with such entities as may be retained by the trustee to market the Debtor's furniture, fixtures and equipment.

(b) Compensation

(i) <u>Transaction Fee for the Sale of Debtor's Intellectual Property.</u> As and when Trustee closes a transaction pertaining to Debtor's intellectual property, whether such transaction is completed individually or as part of a package or as part of a sale of all or a portion of Debtor's business, then Keen-Summit shall have earned compensation per transaction equal to five percent (5%) of "Gross Proceeds" from the transaction.

(ii) <u>Transaction Fee for the Disposition of Leaseholds & Settlement of Landlord Claims</u>. When Trustee completes a leasehold Property transaction (i.e., the assignment of a lease or the waiver of a cure claim), whether such transaction is completed individually or as part of a package or as part of the disposition of Debtor's business, then Keen-Summit shall have earned as compensation per Property five percent (5%) of Gross Proceeds from the transaction.

(iii) <u>Timing of Payment.</u> All transaction fees shall be paid, in full, off the top, from the transaction proceeds or otherwise, simultaneously with the closing or other consummation of each transaction.

5

    (iv) <u>Survival</u>:  In the event Trustee and any third party should enter into an agreement providing for a transaction before the expiration of the Agreement and the closing does not occur until after said expiration, then Keen-Summit shall be entitled to a fee in accordance with the terms of the Agreement.  If Trustee, after the expiration of said period, arranges for a transaction with a third party whom Keen-Summit solicited or otherwise introduced to a Property or introduced to the Trustee or with whom Keen-Summit dealt in connection with a Property or Trustee prior to said expiration, and the contract signing or closing takes place within twelve (12) months after said expiration, then Keen-Summit shall be entitled to a fee in accordance with the terms of the Agreement.

    (v) <u>Transaction Fee Cap</u>.  In no event shall any transaction fee exceed 25% of the cash or cash equivalent portion of the "Gross Proceeds" from such Transaction.

  (c) Expenses

    (i) Trustee, in her capacity as trustee and not individually, shall be responsible for all of Keen-Summit's reasonable out-of-pocket expenses (including, without limitation, FedEx, photocopying charges, approved out of pocket marketing costs and expenses, and the reasonable fees and expenses of counsel) incurred by Keen-Summit pursuant to its engagement hereunder.  With regard to the marketing plan, Keen-Summit shall prepare a marketing budget. The aggregate amount of expenses included in the marketing budget shall not exceed $10,000. Following Trustee's approval of the budget, Keen-Summit shall advance (on Trustee's account) the budgeted amount.  Keen-Summit, in its discretion, with prior written expense of Trustee, may advance additional costs and expenses on Trustee's account.  Trustee shall reimburse Keen-Summit all of its costs and expenses from the first proceeds of a transaction, in full, off the top, simultaneously with the closing or other consummation of the Transaction before any funds are disbursed to the Creditors.

    (ii) Keen-Summit shall not be responsible for any of Trustee's due diligence costs and expenses, if any, including but not limited to updating appraisals, title reports, surveys, environmental reports, property condition assessments, etc.  Keen-Summit acknowledges that the Trustee has not committed to perform any due diligence.

15. The Trustee anticipates hiring a liquidator to auction the Debtor's machinery, furniture and equipment as such services are not routinely performed by Keen-Summit.  The Trustee expects that such engagement will include an agreement among the Trustee, Keen-

6

Summit and the liquidator to compensate the liquidator if the Trustee receives a turn-key offer that is the highest and best offer (*i.e.*, an offer for leases or intellectual property together with machinery, furniture and equipment). The Trustee anticipates that in connection with her retention of the liquidator, she will seek an order permitting Keen-Summit to pay the liquidator up to five percent (5%) of the value allocated to the machinery, furniture and equipment from the turn-key bid.

## JURISDICTION

16. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## REQUEST FOR RELIEF

17. In accordance with Bankruptcy Code sections 105(a), 327(a), 328 and 330, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Trustee seeks authorization to employ Keen-Summit as marketing and sales agent for the Debtor's leases and intellectual property.

## BASIS FOR RELIEF

18. The retention of Keen-Summit under the terms described herein is appropriate under Bankruptcy Code section 327, which empowers the Trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Bankruptcy Code section 328 permits a trustee, with the court's approval, to employ professionals "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. 328(a).

19. To the best of the Trustee's knowledge, information and belief, Keen-Summit's only connection with the Debtor was the Debtor's retention of Keen-Summit's corporate predecessor in 2014, which agreement was assigned to Keen-Summit on December 30, 2014, as described above and in the Affidavit. As set forth more fully in the Affidavit, Keen-Summit was paid in full for such retention and has no claims against the estate for services rendered. Also, to the best of the Trustee's knowledge, information and belief, the Trustee does not believe that Keen-Summit has any connection with the Debtor's creditors or with any other party in interest herein, their attorneys or accountants. As set forth in the Affidavit, Keen-Summit represents that it has no adverse interest to the estate.

20. The principals of Keen-Summit have extensive experience in marketing real property and other assets and the bankruptcy process. Accordingly, the Trustee believes that Keen-Summit is well qualified to act as marketing and sales agent in this case.

21. Keen-Summit shall be paid commissions equal to five percent (5%) of the Gross Proceeds from any Transaction (as such terms are defined in the Agreement); provided however, that commissions shall not exceed 25% of the cash or cash equivalent portion of such Gross Proceeds. Keen Summit shall also be reimbursed for certain out of pocket expense Commissions and reimbursement of expenses shall be paid at closing of any Transaction. The Trustee submits that the 5% commission is fair, reasonable, and competitive. As this engagement is transactional in nature and Keen-Summit is being compensated on a percentage basis, it is respectfully requested that this Court, consistent with prior orders of this Court, waive the requirement that Keen-Summit be required to maintain or submit to the Court time entries in connection with professional services rendered under the Retention Agreement.

22. For all of the foregoing reasons, the Trustee believes that the retention of Keen-Summit is in the best interest of the estate and all parties in interest.

## NOTICE

23. No previous application for the relief requested herein has been made to this or any other Court. Notice of this Application will be given to (i) the Debtor's counsel, (ii) all parties that filed a Notice of Appearance, and (iii) the United States Trustee for the Southern District of New York. The Trustee submits that, under the circumstances, no other or further notice is required.

**WHEREFORE,** the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit "C," authorizing the Trustee to retain Keen-Summit as marketing and sales agent and for such other and further relief as is just and proper.

Dated:   Garden City, New York
         October 27, 2015

/s/ *Jil Mazer-Marino*
Jil Mazer-Marino, Chapter 7 Trustee
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone:(516) 741-6565
Facsimile: (516) 741-6706