**Jil Mazer-Marino, Esq.**
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**Garden City, New York 11530-9194**
**Telephone: (516) 741-6565**
**Email: jmazermarino@msek.com**

*Proposed Counsel for the Interim Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
**In re:**

**ORGANIC AVENUE LLC,**

                            **Debtor.**
---------------------------------------------------------------X

        **Chapter 7**

        **15-12787 (REG)**

**CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AND RULES 2002, 4001, 6004, 6006, 9008 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, SEEKING ENTRY OF ORDERS:  (I) APPROVING (A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTIONS AND SALE HEARING, (C) SCHEDULING AUCTIONS AND SALE HEARING; AND (D) ASSUMPTION PROCEDURES AND RELATED NOTICES; AND (II) APPROVING THE SALE OF THE ESTATE'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND GRANTING RELATED RELIEF**

Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for the above-captioned debtor (the "**Debtor**") hereby submits this motion and respectfully sets forth as follows:

**PRELIMINARY STATEMENT**

1. The Trustee believes the Debtor's non-residential real property leases, trademarks, machinery, equipment, and other assets have value and a sale could benefit the estate and creditors, especially since the Debtor's assets are not encumbered by liens or security interests[1]. However, unless the assets are sold immediately, any value to the estate may be eaten up by

---

[1] As set forth in the *Chapter 7 Trustee's Motion For Entry Of Order Fixing The Administrative Expenses To Be Paid From Proceeds From The Sale Of PACA Trust Assets* (the "**PACA Motion**"), the Debtor's assets may be impressed with a trust in favor of creditors that sold perishable agricultural items to the Debtor under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a *et seq.* ("**PACA**").

administrative rent and utility claims. Accordingly, the Trustee is proposing a process whereby the marketing, auctions, sale hearing and sale closing will be completed by no later than November 26, 2015. In that connection, filed contemporaneously herewith, is an application for entry of an order shortening time for notice of the hearing on this Motion. Specifically, the Trustee respectfully requests that the hearing on the portion of this motion requesting approval of bid procedures be held on November 2, 3, or 4, 2015 and that the second hearing on this Motion, the motion to approve the sale of assets, be held on November 23 or 24, 2015.

2. By this motion, the Trustee respectfully requests that the Court grant the following relief in connection with a sale of all or substantially all of the Debtor's assets (the "**Assets**") to the bidder or bidders who submit the highest or otherwise best offer (each, a "**Successful Bidder**").

3. First, pursuant to Rule 9006-1(b) of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Trustee is seeking entry of an order (the "**Bid Procedures Order**") in the form attached hereto as Exhibit A: (i) establishing the procedures (the "**Bid Procedures**") that are annexed to the Bid Procedures Order as Exhibit I for the conduct of a live auction (the "**Live Auction**") for bids for the Debtor's leases, intellectual property, certain other assets and for turn-key bids (*i.e.*, bids for some combination of leases, intellectual property and/or machinery and equipment) and an on-line auction (the "**On-Line Auction**" and together with the Live Auction, the "**Auctions**") for bids solely for the Debtor's machinery and equipment; (ii) establishing the procedures for the assignment or other disposition of the Debtor's non-residential real property leases and executory contracts (the "**Assignment Procedures**"), which Assignment Procedures are included in the Bid Procedures; (iii) scheduling the hearing to approve a sale (the "**Sale Hearing**") and setting the deadlines to object to the

2

Motion; (iv) approving the form of notice with respect to the proposed sale of the Assets and Assignment of the leases and contracts, the Auctions, and the Sale Hearing (the "**Sale Notice**"), which Sale Notice is annexed to the Bid Procedures Order as Exhibit II; and (v) approving the time and manner of service of the Sale Notice.

4. Second, the Trustee is seeking entry of an order or orders (the "**Sale Order**"), that will, *inter alia*, approve the sale of the Assets free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105 and 363(b), (f) and (m) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in accordance with the terms of a purchase agreement, lease termination agreement, or lease assignment agreement, each in substantially the forms attached to the Bid Procedures (or as may otherwise be sought by such Successful Bidder) or pursuant to bids accepted at the On-Line Auction. A proposed form of Sale Order will be filed on the docket of this case prior to the Sale Hearing.

## JURISDICTION

5. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**")*,* Rules 2002, 4001, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 6004-1, 6006-1 and 9006-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), and General Order M-383 of the Bankruptcy Court for the Southern District of New York ("**General Order M-383**").

3

## BACKGROUND

**A.    The Bankruptcy Case**

7.    On October 15, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

8.    On October 16, 2015, the Trustee was appointed as the interim chapter 7 trustee in the Debtor's case.

9.    A meeting of creditors, pursuant to Bankruptcy Code section 341, is scheduled for November 9, 2015.

**B.    The Debtor's Business**

10.    The Debtor was in the business of producing and retailing "grab and go" organic or all natural juices, cleanses, and food items. The Debtor produced its products at its commissary located in Long Island City, New York and sold its products at retail boutiques in prime Manhattan locations that operated under the name Organic Avenue. The Debtor directly or indirectly, through wholly owned limited liability companies, leases the commissary space and the retail locations.

**C.    The Assets For Sale**

11.    The Trustee intends to make all of the Debtor's assets available for sale at the Auction, including the Debtor's furniture, machinery and equipment, intellectual property, interests in its wholly owned limited liability companies, and real property leases.

**(i) Equipment**

12.    The Debtor's machinery and equipment includes: bottling equipment; mixers; filling equipment; juicers; refrigeration equipment; handling equipment; blenders; and supporting equipment. The Trustee, in consultation with MYC & Associates, Inc. (the Trustee's proposed custodian) and Yellen Partners, LLC (the Trustee's proposed on-line auctioneer) are

4

preparing a complete schedule of machinery and equipment that will be made available to all parties in interest and persons and entities interested in bidding on such assets.

    **(ii) Leases**

13.    The Debtor is the direct or indirect lessee under ten real property leases for space in Manhattan, New York used by the Debtor as retail stores. The addresses of the retail stores are: 206 East 86th Street (a/k/a 205 East 85th Street), New York, New York; 1021 Lexington Ave., New York, New York; 649 Lexington Ave., New York, New York; 5 Bryant Park (a/k/a 1065 Avenue of the Americas), New York, New York; 254 Park Ave. South, New York, New York; 261 West 21st Street, New York, New York; 515 Hudson Street, New York, New York; 115 East Ninth Street (a/k/a 30 Third Ave.), New York, New York; 461-469 Amsterdam Ave., New York, New York; and 640 Broadway, New York, New York.

14.    The Debtor leases space in Long Island City, New York, which space is used by the Debtor as a commissary. Although the space is leased pursuant to four different leases, the space is connected internally. The addresses for the commissary are: 43-46 10th Street, Long Island City, New York; 43-37 9th Street, Long Island City, New York; 10-01 45th Road, Long Island City, New York; 43-43 9th Street, Long Island City, New York.

15.    A list of the Leases, the name and contact information of each landlord (each, a "**Lease Counterparty**") and the proposed cure amount (the "**Cure Amounts**") for such lease is attached to the Bid Procedures as Exhibit 5.

    **(iii) Intellectual Property**

16.    The Debtor owns the following trademarks: "ORGANIC AVENUE"; "OA"; "LOVE"; "SINGLE-PRESSED"; and, "DOUBLE-PRESSED." Upon information and belief, the Trademarks are not subject to license agreements. The Debtor also owns the domain name

5

www.organicavenue.com.

17.     Upon information and belief, the Debtor promoted a customer loyalty program and sold its products on-line and should have a substantial customer list. The Trustee intends to require any Successful Bidder (as defined in the bid procedures) for the customer list to use such list in accordance with the terms of any privacy policy in effect as of the Petition Date.

**(iv) Other**

18.     The Trustee is investigating the Debtor's interest in other assets, such as interests in limited liability companies, recipes, and processes.

**D.     The Marketing and Auction Process**

19.     The Trustee is retaining Keen-Summit Capital Partners LLC to market the estate's interest in the Leases, Intellectual Property and certain other assets and to elicit turn-key bids. If the Trustee receives bids for Leases, Intellectual Property or turn-key bids, the Trustee intends to hold the Live-Auction to obtain the highest and best bid for those assets.

20.     In addition, the Trustee is retaining Yellen Partners, LLC to conduct the On-Line Auction solely for the Debtor's machinery and equipment. The On-Line Auction will be conducted simultaneously with the Live Auction. At the conclusion of the Auctions, the Trustee will determine the highest or otherwise best bids for the Assets.

21.     The marketing, auction and sale process is to be conducted pursuant to the Bid Procedures that are attached to the Bid Procedures Order as Exhibit I. The Bid Procedures include streamlined procedures to be used by bidders that are only interested in participating in the On-Line auction. The Bid Procedures include the Assignment Procedures that provide a mechanism to fix cure amounts and provide Lease Counterparties with information related to a potential assignee's ability to provide adequate assurance of future performance and the ability to enter into lease termination agreements (*i.e.*, to bid for their own Lease and to credit bid the

amount of their undisputed Cure Amount).

22.     The Bid Procedures propose an aggressive timetable.  Marketing, Auctions, the Sale Hearing, and closings must be concluded by November 28, 2015 to prevent the estate from incurring December rent, which the estate can ill afford.  Therefore, as set forth more fully below, the Trustee proposes November 18, 2015 at 12:00 noon, as the Bid Deadline for the Live Auction and November 20, 2015 as the date for the Auctions.  The Trustee also proposes November 13, 2015 as the deadline for Lease Counterparties to interpose cure objections.  The Trustee respectfully requests that the Sale Hearing be scheduled for November 23 or 24, 2015, with objections to the sale due one day prior to the Sale Hearing.

## BASIS FOR RELIEF[2]

### A.     Bid Procedures

23.     Courts have made clear that a trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *C.f. Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).

24.     The Trustee believes the Bid Procedures are fair and lay a level playing field for all potential bidders.  The Trustee submits that the provisions of the Bid Procedures, including

---

[2] Capitalized terms used but not defined in this section of the motion shall have the meaning ascribed to them in the Bid Procedures.

7

the Required Bid Materials are reasonable and appropriate.

25. Although the approximately two week marketing period is short, it is necessary to obviate the burdensome administrative rent and utility expenses that would arise if the estate is not able to surrender its leased premises prior to December 1, 2015. In addition, the Trustee and Keen-Summit have already received many expressions of interest in substantially all of the assets. Keen-Summit and Yellen Partners LLC are prepared to market the Assets aggressively.

B. **Notice of the Bid Procedures Hearing, Auctions and Sale Hearing**

26. The Trustee submits that service of the Sale Notice, attached to this Motion as Exhibit B, and the Bid Procedures on all parties in interest and all persons and entities that have expressed an interest in purchasing the Debtor's assets is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Assets, and/or object to the proposed sale of the Assets. Accordingly, the Trustee submits that the foregoing method of notice is reasonable under the circumstances.

C. **Assumption and Assignment of Leases**

27. Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume an executory contract or unexpired lease must be an exercise of its sound business judgment for the court to approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein .Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

28. Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. §

8

365(f)(2)(B).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr D.N.J. 1988) (internal citations omitted).

29.    The Assignment Procedures that are included in the Bid Procedures are intended to maximize the value of the Leases and to protect the rights of the Lease Counterparties. In that connection, the Assignment Procedures include a procedure that permits Lease Counterparties to credit bid their undisputed cure amounts and to be provided promptly with information permitting the Lease Counterparty to determine if the proposed assignee satisfies the standards of Bankruptcy Code section 365(f).

30.    At the Sale Hearing, to the extent necessary, the Trustee will be prepared to proffer testimony or present evidence to demonstrate the ability of the Successful Bidder to perform under the Leases or executory contracts that are to be assumed and assigned. Accordingly, the Trustee requests that, at the conclusion of the Sale Hearing, the proposed assumption and assignment of the Leases and executory contracts be approved to the Successful Bidder.

**D.    Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

31.    Bankruptcy Code Section 363 provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

32.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate:

> free and clear of any interest in such property of an entity other than the estate if (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest, (2) such entity

9

>consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

I1 U.S.C. § 363(f).

33. The Trustee does not believe that the Debtor's Assets are subject to consensual liens or security interests. To the extent, if any, there are liens, claims, or encumbrances (collectively, "**Encumbrances**"), the Trustee believes that the Debtor's assets could be sold free and clear of such Encumbrances, based on one or more provisions of section 363(f) of the Bankruptcy Code. Any parties in interest that assert Encumbrances will be adequately protected by having their Encumbrances, if any, attach to the proceeds of the sale in the same order of priority, and with the same validity, force and effect that such parties had prior to the Sale Transaction, subject to any claims and defenses that the Debtor and its estate may possess with respect thereto. Accordingly, section 363(f) of the Bankruptcy Code authorizes the transfer and conveyance of the Assets free and clear of all liens, claims, encumbrances and all other interests.

34. The Trustee also submits that it is appropriate to sell the Assets free and clear of successor liability relating to the Debtor's business. Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business. See, e.g., *MacArthur Co. v. Johns-Manville Corp. (In re JohnsManville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (holding that channeling of claims to proceeds is consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[S]uccessor or transferee liability claims against [the purchaser] are encompassed by section 363(f) and are

10

therefore extinguished by the Sale Transaction."), *aff'd*, 567 F.3d 108 (2d Cir. 2009).

35. It is in the best interests of the Debtor's estate to sell the assets notwithstanding the Debtor's assets may be impressed with a PACA trust for two reasons. First, although PACA trust assets are not property of the debtor's bankruptcy estate, a debtor's chapter 7 trustee is obligated to administer the PACA trust in the course of his or her duties. *See In re United Fruit and Produce Co.*, 119 B.R. 10, 13 (Bankr. Conn. 1990). Second, there is uncertainty as to whether PACA applies to the Debtor and the extent of any PACA claims, accordingly, there is a substantial possibility that a sale of the Debtor's assets will result in proceeds in excess of the PACA claims (if any) and will benefit the Debtor's estate as a whole.

E. **Protections as a Good Faith Purchaser**

36. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) provides:

> The reversal or modification on appeal of an authorization under [section 363(b)] ... does not affect the validity of a sale ... to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code "affords 'finality to judgment by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids'." *Reloeb Co. a LTV Corp. (In re Chateaugay Corp.)*, No. 92 Civ. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) ... provides that good faith transfers of property will not be affected by the reversal or modification on appeal

11

of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to I1 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

37. The Second Circuit has indicated that, generally, a party would have to show fraud or collusion between the buyer and the debtor in possession or trustee or other bidders in order to demonstrate a lack of good faith. *See Kabro Assocs. of W Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239 (MBM), 97 Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. 1997) (same; holding that purchaser's status as an insider was not per se bad faith).

38. Here, each Successful Bidder will have engaged in the Auctions pursuant to the proposed Bid Procedures, and any Successful Bid proposed by a Successful Bidder will be the product of arm's length, good-faith negotiations in a competitive bidding process. Also, at the Sale Hearing, the Trustee intends to make a showing that the Successful Bidder qualifies as a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**F.      Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)**

39. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders

otherwise." Fed. R. Bankr. P. 6006(d).

40.  The Trustee believes that cause exists to waive the stays imposed by Bankruptcy Rules 6004(h) and 6006(d).  Unless sales of the Assets close and the Trustee assigns or surrenders the Debtor's leased premises prior to December 1, 2015, the estate could incur substantial administrative expense claims, the result of which could deprive prepetition creditors from receiving any benefit from the sale of the Assets.

**G.    Consumer Privacy Ombudsman**

41.  Bankruptcy Code section 332 provides, in relevant part:

> (a) If a hearing is required under section 363(b)(1)(B), the court shall order the United States trustee to appoint, not later than 7 days before the commencement of the hearing a disinterested person (other than the United States Trustee) to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman.
>
> (b) The consumer privacy ombudsman may appear and be heard at such hearing and shall provide to the court information to assist the court in its consideration of the facts, circumstances, and conditions of the proposed sale or lease of personally identifiable information under section 363(b)(1)(B).

42.  The Assets may include the Debtor's customer list which could include personally identifiable information such as e-mail addresses.  However, the proposed Purchase Agreement requires any purchaser of personally identifiable information to comply with the Debtor's privacy policies that were in effect as of the Petition Date.  Accordingly, personally identifiable information will be protected.

43.  To the extent, if any, a privacy ombudsman is required, the Trustee respectfully requests that one be appointed by the Office of the United States Trustee.

## RESERVATION OF RIGHTS

44. The Trustee reserves the right to modify the Bid Procedures at or prior to the Auctions. The Trustee may impose such other terms and conditions for purposes of the Auctions and the Bid Procedures as she may determine, in the exercise of her fiduciary obligations, to be in the best interests of the Debtor's estate and creditors.

## NOTICE

45. The Trustee provided notice of this Motion to the Office of the United States Trustee and all parties that filed in this case a notice of appearance and request for service of papers or other pleading in this case. The Trustee respectfully submits that no further notice of this motion is necessary.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and appropriate.

**Dated: Garden City, New York**
**October 30, 2015**

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
*Proposed Counsel for the Interim Chapter 7 Trustee*

By: */s/ Jil Mazer-Marino*
 Jil Mazer-Marino
**990 Stewart Avenue, Suite 300**
**Garden City, New York  11530-9194**
**Telephone:  (516) 741-6565**
**Email: jmazermarino@msek.com**

1084488