DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Email:   akadish@dtklawgroup.com

Hearing Date:    November 3, 2015
Hearing Time:    9:45 A.M.

*Counsel for Keen-Summit Capital Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

In re:                                                    Chapter 7

ORGANIC AVENUE LLC,                                      Case No. 15-12787 (REG)

                            Debtor.

------------------------------------------------------x

**AFFIRMATION OF HAROLD J. BORDWIN IN SUPPORT
OF THE TRUSTEE'S APPLICATION TO RETAIN AND EMPLOY
<u>KEEN-SUMMIT CAPITAL PARTNERS LLC AS MARKETING AND SALES AGENT</u>**

HAROLD J. BORDWIN hereby submits this *Affirmation*, and declares as follows:

1.     This Affirmation is submitted (a) in support of (i) the *Trustee's Application for Authority to Retain and Employ Keen-Summit Capital Partners LLC as Marketing and Sales Agent for the Estate's Real Property Leases and Intellectual Property*, filed on October 29, 2015 (Docket No. 19) (the "**<u>Application</u>**") on behalf of Jil Mazer-Marino as Chapter 7 trustee (the "**<u>Trustee</u>**"), and (ii) the *Application, with Supporting Declaration, for Entry of an Order Shortening time for Notice with Respect to Trustee's Application for Authority to Retain and Employ Keen-Summit Capital Partners LLC to as Marketing and Sales Agent for the Estate's Real Property Leases and Intellectual Property*, filed on October 29, 2015 (Docket No. 20) (the "**<u>Application to Shorten Time</u>**"), and (b) in response to the *United States Trustee's Limited Objection to Trustee's Application for Authority to Retain and Employ Keen-Summit Capital*

*Partners LLC to as Marketing and Sales Agent for the Estate's Real Property Leases and Intellectual Property*, filed on November 2, 2015 (Docket No. 29) (the "**UST Objection**").

## BACKGROUND

2.      I am a Principal and Managing Director of Keen-Summit Capital Partners LLC ("**Keen-Summit**"), which is located at 10 East 53rd Street, 28th Floor, New York, New York 10022-5244.  I have been employed by Keen-Summit since its formation on January 1, 2015, and by one or another of its predecessor firms since 1988, 27 years ago.

3.      I respectfully refer the Court to the Application, my *Affidavit of Disinterestedness* attached thereto, the proposed *Retention Agreement* between the Trustee and Keen-Summit dated October 26, 2015 (the "**Retention Agreement**"), also attached thereto, as well as the Application to Shorten Time, for the relevant facts applicable to the proposed retention of Keen-Summit on behalf of the Trustee in this case.

## SUMMARY OF DISPUTE

4.      Keen-Summit is a broker.  As a broker, we have negotiated with the Trustee a purely contingent fee arrangement: five percent (5%).  Section 328(a) clearly authorizes the Trustee to engage us on a "percentage fee basis or on a contingent fee basis."[1]  Section 328(a), in the very next sentence establishes the standard of review for such fees as being modifiable by the Court "after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

5.      Notwithstanding the Trustee's and Keen-Summit's agreement to proceed on this basis, consistent with the Bankruptcy Code and precedent (as described below), the Office of the

---

[1]      Our brokerage fee, like all brokerage fees, is both: it's a percentage-based fee that is wholly contingent upon success.

United States Trustee (the "**UST**") objects to a pure Section 328(a) retention and compensation structure, insisting on maintaining rights of review of compensation under section 330.

6.    Keen-Summit and its predecessors, through which my father, my brother and I have conducted our well-known real estate and distress consulting business for generations (collectively, "**Keen**"), have spent decades contesting this very issue. Both times that it has been raised in the context of an engagement for brokerage services, the judges of this Court have ruled that the UST is **not** entitled, after the fact, to review our compensation for reasonableness.

## SECTIONS 328 AND 330

7.    Section 328(a) of the Bankruptcy Code, by its express terms, governs professionals who are engaged on a "percentage fee basis, or on a contingent fee basis." It provides:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or *percentage fee basis, or on a contingent fee basis*. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

(Emphasis added.)

8.    The key of a section 328(a) retention is that the fixed fee or contingency agreement is set at the beginning of the engagement and is reviewable only on an "improvident" standard, rather than a traditional, retrospective, standard of "reasonableness" which applies to hourly retention agreements, as set forth in section 330(a).[2]

---

[2]    Section 330(a) provides:

9.      The fact that the Trustee is seeking to engage Keen-Summit on a "percentage fee basis or on a contingent fee basis" is not contested.

10.      The fact that an engagement on a "percentage fee basis or on a contingent fee basis" is governed by Section 328(a) of the Bankruptcy Code is not contested.

11.      The fact that the Trustee and Keen-Summit have negotiated a five percent (5%) commission is not contested.

12.      It is my understanding that the only contested issue in Keen-Summit's retention is whether the UST should have the right, after the fact, to question the reasonableness of a brokerage commission.    Such a position flies in the face of common sense and completely undermines the concept of a contingency fee arrangement.    It is Keen-Summit's position, with

---

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 - (A) *reasonable compensation for actual, necessary services rendered* by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested. (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, *the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors*, including - (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title….

(Emphasis added.)

4

which the Trustee agrees,[3] that Keen-Summit, as a broker working for a commission, should be able to work on a contingency fee arrangement and not be second-guessed after the completion of the project.  The UST's position, that it is entitled to a retrospective "reasonableness" review of a commission is both (i) in derogation of the explicit terms of section 328(a), and (ii) inconsistent with industry practice.  Under the plain meaning and explicit terms of section 328, once Keen-Summit is retained on a "percentage fee basis or on a contingent fee basis," the fee is reviewed under the section 328, not 330, standard.

## THE FIXED PERCENTAGE AGREEMENT

13.    As set forth in the Application and the Retention Agreement, Keen-Summit is to be retained to market and sell the estate's assets (leases, intellectual property, and, if sold as part of a turn-key sale, the machinery and equipment) for 5% of gross proceeds plus reimbursement of approved out-of-pocket expenses.[4]  This fee arrangement was negotiated in good-faith, at arms-length, and, I submit, reflects competitive market terms.

## SECTION 328 IS THE CORRECT STANDARD TO GOVERN COMPENSATION OF A CONTINGENCY FEE SALES AGENT

14.    The difference between section 328 and section 330 engagements has been a feature of modern bankruptcy law since the enactment of the Bankruptcy Code.  "In 1978, Congress amended the Bankruptcy Code in part to make it easier for debtors in bankruptcy to retain professionals for discrete matters."  *Riker, Danzig, Scherer, Hyland & Peretti v. Official Committee of Unsecured Creditors (In re Smart World Technologies, LLC),* 552 F.3d 228, 232

---

[3]      Keen-Summit understands that while the Trustee is satisfied with the terms of the engagement as set forth in the Retention Agreement, including the retention under section 328, this is not the estate's cause to pursue, but ours.

[4]      Keen-Summit understands that its compensation is subject to a final fee application (or other fee review process) and that in its final fee application it will describe Keen-Summit's activities (without time records), the calculation of its fees and a recitation of out-of-pocket expenses.  Keen-Summit acknowledges that the Court has ultimate authority to allow or disallow (including to cause to disgorge) fees and expenses paid by the estate.

(2d Cir. 2009), *citing, inter alia*, COLLIER ON BANKRUPTCY, para. 328.02 (Alan N. Resnick and

Henry J. Sommer, eds., 15th Ed, rev.).  Collier explains:

> Section 328(a) effects a significant departure from prior practice under the Bankruptcy Act in which professionals were entitled to reasonable compensation determined on a strictly *quantum meruit* basis.   Section 328(a) thus provides a mechanism to cement definite compensation terms at the beginning of a professional's engagement, and thereby "eliminate the previous uncertainty associated with professional compensation in bankruptcy proceedings, even at the risk of underpaying, or, conversely, providing a windfall to, professionals retained by the estate."
>
> Under section 328(a), professional persons may be employed pursuant to prearranged terms of compensation as approved by the court. …

15.    In *In re Northwest Airlines Corp.*, 382 B.R. 632 (Bankr. S.D.N.Y 2008), Judge

Morris considered the request for a success fee in the context of a section 328 retention of a

financial advisory firm to a committee which was specifically retained under a section 328

standard of review of its fee:

> Under Section 328(a), professionals … may obtain pre-approval of their compensation arrangements from the Court.   The "pre-approval" affords the professional assurances the amount of compensation approved will not be modified by the Court unless it is proven that the amount was "improvident in light [of] developments not capable of being anticipated at the time."

*Northwest*, 382 B.R. at 639 (citation omitted).[5]  The Court directed:

> If a professional wishes its compensation package, including professional success or completion components, to receive Section 328(a) review at the time of their final application for compensation, the elements under which the final compensation will be awarded must be revealed in the professional's retention application.

---

[5]    The Court went on to discuss whether the fee requests before the Court were within the section 328 standard of review and determined that (a) while the monthly fee of a particular advisory firm was within the section 328 term, a request for an enhancement over the contractual engagement would be viewed under section 330, and (b) the request of another firm was not a section 328 retention from the beginning.

*Northwest*, 382 B.R. at 643.  That is exactly what we are doing here.

16.    We understand further that once a fixed-fee arrangement is properly approved at the retention stage, it is expected to be enforced later on under a section 328, not 330, standard. In *Smart World*, the Court of Appeals for the Second Circuit considered whether a retention order was clear that the professional retention was under section 328 and then, determining that it was, considered the contingency fee fixed under the retention order, and not reviewable later under section 330.  *Smart World*, 552 F.3d at 232-34.  *See also, e.g., Lazard Freres & Co. v. Northwestern Corp. (In re Northwestern Corp.)*, 344 B.R. 40, 43 (D. Del. 2006) (financial advisor to a committee retained on a fixed fee basis under section 328 would not be subject to reduction of its fee under section 330), *citing, inter alia, Committee of Equity Security Holders v. Official Committee of Unsecured Creditors (In re Fed. Mogul-Global, Inc.)*, 348 F.3d 390 (3d Cir. 2003).[6]  That is exactly the intention here, to fix a contingency fee up front and not renegotiate it later.

## KEEN-SUMMIT SECTION 328 RETENTIONS

17.    In the instances where:

> (i)    the UST has objected to Keen's retention on the basis that the UST has sought to maintain the right, after the fact, to assess the reasonableness of Keen's commission, and

> (ii)    the Bankruptcy Court was asked to rule on that issue,

the Bankruptcy Courts in this District have ruled that Keen's brokerage commission was not subject to after-the-fact reasonableness review by the UST, as follows.[7]

---

[6]    We note that many of the cases and orders to which the UST Objection points involve investment bankers or advisors seeking monthly, periodic or success fees, not brokers retained under percentage fee arrangements.

[7]    It is frustrating, confusing and expensive to us and our clients and their estates to re-litigate the same issue over and over in the same Court over twenty years.

**In re Accessory Place, Inc.:**

18.     In the *Accessory Place* bankruptcy proceeding, in March 1996, almost twenty years ago, the debtor sought to retain Keen as its broker and to compensate Keen on a contingency basis.    The UST objected, seeking to require time records in a contingency arrangement as it would with a section 330 retention, in order to retrospectively assess the reasonableness of Keen's contingency fee.    Judge Garrity ruled that in a contingency fee retention, Keen need not keep time records as would a professional retained under a section 330 standard.    An excerpt of the transcript is attached as **Exhibit A**.    Pages 3 to 26 recount the exchange on the record, portions of which follow:

> UST:[8]  Our objection is on three points….
>
> ***
>
> UST: … At this time there are so many contingencies out there, it is impossible at this time for any parties in interest to determine the reasonableness of the fees requested.
> THE COURT:  **Isn't this just a contingent fee arrangement** … They are basically saying, look, we are willing to do this for a percentage of what it is what is realized in these transactions.  We are proposing, we do this all the time.  We think we know how to do it better than anybody else and we just want to do it on a percentage basis.
> UST:  That's correct.  Except for the fact that by looking at the applicant's own letter of engagement, I think they can themselves concede of instances where a fee calculated on a percentage basis might be unreasonable…
>
> ***
>
> THE COURT:  *Is that fair, will all due respect, is it fair then to say heads I win, tails you lose?*
>
> ***
>
> THE COURT:[9]  … I respectfully disagree with the U.S. Trustee that Keen ought to be required to comply with our guidelines or the

---

[8]     The attorney representing the UST is identified in the attached transcript.

> guidelines of the U.S. Trustee.  Although we find those to be very, very helpful on assisting the court in its analysis of fee applications, I think the benefit of those guidelines is more significant when you are dealing with the more traditional professional, that being an accountant or an attorney.  Here Keen is being retained to undertake a marketing program of all the leases and what is being retained here is Keen's expertise in that regard, something that is not necessarily easily translatable into time spent with respect to any particular lease. …

(Emphasis added.)  Keen was retained on a fixed-contingency basis without the requirement of keeping time records.

### In re Jennifer Convertibles, Inc.:

19.     In the *Jennifer Convertibles* bankruptcy proceeding, in August 2010, the issue of review under section 328(a) or 330 was raised and Judge Gropper determined that section 328 was the correct standard of compliance for and review of Keen's commissions.  An excerpt of the transcript is attached as **Exhibit B**.  Pages 12 to 15 recount the exchange on the record, portions of which follow:

> COUNSEL:[10]  The issue is –
> THE COURT:  That your fees should be subject to reasonableness standards?
> COUNSEL:   Yes, that's right.   Your Honor, I would say that KPMG CF often gets 328 review as a real estate consultant.  And there is a – their formula for fees is exactly what's contemplated under Section 328 of the Bankruptcy Code….
> THE COURT: **It's a contingency.**
> COUNSEL:  -- correct.
> THE COURT:  All right.
> COUNSEL: **And I believe that's what 328 specifically goes** –
> THE COURT:  So what has to be retained then?  What has to go to Washington for further review?

---

[9]     At page 22 of the transcript.

[10]     Keen's practice at the time was within KPMG Corporate Finance, referred to on this record as KPMG CF. KPMG CF's counsel is identified in the attached transcript.

UST:[11]   Oh, nothing, Your Honor.   The United States Trustee simply desires a breakdown and her rights under Section 330 to review each of those transactions and the fees derived therefrom.

THE COURT:  Don't you have anything better to do?  *Of course you can review each of those transactions to see if they've satisfied the contingency.  What's the issue, then?  What we're doing is we're setting the contingency.  Is that correct?*

COUNSEL: *That's correct, Your Honor*.

THE COURT:  *Fine.  You can review each transaction.  It either satisfies the contingency or it doesn't.  But we're not going [to] say well, this contingency should have been a little bit lower because the amount is a little higher. 328 still has a savings clause in the event of truly unforeseen circumstances.  The Second Circuit has allowed a very, very, narrow exception to that.*  So what's the issue?

UST: If that's your ruling, Your Honor, we're perfectly fine in agreeing with it.

THE COURT:  All right.  That's my ruling…

(Emphasis added.)   Keen-Summit was retained as broker subject to section 328 review, not section 330.  The Order is attached together with the transcript excerpt as **Exhibit B**.

20.    Moreover, Keen has been retained under section 328 orders many times in this District, in sister districts, and across the country.[12]   Keen-Summit respectfully attaches and brings to the attention of the Court a sampling of orders entered on its behalf as real estate consultant, business broker and/or investment banker, *each of which is a section 328 retention with pre-approved compensation*, as follows:

2014, SDNY:  *Order Authorizing Employment and retention of GA Keen Realty Advisors, LLC as Special Real Estate Advisor to the Chapter 7 Trustee*, May 30, 2014, *In re Barbara Zeifer*, Case No. 13-12228 (MG) (Martin Glen, J.) in the United States Bankruptcy Court for the Southern District of New York . . . **Exhibit C**

2005, SDNY:  *Order Under 11 U.S.C. §327(a) and §328(a) Fed. R. Bankr. P. 2014 and S.D.N.Y. LBR 2014-1 Authorizing Retention*

---

[11]    The attorney representing the UST is identified in the attached transcript.

[12]    This is not to say that Keen has not agreed in certain cases or been required in certain circumstances to adhere to a section 330 standard.

*of Keen Realty LLC as Special Real Estate Consultant*, March 23, 2005, *In re The Perfect Picture Corp.*, Case No. 05-11563 (SMB) (Stuart M. Bernstein, J.) in the United States Bankruptcy Court for the Southern District of New York . . . **Exhibit D**

2015, NDNY: *Order Authorizing the Retention and Employment of Keen-Summit Capital Partners LLC as the Business Broker to the Debtors*, July 31, 2015, *In re Nirvana, Inc.*, Case No. 15-60823 (Diane Davis, J.) in the United States Bankruptcy Court for the Northern District of New York . . . **Exhibit E**

2015, NJ: *Order Authorizing Retention of Keen-Summit Capital Partners, LLC as an Advisor to the Chapter 11 Trustee*, June 10, 2015, *In re Bayway Hand Car Wash Corp.*, Case No. 13-32632 (MBK) (Michael B. Kaplan, J.) in the United States Bankruptcy Court for the District of New Jersey . . . **Exhibit F**

2015, SC: *Order Authorizing Employment of Keen-Summit Capital Partners LLC as Real Estate Advisor for the Debtor, Effective February 26, 2015, and Approving Payment of Fees to Keen-Summit*, March 11, 2015, *In re Briar's Creek Golf, LLC*, Case No. 15-00712 (John E. Waltes, J.) in the United States Bankruptcy Court for the District of South Carolina . . . **Exhibit G**

2015, CD CA: *Order Granting Debtor's Application to Employ GA Keen Realty Advisors, LLC as Real Estate Broker*, January 23, 2015, *In re Sarkis Investments Company, LLC*, Case No. 2:13-bk-29180-RK (Robert Kwan, J.) in the United States Bankruptcy Court for the Central District of California . . . **Exhibit H**

2014, SD TX: *Agreed Order Authorizing the Employment of GA Keen Realty Advisors, LLC, as Investment Banker for the Debtor, Pursuant to §§105(a), 327(a) and 328(a) of the Bankruptcy Code*, December 18, 2014, *In re Aziz Convenience Stores, L.L.C.*, Case No. 14-70427 (Richard S. Schmidt, J.) in the United States Bankruptcy Court for the Southern District of Texas . . . **Exhibit I**

2014, DE: *Order Authorizing the Retention and Employment of GA Keen Realty Advisors, LLC as Real Estate Advisor to the Debtors Nunc Pro Tunc to the Date of the Retention Agreement*, June 12, 2014, In re Coldwater Creek Inc., Case No. 14-10867 (BLS) (Brendan L. Shannon, J.), in the United States Bankruptcy Court for the District of Delaware . . . **Exhibit J**

## THE UST OBJECTION

21.     The UST Objection says the burden is on us to show the terms of the retention are appropriate.  Whether or not that burden is accurate, the Trustee in her Application (including my attached *Affidavit of Disinterestedness*) provides clear evidence to show why she needs a broker, why Keen-Summit is appropriate for this debtor's estate, and why the terms are appropriate and in the best interests of the estate.  Both the Trustee and Keen-Summit recognize that Keen-Summit is taking on considerable risk in working without a retainer on a wholly contingent basis and by advancing expenses for the benefit of the debtor's estate.    We, Keen-Summit, have agreed to take on this risk in return for the potential upside of a 5% commission.  By its very terms, this is the precise circumstance that section 328(a) was intended to address.  The UST Objection asks us to take on these risks without any certainty as to our commission.  The UST's position is contrary to the plain language of section 328(a) and ignores this Court's rulings on this issue.

## CONCLUSION

22.     Keen-Summit finds itself in a "Groundhog Day" mode, having to approach this legal issue over and over again in cases in this District.  Judge Garrity and Judge Gropper's rulings on this issue are clear.  Nevertheless, Keen-Summit finds itself in a position where it is expected to be subject to "heads I win, tails you lose."  We are a broker working for a commission.  Section 328(a) addresses this form of engagement and specifies the precise standard of review.    There is no way to read section 328 to include a reservation to review compensation under section 330 and the UST has provided no statutory authority to do so.

23.    Keen-Summit respectfully seeks an Order authorizing its retention as set forth in the Retention Agreement and in the Trustee's Application, directing a standard for its compensation for its fixed-percentage services based on section 328(a), not section 330.

24.    I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
        November 2, 2015

_____
HAROLD J. BORDWIN

## INDEX TO EXHIBITS

A Transcript (excerpt), *In re Accessory Place,* Hearing on March 5, 1996, Case No. 96-40850 (JLG) (James L. Garrity, J.)

B Transcript (excerpt), *In re Jennifer Convertibles Inc.,* Hearing on August 10, 2010, Case No. 10-13779 (ALG) (Allan L. Gropper, J.), and *Order* Authorizing Employment *and Retention of KPMG CF Realty LLC, as Special Real Estate Advisor for the Debtors Nunc Pro Tunc to the Petition Date,* August 10, 2010

C *Order Authorizing Employment and retention of GA Keen Realty Advisors, LLC as Special* Real *Estate Advisor to the Chapter 7 Trustee*, May 30, 2014, *In re Barbara Zeifer*, Case No. 13-12228 (MG) (Martin Glen, J.) in the United States Bankruptcy Court for the Southern District of New York

D *Order Under 11 U.S.C. §327(a) and §328(a) Fed. R. Bankr. P. 2014 and S.D.N.Y. LBR 2014-1 Authorizing Retention of Keen Realty LLC as Special Real Estate Consultant*, March 23, 2005, *In re The Perfect Picture Corp*., Case No. 05-11563 (SMB) (Stuart M. Bernstein, J.) in the United States Bankruptcy Court for the Southern District of New York

E *Order Authorizing the Retention and Employment of Keen-Summit Capital Partners LLC as the Business Broker to the Debtors*, July 31, 2015, *In re Nirvana, Inc*., Case No. 15-60823 (Diane Davis, J.) in the United States Bankruptcy Court for the Northern District of New York

F *Order Authorizing Retention of Keen-Summit Capital Partners, LLC as an Advisor to the Chapter 11 Trustee*, June 10, 2015, *In re Bayway Hand Car Wash Corp*., Case No. 13-32632 (MBK) (Michael B. Kaplan, J.) in the United States Bankruptcy Court for the District of New Jersey

G *Order Authorizing Employment of Keen-Summit Capital Partners LLC as Real Estate Advisor for the Debtor, Effective February 26, 2015, and Approving Payment of Fees to Keen-Summit*, March 11, 2015, *In re Briar's Creek Golf, LLC*, Case No. 15-00712 (John E. Waltes, J.) in the

United States Bankruptcy Court for the District of South Carolina

H *Order Granting Debtor's Application to Employ GA Keen Realty Advisors, LLC as Real Estate Broker*, January 23, 2015, *In re Sarkis Investments Company, LLC*, Case No. 2:13-bk-29180-RK (Robert Kwan, J.) in the United States Bankruptcy Court for the Central District of California

I *Agreed Order Authorizing the Employment of GA Keen Realty Advisors, LLC, as Investment Banker for the* Debtor*, Pursuant to §§105(a), 327(a) and 328(a) of the Bankruptcy Code*, December 18, 2014, *In re Aziz Convenience Stores, L.L.C.*, Case No. 14-70427 (Richard S. Schmidt, J.) in the United States Bankruptcy Court for the Southern District of Texas

J *Order Authorizing the Retention and Employment of GA Keen Realty Advisors, LLC as Real Estate Advisor to the Debtors Nunc Pro Tunc to the Date of the Retention* Agreement, June 12, 2014, In re Coldwater Creek Inc., Case No. 14-10867 (BLS) (Brendan L. Shannon, J.), in the United States Bankruptcy Court for the District of Delaware

c:\users\akadish\dropbox\clio\keen-summit\aff of hjb.docx

**<u>EXHIBIT A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                    MAR 1 8 1996

-------------------------------------x
          In the Matter

              of

ACCESSORY PLACE, INC.,                           96-40850

          Debtor
-------------------------------------x

              U.S.  Bankruptcy Court
              Alexander Hamilton Custom House
              New York, N.Y.10004-1408
              March 5, 1996 - 10:30    a.m.

Before:
              HON. JAMES L. GARRITY,
                        Bankruptcy Judge

HEARING ON OBJECTION TO RETENTION OF KEEN
REALTY;  HEARING ON APPLICATION OF DEBTOR TO
CONDUCT AUCTION


Appearances:

MESSRS.SCHULTE, ROTH & ZABEL
      Attorneys for Debtor
By:  JAMES PECK, Esq.
      KIRK BRETT, Esq.


MELANIE STRASSBERG, Esq.
          Attorney for U.S. Trustee's Office


              GERALD I. METZ, C.S.R.
              Official Court Reporter —
              212-969-0861
              914-427-7474

2

```
 1                     Accessory Place, Inc.

 2        A p p e a r a n c e s:  (Continued)

 3

 4    Messrs. EATON & VAN WINKLE

 5             Attorneys or DeBARTOLO PROPERTIES

 6             MANGEMENT, INC.

 7    By:   ROBERT W. DREMLUK, Esq.

 8

 9    Messrs. ZALKIN, RODIN & GOODMAN, LLP

10             Attorneys for ROYAL HAWAIIAN

11    By:   JAY TEITELBAUM, Esq.

12

13    Messrs. PARKER DURYEE ROSOFF & HAFT

14             Attorneys for EMIGRANT SAVINGS BANK

15    By:   WILLIAM M. RIFKIN, Esq.

16

17    Messrs. BERKMAN, HENOCH, PETERSON & PEDDY, P.C.

18             Attorneys for CORPORATE PROPERTY

19             INVESTORS

20    By:   DOUGLAS E. SPELFOGEL, Esq.

21

22    Present:

23             HAROLD J. BORDWIN

24                  Vice President

25                  Keen Realty Consultants, Inc.
```

3

1           Accessory Place, Inc.

2           MR. PECK:  Good morning, your

3    Honor.  James Peck, counsel for the debtor,

4    Accessory Place, Inc. There are two matters

5    scheduled this morning and I would propose to

6    take them in reverse order from the order in

7    which they appear on the calendar.

8           THE COURT:  That would be fine.

9           MR. PECK:  The two matters are a

10   contested application for retention of Keen

11   Realty Consultants.  It is contested as a

12   result of an objection that we received by the

13   office of the U.S. Trustee.  That application

14   relates to the second matter, which is an

15   application for the authorization of auction

16   procedures and bidding procedures in connection

17   with the leasehold interests of the debtor.

18   Because that latter matter depends upon the

19   approval of Keen in order for us to carry it

20   forward, we think it probably makes logical

21   sense to start with the issue of the Keen

22   retention first, if the court has no objection.

23          THE COURT:  No, none whatsoever.

24          MR. PECK:  Keen Realty is a firm

25   that specializes in troubled real estate and

4

1         Accessory Place, Inc.

2    leases.  The debtor engaged in discussions with

3    Keen representatives shortly after the

4    commencement of this case and following

5    negotiation entered into an agreement which is

6    attached to the application to retain Keen.

7    Notice of presentment was given to the top 20

8    creditors, the office of the U.S. Trustee and

9    others who had requested notice in the case,

10   with a presentment date of March 4 at 12 noon.

11   We received notice orally and then a formal

12   objection from Brian Massumoto of the office of

13   United States trustee, raising questions not

14   with respect to whether or not it was a sound

15   exercise of the debtor's business judgment to

16   retain Keen or a firm like Keen but raising a

17   number of concerns concerning Keen's compliance

18   with the guidelines for professionals in this

19   district.

20         I understand, based upon a report

21   from Harold Bordwin, who is a vice president of

22   Keen Realty, that conversations took place

23   yesterday between Mr. Massumoto and Mr. Bordwin

24   in an effort to resolve these objections and

25   unfortunately, while there was an open

5

1              Accessory Place, Inc.

2    discussion, the objections remain unresolved

3    and will have to be resolved by the court.

4              I don't wish to characterize them

5    because I think the representatives of the

6    office of the U.S. Trustee can do so, but

7    fundamentally, and without limiting their

8    ability to comment, the objections relate to

9    the payment of an alleged postpetition

10   retainer, a deviation from the time and

11   record-keeping requirements of the guidelines

12   and the filing of a fee application.  A number

13   of cases were cited in support of those

14   objections and the materials submitted by the

15   U.S. Trustee in writing.  I have reviewed those

16   cases.  They all relate to the retention of

17   lawyers by a debtor.  Some of  them, I believe,

18   are distinguishable and I  would ask, before

19   commenting on the legal merits, that the U.S.

20   Trustee's office make whatever comments they

21   wish to make with respect to these objections

22   and then either Mr. Bordwin or I will comment

23   in response.

24              THE COURT:  All right.  Does the

25   U.S. Trustee wish to be heard?

1                       Accessory Place, Inc.

2                       MS. STRASSBERG:   Counsel is

3    correct.   We have filed an objection and our

4    objection is limited to the basic fee

5    arrangement as proposed by the applicant and

6    the debtor.

7                       Our objection is on three points.

8    First of all, it appears that upon the

9    execution of this order that will be submitted

10   today, Keen Realty will be paid up-front

11   approximately $24,500, what our office believes

12   is in a postpetition retainer.

13                      Secondly, it appears that Keen

14   will also be paid upon consummation of a

15   transaction, an assignment or pursuant to the

16   terms of the letter of engagement. We would

17   submit that prior to any payments to Keen

18   Realty it should be done on notice and

19   application to all creditors.

20                      Finally, the applicant has

21   requested to be exempted from the time-keeping

22   requirements as imposed by the local rules and

23   the guidelines. We would submit that it is

24   necessary in order to determine the

25   reasonableness of the applicant's fees to keep

7

1              Accessory Place, Inc.

2    contemporaneously time records that should be

3    submitted in accordance with any fee

4    application submitted to this court.

5              THE COURT:  What is the proposal,

6    the compensation proposal for Keen on a

7    per-lease basis?

8              MS. STRASSBERG:  To me?

9              THE COURT:  Yes.

10             MS. STRASSBERG:  I think the

11   compensation is  on a gross proceeds basis, but

12   the minimum would be, guarantee minimum of

13   $2500 based on any single transaction, and

14   overall is subject to a cap of 20 percent.

15             THE COURT:  So it is $2500 per

16   lease and a cap of 20 percent of the gross

17   proceeds?

18             MS. STRASSBERG:  I believe that's

19   correct, your Honor.

20             THE COURT:  Is that it, Mr. Peck?

21             MR. PECK:  Your Honor, that is

22   correct, although, the use of gross proceeds, I

23   think, is misleading. So let me make a

24   clarification on the record. There is a

25   reference to net proceeds in the agreement, but

8

1                    Accessory Place, Inc.

2    net proceeds, as it is defined, does not

3    include a variety of other expenses that might

4    otherwise be deducted for purposes of

5    calculating a net amount realized by the

6    estate. So that it is a 20 percent cap on net

7    proceeds as that term is defined in the

8    agreement, but for some purposes, in common

9    speech, it might mean gross proceeds. It really

10   means gross proceeds less cure amounts and

11   other amounts that must be paid in order to

12   assume and assign the lease, but does not

13   include expenses such as the out-of-pocket

14   expenses of Keen for advertising and related

15   expenses, nor does it include closing costs as

16   that term is sometimes used.

17                    THE COURT:  So, the minimum

18   payment to Keen under this deal is how much?

19                    MR. PECK:  The minimum payment to

20   Keen is $24,500. That would be $500 per lease

21   location.

22                    THE COURT:  You mean assuming you

23   sell all the leases?

24                    MR. PECK:  If we were to sign this

25   agreement -- we have signed it. If we  were to

1                    Accessory Place, Inc.

2        be approved and we were to make a judgment to

3        reject all leases and not use Keen's services,

4        they would still have earned a fee of $24,500

5        for the 49 locations.  On a closed transaction

6        basis, and the debtor retains full discretion

7        to determine whether or not to close any

8        transaction, there would be a fee of $2500, or

9        six percent of the net proceeds, whichever is

10       greater, but in those events where amounts

11       realized on a closed transaction are less than

12       the $2500 and we are not as a debtor persuaded

13       to close a transaction, there is a compromise

14       fee that represents some 50 percent of the

15       actual amount received by the debtor.

16                    THE COURT:  Say that again.  Now

17       the actual proceeds are going to equal $2000.

18                    MR. PECK:  If there were a

19       transaction that realized for the debtor $2000

20       for the sake of discussion and in such event

21       the minimum fee of $2500 would make it

22       commercially impractical for the debtor to

23       close such a transaction, the agreement

24       provides that the proceeds, call it $2000 in

25       this example, would be split 50-50 in lieu of

1              Accessory Place, Inc.

2      .the regular fee arrangement.

3              THE COURT:  All right.

4              MR. PECK:  As an overlay on top of

5      all of the fees to be earned by Keen is a

6      negotiated cap, which I understand from Mr.

7      Bordwin is an unusual arrangement and one that

8      resulted from these particular negotiations.

9      The cap on overall compensation provides a

10     limit of 20 percent on net proceeds as to all

11     compensation realized. It was designed, at

12     least from the debtor's perspective, to avoid

13     the risk that on a transaction by transaction

14     basis there would be an accumulation of $2500

15     minimum fees which had the effect of skewing

16     the fees such that they would on an overall

17     basis disproportionately compensate Keen

18     relative to the benefits to the estate.  I

19     think that's at least my attempt to paraphrase

20     the compensation arrangements in this

21     agreement, and to the extent that I have

22     misstated anything, since Mr. Bordwin is here,

23     if he can, with the court's permission, clarify

24     anything that I just stated.

25              THE COURT:  The $24,500 is  on

1                        Accessory Place, Inc.

2    account of the $2500 or in addition to the

3    $2500 per lease?

4                        MR. PECK:   The $24,500 is on

5    account of that. There is a $500 payment which

6    off-sets any closed transaction. So that on a

7    lease-by-lease basis, if one were to close

8    lease 80, just to pick an arbitrary number, and

9    there was a fee of $2500 earned, there would be

10   an incremental $2000 payable upon the closing

11   of that transaction, but if lease 80 were to

12   result in a rejection and there were no

13   proceeds to the estate, the $500 would not be

14   offset against any other fee.

15                       THE COURT:   It wouldn't be offset

16   against the 60 percent overall -- a 20 percent

17   overall?

18                       MR. PECK:   I think it would be

19   included in the 20 percent cap as a fee, but it

20   wouldn't be an offset against an earned

21   commission.

22                       THE COURT:   Except to the

23   extent -- maybe it is not an offset, but it

24   does --

25                       MR. PECK:   It is part of the

1                    Accessory Place, Inc.

2    overall compensation for purposes of

3    determining the applicability of the 20 percent

4    cap, but it is a transaction-by-transaction

5    offset.

6                    THE COURT:  Understood.  All

7    right. What is the U.S. Trustee's position with

8    respect to the guidelines?

9                    MS. STRASSBERG:  I think for the

10   reasons just explained by counsel, all of the

11   possible contingencies that might occur in this

12   case which vary with their proposal to market

13   and assign these properties will lend more to

14   the U.S. Trustee's position that prior to any

15   payments based on a transactional basis should

16   be subject to a noticed hearing to determine

17   the reasonableness.  At this time there are so

18   many contingencies out there, it is impossible

19   at this time for any parties in interest to

20   determine the reasonableness of the fees

21   requested.

22                   THE COURT:  Isn't this just a

23   contingent fee arrangement, isn't it closely

24   associated with that?  They are saying, in

25   substance, we will market the leases. We will

1                          Accessory Place, Inc.

2          sell them and we will get paid and our overall

3          compensation won't exceed 20 percent of the net

4          proceeds and on a lease-by-lease basis we will

5          take $2500, if there is at least that. They are

6          basically saying, look, we are willing to do

7          this for a percentage of what it is what's

8          realized in these transactions.  We are

9          proposing, we do this all time. We think we

10         know how to do it better than anybody else and

11         we just want to do it on a percentage basis.

12                    MS. STRASSBERG:  That's correct.

13         Except for the fact that by looking at the

14         applicant's own letter of engagement, I  think

15         they can themselves concede of instances where

16         a fee calculated on a percentage basis might be

17         unreasonable; for example, it is proposed that

18         if the leases are consummated -- or assigned to

19         an entity called Claire's Boutique, in that

20         instance they have already stated in their

21         letter of engagement that they agreed with the

22         debtor to reduce it commissions based upon the

23         assignment to Claire's Boutique. So it appears

24         that there are situations where the applicant

25         already concedes that the terms of their

14

1          Accessory Place, Inc.

2    retention might be unreasonable.  For the same

3    reason, it is our position, your Honor, that

4    prior to any payments of compensation, other

5    parties in interest, as well as the debtor or

6    any creditors, including our office, should be

7    given an opportunity to determine the

8    reasonableness of the transaction.

9          THE COURT:  Do you think there

10   will come a time when after you have seen what

11   they do they ought to get more than they said

12   they would take?

13         MS. STRASSBERG:  No.  I don't

14   think--

15         THE COURT:  Is that fair, with all

16   due respect, is it fair then to say heads I

17   win, tails you lose?  You can sign on for up to

18   20 percent of the net proceeds. It may turn out

19   that you have made a bad deal and you end up

20   spending a lot more time on this than you had

21   originally intended, yet you are still stuck

22   with 20 percent.  However, if you have made a

23   good deal and you spend just the amount of time

24   you think you will spend and you capitalize on

25   your experience in the marketplace and the

15

1                    Accessory Place, Inc.

2      .expertise that you bring, you shouldn't be

3      compensated for it. Is that a fair result?  Any

4      more than if you said to the lawyer who comes

5      in and says I will take the securities action

6      on a contingent fee basis and she goes out and

7      writes a magnificent brief, wins the matter on

8      a motion hands down, that somebody comes back

9      and says, well, you are not entitled to what

10     you agreed to do it on, whereas if you took it

11     to trial, went through all of the appeals,

12     three years later you were successful, you

13     still would only get what you agreed to.  Do

14     you think that's right?

15              MS. STRASSBERG:  Well, in the

16     circumstances proposed by your Honor, no; I

17     agree.  From our office's perspective, it has

18     been a consistent policy of our office. We have

19     tried to make accommodations for the applicant

20     in cases such as this. It has consistently been

21     our policy that prior to any payments, you

22     should be subject to a Notice of Hearing, but

23     of course it is within your discretion whether

24     or not to require that hearing. The only other

25     concern our office would have would be when the

1          Accessory Place, Inc.

2     applicant finally does submit time records, the

3     form of the time records that they are

4     proposing to submit to the court  and other

5     parties in interest.

6               THE COURT:  All right.  Does the

7     funder wish to be heard?

8               MR. TEITELBAUM:  Jay Teitelbaum;

9     Zalkin, Rodin & Goodman, on behalf of Royal

10    Hawaiian.

11              THE COURT:  Notice I didn't say

12    the bank.

13              MR. TEITELBAUM:  I appreciate

14    that. We have reviewed the Keen application and

15    in fact the retainer agreement, and we had some

16    comments and they were communicated to debtor's

17    counsel and incorporated, and as the party with

18    the dollars on the line here, we believe it

19    makes a lot of sense to retain Keen on the

20    terms and conditions set forth there, not to

21    add any further bells and whistles regarding

22    fee applications, time records, etc., and this

23    Court has done similar applications in other

24    matters and not required it.  We know who Keen

25    is and what kind of job they can do.

1           Accessory Place, Inc.

2                   Another concern that we believe we

3    have addressed is regarding the carve-out.  We

4    believe that by working with the debtor, we

5    have at least implicitly -- and I am stating

6    it here for the record, we have consented the

7    carve-out would extend to make sure Keen's fees

8    would be paid as an administrative priority.

9                   So, your Honor, we are just

10   standing here to support the debtor's

11   application to retain Keen and hopefully get

12   this case closed out as quickly and efficiently

13   as possible.

14                   THE COURT:  Does anyone else wish

15   to be heard?

16                   MR. PECK:  I would simply like to

17   clarify the record in respect to Claire's

18   Boutique as a variation on the compensation

19   theme within the agreement.  Because there were

20   discussions that had taken place prior to the

21   commencement of this bankruptcy case between

22   debtor's representatives and Claire's, it was

23   determined that there should be a different

24   compensation arrangement as to Claire's and

25   that's built into the agreement. It provides

18

1                         Accessory Place, Inc.

2          for five percent commission instead of the six

3          percent that applies to other transactions

4          because conversations were already underway,

5          and it also provides a certain bonus

6          compensation in the event that overall amounts

7          realized from the Claire's transaction exceeds

8          a certain amount which is set forth in the

9          application.

10                    With regard to the U.S. Trustee's

11         concern on compliance with the guidelines,

12         speaking on behalf of the debtor, we believe

13         that it is appropriate, given the nature of the

14         services that to are to be rendered by Keen,

15         that Keen be excused from the traditional

16         time-keeping requirements that have just been

17         alluded to in counsel's comments.  Keen is an

18         entity which traditionally provides services

19         unrelated to the recording of time more

20         comparable to a  real estate broker that might

21         be retained to sell residential real estate or

22         cooperative apartment in New York City in which

23         a commission is earned upon generation  of a

24         transaction.

25                    Additionally, from the debtor's

1        Accessory Place, Inc.

2    perspective, we view what Keen will be doing is

3    in a sense the outlay of services by an

4    organization which no longer has within its

5    infrastructures sufficient expertise or

6    sufficient staff to conduct the kinds of

7    negotiations that we believe are necessary

8    during the period between Keen's retention and

9    the proposed auction to be discussed in our

10   next application. So we are, in a sense,

11   acquiring businesspeople who are committed to

12   this effort and who have background and

13   experience to do work that would otherwise be

14   done by the debtor. This is not the kind of

15   work which is typically or ever compensated on

16   an hourly basis.  So  we would urge that there

17   be a deviation from the guidelines in respect

18   of time keeping.

19        However, we have discussed with

20   Mr. Bordwin, and Mr. Bordwin has agreed to

21   submit, a final application at the conclusion

22   of his services that would summarize the fees

23   and expenses associated with the undertaking

24   and it would be on notice to the list that's

25   entitled to notice and would be heard and

20

1                    Accessory Place, Inc.

2      determined in a manner comparable to the fee

3      applications that we anticipate having to file

4      here as well as  our own firm.

5                    THE COURT:  They would receive

6      payments on account during the pendency of the

7      case?

8                    MR. PECK:  They would receive

9      payments in accordance with the application

10     that's now before your Honor and the agreement

11     which is attached to that application.

12                   THE COURT:  I understand that.

13     That would be on account?

14                   MR. PECK:  Yes.

15                   THE COURT:  You are not proposing

16     that they submit the application and then get

17     compensated at the end.  You are saying they

18     would file something to show what they did, the

19     transactions they brokered, calculate the

20     commissions in accordance with the agreement

21     and ask for final approval of that.

22                   MR. PECK:  That's correct.

23                   THE COURT:  With the understanding

24     that there is a possibility that they may not

25     get final approval for it?

1              Accessory Place, Inc.

2                    MR. PECK:  I think that's inherent

3      in the process, your Honor.

4                    THE COURT:  Is a representative of

5      Keen here?

6                    MR. BORDWIN:  Yes.

7                    THE COURT:  Let's make explicit

8      that which is inherent in the process.

9                    MR. BORDWIN:  Harold Bordwin, an

10     officer and principal of Keen Realty, and we

11     understand that we will file a final fee

12     application in the case and any fees and

13     disbursements that we received are subject to

14     judicial review and potential disgorgement, if

15     necessary.

16                   THE COURT:  All right, that would

17     be fine.  Anything else from the U.S. Trustee?

18                   MS. STRASSBERG:  No, your Honor.

19                   THE COURT:  I note there is no

20     objection to the retention of Keen, the

21     necessity of bringing in Keen to handle the

22     matters which are the subject of the next

23     hearing.  The U.S. Trustee's objection as more

24     fully set forth in the U.S. Trustee's papers

25     goes to the compensation arrangements arrived

1              Accessory Place, Inc.

2     at between the debtor and Keen, more

3     specifically the payment on account during the

4     pendency of the case, as well as the necessity

5     for Keen to file a fee application and keep

6     contemporaneous time records detailing the

7     efforts that it undertakes in marketing and

8     selling the leases.

9              I respectfully disagree with the

10    U.S. Trustee that Keen ought to be required to

11    comply with our guidelines or the guidelines of

12    the U.S. Trustee.  Although we find those to be

13    very, very helpful in assisting the court in

14    its analysis of fee applications, I think the

15    benefit of those guidelines is more significant

16    when you are dealing with the more traditional

17    professional, that being an accountant or an

18    attorney.  Here Keen is being retained to

19    undertake a marketing program of all of the

20    leases and what is being retained here is

21    Keen's expertise in that regard, something that

22    is not necessarily easily translatable into

23    time spent with respect to any particular

24    lease.

25              I am satisfied that the

1                       Accessory Place, Inc.

2           arrangement reached by the debtor is in the

3           best interests of the estate and the creditors,

4           all of course subject to final approval after

5           the engagement is completed, but what I am

6           prepared to do is to excuse Keen from complying

7           with the fee guidelines, but Keen is going to

8           be required, Mr. Bordwin has acknowledged, to

9           file at the end of its engagement a final fee

10          application and in there it is going to be

11          required to provide sufficient detail in

12          affidavit form respecting the efforts it made,

13          it undertook in marketing and selling the

14          leases as well as the breakdown of the

15          calculation of the fee as tied to the agreement

16          so that somebody reviewing it will be able to

17          make appropriate reference to the agreement to

18          determine whether or not the fee, based upon

19          the agreement, is an appropriate fee.

20                       Given the kind of work that Keen

21          is doing, and under these circumstances, this

22          being a liquidating case, I am not troubled

23          with the payment on account prior to the final

24          hearing on the award. That is in large part

25          because of our familiarity with the Keen group,

24

1                   Accessory Place, Inc.

2       the amount of work that it does in this court

3       and the acknowledgment by Mr. Bordwin that any

4       payment it receives either on account of the

5       fee or reimbursement of expenses is subject to

6       disgorgement, if ultimately that's what the

7       court determines.

8                   Accordingly, we respectfully

9       overrule the trustee's objection. We approve

10      the retention of Keen. Do you have an order.

11      Is it substantially in the form that was

12      annexed to the moving papers?

13                  MR. PECK:  It is substantially in

14      the form annexed. However, there have been the

15      following changes made that I will read into

16      the record.   There is the addition of a

17      reference on page 1 of the order in the first

18      paragraph to the objections that have been

19      filed and it says now, "And upon consideration

20      of all objections to the application, including

21      the objections submitted by the office of the

22      U.S. Trustee," and in addition there is some

23      new language added at the very end of the order

24      which anticipated the outcome of today's

25      hearing and as a result is in a form which I

1        Accessory Place, Inc.

2    .think is suitable to execution without further

3    adjustment which reads,  the final decretal

4    paragraph, "ORDERED that Keen shall be paid by

5    the debtor in accordance with the terms of the

6    retention agreement.  Subject to the filing of

7    a final fee application, Keen shall be exempt

8    from the requirements set forth in the

9    Administrative Order re Guidelines for Fees and

10   Disbursements for Professionals in Southern

11   District of New York bankruptcy cases,

12   docketed June 24, 1991, relating to the keeping

13   of time records and the submission of periodic

14   summaries of fees and expenses."

15              THE COURT:  All right.  Does the

16   U.S. Trustee wish to be heard?

17              MR. MASSUMOTO: Just one point of

18   clarification.  In your ruling you are also

19   ruling that they are entitled to receive the

20   postpetition retainer?

21              THE COURT:  Yes, I am.

22              MR. MASUMOTO:  Thank you.

23              THE COURT:  I have reviewed the

24   proposed order.  Does the U.S. Trustee wish to

25   review it?  It is substantially in the form to

26

1            Accessory Place, Inc.

2    that which was annexed other than what Mr. Peck

3    just outlined on the record.

4            MR. MASSUMOTO:   That's fine.

5            THE COURT:   No objection to the

6    form?

7            MR. MASUMOTO:   No.

8            THE COURT:   I have reviewed the

9    proposed order.   I have dated it today's date.

10   I have signed it.

11           MR. PECK:   Now that Keen Realty

12   has officially been retained, we can from the

13   debtor's perspective move to the next item on

14   the docket today and that is the hearing on the

15   order to show cause that was entered on

16   February 27, 1996 and which relates to the

17   scheduling and conduct of an auction of

18   debtor's unexpired real estate leases.   Notice

19   was sent in accordance with the order to show

20   cause to the debtor's top 20 creditors, to the

21   debtor's landlords, and to parties who have

22   requested notice as well as to the office of

23   the U.S. Trustee and to Royal Hawaiian Shopping

24   Center.

25           As of 5 p.m. yesterday, which was

**EXHIBIT B**

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 10-13779(ALG)

5    - - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    JENNIFER CONVERTIBLES, INC., ET AL.,

9

10           Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  August 10, 2010

19                  11:31 AM

20

21   B E F O R E:

22   HON. ALLAN L. GROPPER

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1    HEARING re Motion filed by debtors for approval of adequate

2    assurance of payment to utility services and continuation of

3    service.

4

5    HEARING re Application filed by debtors for authorization to

6    employ and retain TM Capital Corp. as financial advisors to the

7    debtors.

8

9    HEARING re Application filed by debtors for authorization to

10   employ and retain Olshan Grundman Frome Rosenzweig & Wolosky

11   LLP as attorneys for the debtors nunc pro tunc to the petition

12   date.

13

14   HEARING re Application filed by debtors for authorization to

15   employ and retain KPMG CF Realty LLC as special real estate

16   advisor for the debtors nunc pro tunc to the petition date.

17

18   HEARING re Motion filed by debtors for administrative order

19   establishing procedures for interim compensation and

20   reimbursement of expenses of professionals.

21

22   HEARING re Omnibus limited objection/request for adequate

23   protection of Ashley HomeStores, Ltd., with respect to

24   continued use of trademark and certain matters.

25   Transcribed by:  Penina Wolicki

Page 3

1

2    A P P E A R A N C E S :

3    OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY, LLP

4          Attorneys for Debtors

5          Park Avenue Tower

6          65 East 55th Street

7          New York, NY 10022

8

9    BY:   MICHAEL FOX, ESQ.

10         JORDANNA L. NADRITCH, ESQ.

11

12

13   U.S. DEPARTMENT OF JUSTICE

14         Office of the U.S. Trustee

15         33 Whitehall Street

16         21st Floor

17         New York, NY 10004

18

19   BY:   NAZAR KHODOROVSKY, ESQ.

20         ANDREW VELEZ-RIVERA, ESQ.

21

22

23

24

25

Page 4

1

2    KELLEY DRYE & WARREN LLP

3         Attorneys for Official Creditors' Committee

4         101 Park Avenue

5         New York, NY 10178

6

7    BY:   JASON R. ADAMS, ESQ.

8

9

10   NEIGER LLP

11        Attorney for Haining Mengnu Group Co. Inc.

12        317 Madison Avenue

13        21st Floor

14        New York, NY 10017

15

16   BY:   EDWARD E. NEIGER, ESQ.

17

18   WILLKIE FARR & GALLAGHER LLP

19        Attorneys for KPMG CF Realty

20        787 Seventh Avenue

21        New York, NY 10019

22

23   BY:   ROBIN SPIGEL, ESQ.

24

25

JENNIFER CONVERTIBLES, INC., ET AL.

Page 5

1                     P R O C E E D I N G S

2              THE COURT:  Jennifer Convertibles.

3         (Pause)

4              THE COURT:  Do we have anyone on the phone for

5    Jennifer?

6              THE CLERK:  No, Your Honor.

7              THE COURT:  All right.  Then we can close the line.

8         (Pause)

9              THE COURT:  All right, may I have appearances in

10   Jennifer Convertibles, please?

11             MR. FOX:  Good morning, Your Honor.  Michael Fox and

12   Jordanna Nadritch representing Jennifer Convertibles.

13             MR. VELEZ-RIVERA:  Andrew Velez-Rivera for the United

14   States Trustee.

15             MR. ADAMS:  Jason Adams of Kelley Drye & Warren on

16   behalf of the committee.

17             MR. NEIGER:  Good morning, Your Honor.  Edward Neiger,

18   Neiger LLP, on behalf of Mengnu Group Co. -- Haining Mengnu

19   Group Co. Inc.  Thank you.

20             THE COURT:  Anyone else appearing?  All right.

21             MR. FOX:  The only thing I'd like to bring to your

22   attention, Your Honor, is that I received an e-mail late last

23   night from Nathan Schultz, representing Ashley, saying that he

24   had no objection to any of the relief today and I was so

25   authorized and directed to make that announcement to you.

JENNIFER CONVERTIBLES, INC., ET AL.

Page 6

1         THE COURT:  Very good.

2         MR. FOX:  Well, Your Honor, today we have, hopefully,

3   a short agenda.  And again, I think it's just a function of us

4   trying to work with as many of the constituencies that are in

5   front of us, so that when we are in front of you, when we go

6   through the different applications and motions, hopefully

7   they've been vetted and we've obtained as much consent as

8   possible from the different parties.

9         THE COURT:  All right.

10        MR. FOX:  I think, as the agenda will reflect, I'm

11  happy to go through it any particular order --

12        THE COURT:  Well, I have your agenda.  Let's start

13  with the Olshan retention.  Does anyone wish to be heard?

14        All right.  You've satisfied the U.S. Trustee and I'll

15  be happy to sign the order.

16        MR. FOX:  Thank you.

17        THE COURT:  Thank you.  We're also twenty days into

18  the case, so, you've complied with the rule.  Let me just get

19  the right file.

20        MS. NADRITCH:  Your Honor, we have proposed orders, if

21  that will be -- we can bring them up to you.

22        THE COURT:  You have disks, right?

23        MS. NADRITCH:  We have disks --

24        THE COURT:  I have --

25        MS. NADRITCH:  -- and hard copies.

Page 7

1          THE COURT:  -- right.  I have new copies of the order.

2    And I think it's fine.  All right.  Very good.

3          Next on your agenda is the TM Capital retention.

4          MR. FOX:  There's only one further clarification that

5    I need to make, although I think it is agreed to, and that's

6    that the deposit of 75,000 dollars that TM Capital was holding

7    prepetition will be applied prospectively as their -- pursuant

8    to any interim application or pursuant to any compensation

9    order that Your Honor would enter.

10          THE COURT:  All right.

11          MR. FOX:  So it won't be held as an evergreen.

12          THE COURT:  All right.  That's certainly good policy.

13    And do they have a success -- they have no success fee.

14          MR. FOX:  They do have a success fee, Your Honor.

15    They have a success fee of 500,000 dollars that nobody is pre-

16    approving today.

17          THE COURT:  That's going to go out for forty-five-day

18    notice?  Is that --

19          MR. FOX:  Well, that was not -- the --

20          THE COURT:  -- is that --

21          MR. FOX:  -- to satisfy the Trustee, what I --

22          THE COURT:  What was done?

23          MR. FOX:  We had agreed that the standard of review

24    would be reason -- subject to 330, so that upon an appropriate

25    plan, and hopefully we'll have a final application at the end

JENNIFER CONVERTIBLES, INC., ET AL.

1   of the case, the U.S. Trustee and other parties will have that

2   opportunity to see if TM Capital has, in fact, met the burden.

3   However, the per se inclusion of the success fee at 500,000

4   dollars, they are not objecting to.  They're just objecting

5   that they need to have the 330 review at the conclusion of the

6   case.

7          THE COURT:  Where does it say that in the papers?

8          MR. FOX:  In the proposed order -- I hope that Your

9   Honor has -- I'm happy to hand up --

10          THE COURT:  Well, tell me what paragraph.

11          MR. FOX:  Paragraph 3 and then paragraph 4.

12          THE COURT:  Paragraph 3.

13          MS. NADRITCH:  Paragraphs 3 and paragraph 6, Your

14   Honor.

15          THE COURT:  Well, 3 says, "The transaction fee shall

16   be subject to Section 328."  That --

17          MR. FOX:  Which --

18          THE COURT:  -- is not what you just said.

19          MR. FOX:  -- but 3 is saying --

20          THE COURT:  It is.  And 6 says -- well, why don't we

21   just strike any reference to 328(a)?

22          MR. FOX:  Well --

23          THE COURT:  This is -- to me, this is absolutely and

24   totally ambiguous -- to me.  If it's ambiguous to me, it's

25   going to be ambiguous to -- what you said on the record is

JENNIFER CONVERTIBLES, INC., ET AL.

Page 9

1    perfectly clear.  So let's take out any reference to 328(a),

2    and we'll -- and I think this will be perfectly clear.

3                    UNIDENTIFIED ATTORNEY:  Your Honor, for purposes --

4                    THE COURT:  Either that, or make paragraphs 3 and 6

5    clear.

6                    MR. FOX:  Well, I will try to make 3 and 6 clear, Your

7    Honor, because what the intent of it is, is that the actual

8    term itself, under 328 is included, so everybody's aware of it

9    and that --

10                   THE COURT:  All right.

11                   MR. FOX:  -- it's part of their engagement terms.  330

12   just gives them the right to make sure that there's no finding

13   today that that provision wasn't in a previous agreement.  And

14   I think it's subject to different standards than a bonus.  This

15   is part of their transaction fee.  And under 330 --

16                   THE COURT:  I don't understand.

17                   MR. FOX:  -- they reserve --

18                   THE COURT:  I thought it's going to be subject to

19   anyone's challenge on the basis of reasonableness.

20                   MR. FOX:  It will be subject to anybody's challenge --

21   the U.S. Trustee's challenge under 330, and every other party

22   has that same ability to object under the reasonable standard

23   under 330.

24                   THE COURT:  All right.  That is not -- that's

25   different from many success fees that are entered where only

JENNIFER CONVERTIBLES, INC., ET AL.

Page 10

1    the U.S. Trustee reserves the right to challenge on

2    reasonableness grounds.  Just make it clear.  It's not clear.

3    Paragraph 3 and paragraph 6 look like they're contradictory.

4    Just make it clear.

5            MR. FOX:  Okay.  We'll submit something at the --

6    hopefully --

7            THE COURT:  Just mark it up.  Take a pen and mark it

8    up or I'll mark it up, so that it's clear.  And paragraph 12, I

9    think is -- this is a new one to me.  And this seems to bind

10   us -- I'll add, "as of the date hereof" at the beginning, and

11   at the end, "comma", "subject to the provisions of Section

12   328(a)," because I think this can be misread as writing out of

13   the Bankruptcy Code the second sentence of 328(a), which you

14   tell me is not what's -- it's not at all what's intended.

15           MR. FOX:  It's not.

16           THE COURT:  So I'll leave this in here, subject to

17   those two changes.  But we still have to make paragraph --

18           MR. FOX:  3 and 6 reconciled.

19           THE COURT:  -- 3 and 6 -- see, paragraph 3 is subject

20   to the limitations in paragraph 4.  It should be subject to the

21   limitations --

22           MR. FOX:  It should be paragraphs --

23           THE COURT:  -- 4 and 6.

24           MR. FOX:  Actually, Your Honor, to be --

25           THE COURT:  Oh, I see.  You're in 7.  That's the

JENNIFER CONVERTIBLES, INC., ET AL.

Page 11

1    typical -- all right -- and 7.  And that should be "all parties

2    retain."  I think that's what you just told me.  All parties

3    retain the right to review the success fee on reasonableness

4    grounds.  If that's true, then, all "parties in interest" --

5    that's the --

6            MR. FOX:  So 7 is the more operative paragraph.

7            THE COURT:  -- retain -- yes, you're right.  It is 7.

8    In the event there is an objection, provided -- and -- it's not

9    provided -- and the Court -- all right.  I'll mark up 7.  I

10   think it's now clear.  All right.  Thank you.

11           All right.  Your next matter on your agenda is KPMG

12   retention.

13           MR. FOX:  We have an interim order --

14           THE COURT:  Why do we have an interim order for that?

15           MR. VELEZ-RIVERA:  Well -- Andrew Velez-Rivera for the

16   United States Trustee, while Ms. Spigel makes her way to the

17   podium, Your Honor.  KPMG and the U.S. Trustee are having a

18   philosophical disagreement --

19           THE COURT:  Well, yes, you have a blank in here.  I'm

20   tired of philosophical agreements (sic).  Every other broker

21   that's retained in this Court agrees with the practices of the

22   U.S. Trustee, right?  For some reason KPMG can't agree.  Is

23   that what's happened?

24           MR. VELEZ-RIVERA:  That's correct, Your Honor.

25           THE COURT:  Well, there are a lot of brokers in this

JENNIFER CONVERTIBLES, INC., ET AL.

Page 12

1   city. And now, do we have an appearance for KPMG? Have you

2   given your card to the court reporter?

3          MS. SPIGEL: No. I will.

4          THE COURT: Would you please --

5          MS. SPIGEL: Yes.

6          THE COURT: -- before the end. But state your name

7   and state why KPMG has to be different from every other real

8   estate broker retained in any case before this Court.

9          MS. SPIGEL: Okay. It's Robin Spigel, Willkie Farr &

10  Gallagher, counsel for KPMG CF Realty. I do not believe that

11  KPMG is different from any other broker. The issue -- we have

12  compromised on all issues with the U.S. Trustee, other than the

13  standard of review. The blank in the order relates to a

14  further hearing date.

15         THE COURT: No, I don't see any reason. We have a lot

16  of things going on in this case. I don't see any reason why we

17  have to have this thing put over for a further hearing date on

18  an interim basis.

19         MS. SPIGEL: That's fine with KPMG CF. It was -- as a

20  courtesy, there was additional time requested by the U.S.

21  Trustee. But we're fine --

22         THE COURT: Well I --

23         MS. SPIGEL: -- we're fine going forward today.

24         THE COURT: -- and what's the issue?

25         MS. SPIGEL: The issue is --

JENNIFER CONVERTIBLES, INC., ET AL.

Page 13

1          THE COURT:  That your fees should be subject to

2    reasonableness standards?

3          MS. SPIGEL:  Yes, that's right.  Your Honor, I would

4    say that KPMG CF often gets 328 review as a real estate

5    consultant.  And there is a -- their formula for fees is

6    exactly what's contemplated under Section 328 of the Bankruptcy

7    Code.  And for the U.S. Trustee -- I don't think that there is

8    a practice or procedure, necessarily for real estate

9    consultants as opposed to bankers, where they may give the U.S.

10   Trustee a 330 reasonableness review.  Here, KPMG is entitled to

11   a certain fee related to the savings that the debtors will

12   get --

13         THE COURT:  It's a contingency.

14         MS. SPIGEL:  -- correct.

15         THE COURT:  All right.

16         MS. SPIGEL:  And I believe that that's what 328

17   specifically goes --

18         THE COURT:  So what has to be retained then?  What has

19   to go to Washington for further review?

20         MR. VELEZ-RIVERA:  Oh, nothing, Your Honor.  The

21   United States Trustee simply desires a breakdown and her rights

22   under Section 330, to review each of those transactions and the

23   fees derived therefrom.

24         THE COURT:  Don't you have anything better to do?  Of

25   course you can review each of those transactions to see if

JENNIFER CONVERTIBLES, INC., ET AL.

Page 14

1   they've satisfied the contingency.  What's the issue, then?

2   What we're doing is we're setting the contingency.  Is that

3   correct?

4          MS. SPIGEL:  That's correct, Your Honor.

5          THE COURT:  Fine.  You can review each transaction.

6   It either satisfies the contingency or it doesn't.  But we're

7   not going say well, this contingency should have been a little

8   bit lower because the amount is a little bit higher.  328 still

9   has a savings clause in the event of truly unforeseen

10  circumstances.  The Second Circuit has allowed a very, very

11  narrow exception to that.  So what's the issue?

12         MR. VELEZ-RIVERA:  If that's your ruling, Your Honor,

13  we're perfectly fine in agreeing with it.

14         THE COURT:  All right.  That's my ruling.  Let's

15  set -- finish this order and let's enter an order.  And let's

16  stop saving -- I mean, I have so many U.S. Trustee reservations

17  outstanding in different cases that I can't keep track of them.

18  So I think it's time to bring some of these to a conclusion and

19  enter a final order.  You're getting a -- I gather you're

20  getting a down payment and then everything else is on a

21  contingency.  And that's in accordance with normal business

22  practice.  All right.

23         MS. SPIGEL:  Do you want me to mark up the order by

24  hand --

25         THE COURT:  Why don't you and Mr. --

JENNIFER CONVERTIBLES, INC., ET AL.

Page 15

1          MR. VELEZ-RIVERA:  We'll do it, Your Honor.

2          THE COURT:  -- Velez-Rivera discuss marking up the

3     order and I'll enter an appropriate order.  And I don't see any

4     reason to make this interim.

5          MS. SPIGEL:  Thank you, Your Honor.

6          MR. VELEZ-RIVERA:  We'll do that, Your Honor.

7          THE COURT:  Thank you.

8          MR. FOX:  Your Honor, we're very pleased with that,

9     because the KPMG contingency fee has been negotiated down many

10    times, so --

11         THE COURT:  All right.

12         MR. FOX:  -- that I understand why they wanted to come

13    today, because --

14         THE COURT:  Well, I'm glad they're here.

15         MR. FOX:  -- we're rooting for them to make as much

16    money as possible, because that means we would have saved much

17    more than we're paying them.

18         THE COURT:  All right.  Interim -- I think the next

19    one is interim compensation.

20         MR. FOX:  Yes.

21         THE COURT:  Does anyone wish to be heard?  All right.

22    There doesn't appear to be any question in this case of the

23    debtors' administrative solvency.  The only thing I would

24    request that you do, and it shouldn't cost you anything, is to

25    put your monthly fee requests that go to the fee examiner on

JENNIFER CONVERTIBLES, INC., ET AL.

Page 16

1    the docket.  Simply file it.  I don't want a copy.  But when

2    you submit it, it shouldn't cost anything to simply upload it

3    onto the docket.

4            MR. FOX:  A summary sheet, you're talking about for --

5            THE COURT:  You can serve --

6            MR. FOX:  -- the professionals.

7            THE COURT:  -- the summary sheet or the app -- the

8    applications ultimately go in every four months.  I think a

9    summary sheet would be -- there's been criticism.  Is there any

10   reason why the monthly statement can't be simply filed?  If

11   that's difficult, we'll say a monthly page 3 -- the monthly

12   statement need not be filed, and the Court -- however, a

13   summary sheet should be filed.  That's fine.

14           MR. VELEZ-RIVERA:  That's fine with the United States

15   Trustee, Your Honor.

16           THE COURT:  No, the U.S. Trustee has not ever objected

17   to that.  I'll just put on page 3, "Provided, however, that" --

18   there is a summary sheet, right?

19           MR. FOX:  Yes.  The cover letter --

20           THE COURT:  "The cover summary sheet should be filed."

21   Okay.  All right.  Then we'll enter that order.  Thank you.

22           MR. VELEZ-RIVERA:  Thank you, Your Honor.

23           THE COURT:  All right.  The next matter on your

24   calendar is utilities.

25           MR. FOX:  Yes.

JENNIFER CONVERTIBLES, INC., ET AL.

Page 17

1        MS. NADRITCH:  I'm a little more familiar, Your Honor,

2   with the utilities motion, so I will speak to that.  Your

3   Honor, we have no -- we received no objections to the

4   utilities -- the proposed procedures.  We -- in an effort to

5   comport with practice and, you know, Your Honor's practice,

6   also in other cases, we are proposing to provide utilities with

7   a fifty percent deposit, to the extent they don't already have

8   a deposit in that amount or greater amount.  And we have put

9   procedures in place such that to the extent that utilities

10  would request further adequate assurance, they can do so, and

11  we will have the opportunity to work with them and/or seek this

12  Court's guidance or further hearing as to any objections we

13  cannot resolve.

14        We have -- the committee actually provided us with

15  comments late last night which we've incorporated to some

16  extent, and provided Your Honor a further revised order this

17  morning.  I believe those comments --

18        THE COURT:  I don't know whether I have that.  What

19  are the -- just state for the record what the further changes

20  are.

21        MS. NADRITCH:  Of course, Your Honor.  There was an

22  inclusion in paragraph 11, Your Honor.  It provided further

23  that to the extent that the debtors terminate any utility

24  services, for instance, we close stores and their services are

25  no longer required, or we resolve other objections or make

JENNIFER CONVERTIBLES, INC., ET AL.

Page 18

1    arrangements with the specific utility regarding adequate

2    assurance and/or anticipate a reduction, essentially that the

3    utility will provide a refund of the appropriate portion of the

4    adequate assurance deposit in excess of whatever we agreed to

5    or the termination.  And --

6              THE COURT:  That's paragraph 11?

7              MS. NADRITCH:  -- that's paragraph 11.

8              THE COURT:  Okay.  Why don't we just delete in that

9    paragraph the words "in their sole discretion," because I don't

10   think there's any issue of discretion here.

11             MS. NADRITCH:  Understood.

12             THE COURT:  All right.

13             MS. NADRITCH:  And there was an inclusion, Your Honor,

14   between the current 12 and 13.  I'm not sure in what you're

15   looking at -- we've included a new 13.  Just that we will

16   actually provide notice of the order to all utilities.  And to

17   the extent there are any future utilities that are added, we

18   will provide them with notice as well, and give them thirty

19   days to request adequate assurance and work with them on that

20   regard as well.

21             THE COURT:  Fine.

22             MS. NADRITCH:  Those are the only changes.  And I

23   believe the committee has consented to the proposed order as it

24   is.  And we have not received any comments from the U.S.

25   Trustee on the order.

JENNIFER CONVERTIBLES, INC., ET AL.

Page 19

1        THE COURT:  Does anyone wish to be heard?  All right,

2    I'll enter an appropriate order.

3        MS. NADRITCH:  Thank you, Your Honor.

4        THE COURT:  If you want to hand it up with a disk,

5    that's fine.

6        MS. NADRITCH:  We'll do that.

7        THE COURT:  Anything else today?

8        MS. NADRITCH:  I believe that's it for today, Your

9    Honor.

10        THE COURT:  All right.  Do we have -- what's our -- do

11    we have another hearing date?

12        MR. FOX:  Well, we have, I think, August 31st as our

13    next hearing date, Your Honor.  That's when we're going to be

14    seeking lease rejection procedures as well as rejection of five

15    leases.  I think we've calendared that for August 31st.

16        THE COURT:  And do we have an initial case conference

17    date?  Did we ever set one in this case?

18        MS. NADRITCH:  I don't believe -- I mean, I understand

19    that Your Honor has a slot for us on next Tuesday, August 17th.

20    But I don't think there are any motions on for that date.  So

21    we wanted to inquire --

22        THE COURT:  Well, why don't I simply adjourn that to

23    the 31st?

24        MS. NADRITCH:  That would be --

25        THE COURT:  I don't know if anybody -- do you know of

JENNIFER CONVERTIBLES, INC., ET AL.

Page 20

1    any -- why don't you put on the docket a notice that the

2    initial case conference has been adjourned.  You have a 341?

3            MS. NADRITCH:  Yes, Your Honor.  That is scheduled for

4    Wednesday, September 1st.

5            THE COURT:  Well, that's quite a ways in the future.

6    All right.

7            MR. FOX:  I think I -- Michael Fox, again.  I think I

8    know why we have the 19th, is that --

9            MS. NADRITCH:  The 17th.

10           THE COURT:  The 17th.

11           MR. FOX:  -- the 17th.  It was because our stipulation

12   with Merrick Bank expires on the 18th.

13           THE COURT:  Oh.

14           MR. FOX:  Which we would probably likely be seeking a

15   further order of that in consultation with parties.  Since we'd

16   be looking to get money back, I thought by the 17th it would be

17   good to have that, so if we have a further stipulation --

18           THE COURT:  All right.  Well, let's keep that date.

19           MR. FOX:  -- let's keep that.  And if --

20           THE COURT:  And then we can adjourn it on that day.

21           MR. FOX:  Or just limit it to Merrick Bank.

22           THE COURT:  Merrick Bank and the initial case

23   conference.  And then we'll just adjourn it.

24           MR. FOX:  Thank you, Your Honor.

25           THE COURT:  All right.  Anything else?

JENNIFER CONVERTIBLES, INC., ET AL.

Page 21

1          Thank you very much.

2          MR. VELEZ-RIVERA:  Thanks, Judge.

3          IN UNISON:  Thank you, Your Honor.

4      (Proceedings concluded at 11:52 a.m.)

Page 22

1

2                                    I N D E X

3

4                                    RULINGS

5                                Page        Line

6   Application to retain        6           14

7   Olshan Grundman Frome

8   Rosenzweig & Wolosky as

9   counsel to debtors

10  approved

11  Application to retain TM     10          7

12  Capital approved as

13  modified on the record

14  Application to retain        15          3

15  KPMG CF Realty approved

16  with modifications

17  Debtors' interim            16          21

18  compensation motion

19  approved

20  Debtors' utilities motion   19          2

21  approved

22

23

24

25

Page 23

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    Penina Wolicki    Digitally signed by Penina Wolicki
                       DN: cn=Penina Wolicki, o, ou,
7    _____  email=digital1@veritext.com, c=US
                       Date: 2010.08.11 11:48:40 -04'00'

8    Penina Wolicki

9

10   Veritext

11   200 Old Country Road

12   Suite 580

13   Mineola, NY 11501

14

15   Date:   August 11, 2010

16

17

18

19

20

21

22

23

24

25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
|   | : |   |
|---|---|---|
| **In re:** | : | Chapter 11 |
| | : | |
| **JENNIFER CONVERTIBLES INC.,** *et al.,* | : | Case No. 10-13779 (ALG) |
| | : | |
| | : | Jointly Administered |
| **Debtors.** | : | |
| | : | |

-----------------------------------------------------------x

### ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG CF REALTY LLC, AS SPECIAL REAL ESTATE ADVISOR FOR THE DEBTORS *NUNC PRO TUNC TO* THE PETITION DATE

Upon consideration of the Application (the "Application") of Jennifer Convertibles Inc., and certain of its affiliates and related entities, as debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order pursuant to Sections 327(a) and 328(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the employment and retention of KPMG CF Realty LLC ("KPMGCF") as special real estate advisor for the Debtors nunc pro tunc to the Petition Date, on the terms and conditions set forth in the agreement between certain of the Debtors and KPMGCF (the "Engagement Letter"),[2] attached as Exhibit C to the Motion; and it appearing that the Court has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A) and (O); and it appearing that venue is proper in this District pursuant to 28 U.S.C. § 1408; and the Court having determined that the relief sought in

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Engagement Letter.

the Application is in the best interests of the Debtors, their estates and all parties in interest;

KPMGCF is "disinterested" and eligible for retention pursuant to Sections 101(14) and 327(a) of

the Bankruptcy Code, the terms of the Engagement Letter, the terms of the Engagement Letter

are reasonable and appropriate; and upon the *Declaration of Matthew Bordwin in Support of the*

*Debtors' Application to Retain and Employ KPMG CF Realty LLC as Special Real Estate*

*Advisor Nunc Pro Tunc to the Petition Date*; and upon all of the proceedings had before the

Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted as set forth herein; and it is further

ORDERED that in accordance with Sections 327(a) and 328 of the Bankruptcy

Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are

authorized to employ and retain KPMGCF in accordance with the terms and conditions set forth

in the Engagement Letter as of the Petition Date; and it is further

ORDERED that notwithstanding the foregoing paragraph, KPMGCF shall be

entitled to payment according to its fee structure pursuant to section 328(a) of the Bankruptcy

Code and not any other standard, including section 330 of the Bankruptcy Code; provided,

however, that the United States Trustee for the Southern District of New York (the "U.S.

Trustee") may review KPMGCF's expenses pursuant to section 330 of the Bankruptcy Code;

and it is further

ORDERED that KPMGCF is authorized to perform the services set forth in the

Engagement Letter, including:

    a. organize the lease information for each Renegotiation Property in a manner that clearly displays the store and lease economics. KPMGCF and Company will jointly establish negotiating goals and parameters, such as rent reductions, lease term modifications, and other leasehold concessions;

    b. contact the landlord for each Renegotiation Property and seek to negotiate

with the landlord for modifications in accordance with the parameters established by Company; and

c. work with the landlords, the Company, and the Company's counsel to document all lease modification proposals;

and it is further

ORDERED that section 2.5 of the Engagement Letter shall be revised so that the $5,000 Minimum Fee referenced shall be reduced to $4,000 and that section 2.6 of the Engagement Letter shall be revised so that the $3,500 Minimum Fee referenced shall be reduced to $3,000; and it is further

ORDERED that the Debtors are authorized to compensate KPMGCF in accordance with the terms of the Engagement Letter and KPMGCF will not be required to file interim or final fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code or keep time records in connection with its services performed under the Engagement Letter; and it is further

ORDERED that, notwithstanding the immediately preceding paragraph, upon conclusion of its engagement in these chapter 11 cases, KPMGCF shall be required to comply with the following procedures:

a. The Debtors will request final allowance of the fees paid or to be paid to KPMGCF under the Engagement Letter (the "Fees") by filing a notice setting forth the total amount of fees paid or to be paid to KPMGCF with respect to each Renegotiation Property (the "Fee Notice") and serving the Fee Notice on the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Nazar Khodorovsky, Esq.; and (ii) counsel to the Official Committee of Unsecured Creditors appointed in the Debtors' cases (the "Creditors' Committee").

b. The Fee Notice shall contain information regarding: (i) the amount of the fees paid or to be paid per Renegotiation Property, (ii) a brief explanation of the method by which the amount of the fee for each Renegotiation Property was determined, and (iii) incurred and received expenses as of the date of the Fee Notice.

    c.      The U.S. Trustee and the Creditors' Committee will have fourteen (14) days after the filing of the Fee Notice to file an objection to any portion of the fees and serve the objection on the Debtors and KPMGCF. Any objection to the Fee Notice shall set forth: (i) the amount of the fees to which the party is objecting, (ii) the Renegotiation Property the fees related to, and (iii) the reasons for the objection.

    d.      If no party timely files and serves an objection to the Fee Notice, the Debtors shall be authorized to pay any fees that remain unpaid to KPMGCF in accordance with the Engagement Letter without further notice or authorization from the Court.

    e.      If any party files a timely objection to the Fee Notice and KPMGCF, and the objecting party or parties are unable to resolve the objection, the Debtors or KPMGCF may schedule a hearing for the Court to determine the objection.

ORDERED that KPMG shall provide to the U.S. Trustee an accounting of all expenses reimbursed by the Debtors pursuant to the Engagement Letter that were not included in the Fee Notice and the U.S. Trustee will have fourteen (14) days after provision thereof to file an objection to any portion of the expenses and serve the objection on the Debtors and KPMGCF. If the Debtors, KPMGCF, and the objecting party or parties are unable to resolve the objection, the Debtors or KPMGCF may schedule a hearing for the Court to determine the objection; and it is further

ORDERED that KPMGCF's fees and expenses provided for in the Engagement Letter shall be treated as administrative expense claims; and it is further

ORDERED that during the pendency of these cases, paragraph 4 of Schedule I to the Engagement Letter, regarding limitation of liability, is deleted; and it is further

ORDERED that, notwithstanding paragraph 11(e) of the Engagement Letter, upon the conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, the Engagement Letter shall be terminated, unless the Debtors' chapter 7 trustee elects to continue to employ KPMGCF pursuant to the terms of the Engagement Letter; and it is further

ORDERED that all requests of KPMGCF for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall KPMGCF be indemnified in the case of its own bad-faith, self dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED that in no event shall KPMGCF be indemnified if the Debtors or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, KPMGCF's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED that in the event KPMGCF seeks reimbursement for attorneys' fees from the Debtors pursuant to the indemnity provisions in the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in KPMGCF's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized, empowered and directed to take all actions necessary to implement the relief granted pursuant to this Order; and it is further

ORDERED that to the extent the terms of this Order differs from the Engagement Letter, the terms of this Order shall govern; and it is further

ORDERED that during the pendency of these cases, this Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation of this Order and neither the Debtors nor KPMGCF shall be required to seek authorization from any other jurisdiction with respect to the relief granted by this Order.

Dated: New York, New York
     August 10, 2010

                              /s/ Allan L. Gropper
                            THE HONORABLE ALLAN L. GROPPER
                            UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

In re                                         :          Chapter 7
                                              :
BARBARA ZEIFER,                               :          Case No. 13-12228 (MG)
AKA BARBARA A ZEIFER,                         :
AKA BARBARA ALYN ZEIFER,                      :
AKA BARBARA ANN ZEIFER,                       :
                                              :
                              Debtor.         :

------------------------------------------------------ x

### ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF GA KEEN REALTY ADVISORS, LLC AS SPECIAL REAL ESTATE ADVISOR TO THE CHAPTER 7 TRUSTEE

Upon the application, dated May 19, 2014 (the "Application"), of Yann Geron (the "Trustee"), as the chapter 7 trustee of the estate of Barbara Zeifer, aka Barbara A Zeifer, aka Barbara Alyn Zeifer, aka Barbara Ann Zeifer (the "Debtor"), the above-captioned debtor, for an order, pursuant to 11 U.S.C. §§ 327(a) and 328, authorizing the employment and retention of GA Keen Realty Advisors, LLC, a division of Great American Group ("GA Keen Realty"), as the Trustee's Special Real Estate Advisor for the disposition of the real property located at 1 Market Centre Place, New York, New York (the "Property"), pursuant to the terms of the Engagement Letter[1]; and upon the declaration of Mark P. Naughton, General Counsel to GA Keen Realty, in support thereof; and it appearing that GA Keen Realty represents no interest adverse to the Trustee, the Debtor, her estate or creditors with respect to the matters for which GA Keen Realty is to be engaged, that GA Keen Realty is a disinterested person as that term is defined in 11 U.S.C. § 101(14), and that its employment is necessary and in the best interests of the estate; and for good and sufficient cause, it is hereby

---

[1]     Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Application.

**ORDERED**, that the Trustee is hereby authorized to employ and retain GA Keen Realty, pursuant to 11 U.S.C. §§ 327(a) and 328, and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, as his Special Real Estate Advisor for the purposes of marketing and selling the Property, pursuant to the terms of the Engagement Letter; and it is further

**ORDERED**, that the GA Keen Realty's retention shall be effective from the date of the Engagement Letter through the closing of the Transaction, or for a period of nine (9) months from the date of the Engagement Letter, whichever comes first, which engagement can be extended pursuant to the same terms and conditions upon written mutual consent of the parties without the need for further application to the Bankruptcy Court; and it is further

**ORDERED**, that GA Keen Realty shall be entitled to a commission of 4% of the Gross Proceeds from the Transaction, provided however that, if the buyer of the Property is properly represented by a real estate broker, then GA Keen Realty shall be entitled to a commission of 2.5% of the Gross Proceeds from the Transaction and the buyer's broker shall be entitled to a commission of 2.5% of the Gross Proceeds from the Transaction; and it is further

**ORDERED**, that GA Keen Realty shall be paid its fees directly from the proceeds of the Transaction, in full, simultaneously with the closing or other consummation of the Transaction; and it is further

**ORDERED**, that GA Keen Realty shall not be required to submit fee applications and shall be compensated in accordance with the procedures set forth in the Application and the Engagement Letter and such procedures as may be fixed by order of this Court; and it is further

ORDERED, that the Court has and shall retain jurisdiction to hear and determine

all matters arising from the implementation of the Engagement Letter and this Order and neither

the Trustee nor GA Keen shall be required to seek authorization from any other jurisdiction with

respect to the relief granted by this Order.

Dated:   May 30, 2014
         New York, New York

                              /s/Martin Glenn
                              MARTIN GLENN
                    United States Bankruptcy Judge

**NO OBJECTION:**

Dated:   New York, New York
         May 28, 2014

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ Richard W. Fox
         Richard W. Fox
         Trial Attorney

3

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x          Chapter 11

In re:                                                                  :
                                                                        :          Case No. 05-11563 (SMB)
THE PERFECT PICTURE CORP.,                                              :
                                                                        :
                                                                        :
                                                                        :
                                                                        :
                        Debtor.                                        :
----------------------------------------------------------------x

ORDER UNDER 11 U.S.C. §327(a) AND §328(a) FED. R. BANKR. P. 2014
AND S.D.N.Y. LBR 2014-1 AUTHORIZING RETENTION OF
KEEN REALTY LLC AS SPECIAL REAL ESTATE CONSULTANT

Upon consideration of the application dated March 10, 2005 (the "Application"), by The

Perfect Picture Corporation, debtor and debtor-in-possession in the above-captioned case (the

"Debtor"), for an order under sections 327(a) and 328(a) of title 11 of the United States Code (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2014 and 5002 authorizing the Debtor to retain Keen

Realty, LLC as special real estate consultants ("Keen"); and the Court being satisfied that Keen does

not represent any interest adverse to the estate with respect to the matters upon which it is to be

engaged, that Keen is a disinterested person as that term is defined under section 101 (14) of the

Bankruptcy Code, as modified by section 1107 (b) of the Bankruptcy Code; and it appearing that the

relief requested in the Application is necessary and in the best interests of the Debtor's estate and its

creditors; and upon the record herein; and after due deliberation thereon; and sufficient notice having

been given; and good and sufficient cause appearing therefore, it is hereby

ORDERED, that the Debtor is authorized to retain Keen, pursuant to sections 327(a) and

328(a) of the Bankruptcy Code, to perform the services set forth in the Application and the retention

agreement attached to the Application as Exhibit A (the "Retention Agreement"), on the terms and

conditions set forth in the Retention Agreement; and it is further

ORDERED, that the Keen shall  **SMB  3/23/05**  ~~not be required to submit fee applications~~

~~and shall~~ be compensated in accordance with the procedures set forth in the Application and Retention

Agreement and such procedures as may be fixed by order of this Court.

Dated:  New York, New York
        March 23, 2005

                              /s/  **STUART M. BERNSTEIN** _____
                              UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT E**

So Ordered.

_____

Signed this 31 day of July, 2015.

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

        NIRVANA, INC., *et al.,* [1]

Debtors.

Case No. 15-60823
Chapter 11 Case
Main Case
Jointly Administered

_____

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
### OF KEEN-SUMMIT CAPITAL PARTNERS LLC
### <u>AS THE BUSINESS BROKER TO THE DEBTORS</u>

Debtors Nirvana, Inc., Nirvana Transport, Inc., Nirvana Warehousing, Inc. and Millers

Wood Development Corp., as debtors and debtors in possession (collectively, the "<u>Debtors</u>"),

having moved for the entry of an Order, pursuant to 11 U.S.C. § 327(a), authorizing the retention

and employment of Keen-Summit Capital Partners LLC ("<u>Keen-Summit</u>") as the business broker

to the Debtors in the captioned chapter 11 cases;

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Nirvana, Inc. (5474), Nirvana Transport, Inc. (6503), Nirvana Warehousing, Inc. (2646) and Millers
Wood Development Corp. (8040).

**NOW**, upon reading and filing the Order Reducing Time for Notice of Hearing to

Consider Application for Entry of an Order Authorizing the Retention and Employment of Keen-

Summit Capital Partners LLC as the Business Broker to the Debtors dated July 16, 2015, the

Application for Entry of an Order Authorizing the Retention and Employment of Keen-Summit

Capital Partners LLC as the Business Broker to the Debtors dated July 15, 2015 (the

"Application"), the Affidavit of Harold J. Bordwin in Support of Application for Entry of an

Order Authorizing the Retention and Employment of Keen-Summit Capital Partners LLC as the

Business Broker to the Debtors, sworn to the 15th day of July, 2015 and the Affidavit of Mozafar

Rafizadeh In Support of Chapter 11 Petition and First Day Motions, sworn to the 2nd day of June,

2015 in support of the relief requested; and upon reading and filing the Objection to Debtors'

Application for Order Authorizing the Retention and Employment of Keen-Summit Capital

Partners LLC as the Business Broker to the Debtors dated July 20, 2015 filed on behalf of NBT

Bank, National Association ("NBT"), the Response to Application to Retain Keen-Summit

Capital Partners LLC as the Business Broker to the Debtors dated July 20, 2015 filed on behalf

of New York Business Development Corporation ("NYBDC") and Statewide Zone Capital

Corporation of New York ("SZCC"), the Limited Objections of Northeast Bank ("NEB") to

Debtors' Application to Retain and Employ Keen-Summit Capital Partners LLC as Their

Business Broker dated July 20, 2015, the Objection to Application for Entry of an Order

Authorizing the Retention and Employment of Keen-Summit Capital Partners LLC as the

Business Broker to the Debtors dated July 20, 2015 filed on behalf of Comsource, Inc.

("Comsource") and the United States Trustee's Objection to Debtors' Application for Entry of an

Order Authorizing the Retention and Employment of Keen-Summit Capital Partners LLC as the

Business Broker to the Debtors dated July 20, 2015 in opposition to the relief requested; and the

Court having held a hearing concerning the Application on July 22, 2015 in Utica, New York

2

(the "Hearing"); and the Debtors having appeared by Bond, Schoeneck & King, PLLC (Stephen

A. Donato, Esq. and Camille W. Hill, Esq., of counsel) in support of the relief requested; and

appearances having been entered on behalf of NBT by Menter, Rudin & Trivelpiece, P.C.

(Jeffrey A. Dove, Esq., of counsel), NYBDC and SZCC by Lemery Greisler LLC (Paul A.

Levine, Esq., of counsel), NEB and the United Stated Department of Agriculture by Windels

Marx Lane & Mittendorf, LLP (Mark A. Slama, Esq., of counsel), Comsource by Harris Beach

PLLC (Lee E. Woodard, Esq., of counsel), the United States Small Business Administration by

Nancy L. Caple, Esq., the Town of Boonville by James Moseman, Esq., the Official Committee

of Unsecured Creditors by Lowenstein Sandler LLP (Nicole Stefanelli, Esq., of counsel) and the

Office of the United States Trustee by Guy A. Van Baalen, Esq. and Erin P. Champion, Esq.; and

the objections to the relief requested having been consensually resolved by the parties; and upon

the record made at the Hearing; and the Court finding that (i) it has jurisdiction over the matters

raised in the Application pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); (iii) the relief requested in the Application is in the best interest of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation and cause

appearing therefor; it is hereby

    **ORDERED**, that the Application[2] is granted as set forth herein; and it is further

    **ORDERED**, that all objections to the Application or the relief requested therein that have

not been made, withdrawn, waived or settled, and all reservations of rights included therein, are

overruled on the merits; and it is further

    **ORDERED**, that the Debtors are authorized, pursuant to section 327(a) of the

Bankruptcy Code (with compensation subject to the standard of review of section 328(a) of the

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application or the
Amended Retention Agreement dated July 23, 2015, as applicable.

Bankruptcy Code), to engage Keen-Summit as their business broker in the above-captioned
Chapter 11 Cases, upon the terms and for the purposes set forth in the Application and in that
certain Amended Retention Agreement dated July 23, 2015 attached hereto **Exhibit A** (the
"Amended Agreement"), the terms of which are reasonable and are hereby approved in their
entirety; and it is further

ORDERED, that, at the closing of a Transaction, the amount of the Transaction Fee and
expense reimbursement due Keen-Summit, if any, shall be paid to the Debtors' counsel, Bond,
Schoeneck & King, PLLC from the first proceeds of each Transaction, in full, simultaneously
with the closing or other consummation of the Transaction before any funds are disbursed to the
Secured Creditors and shall be held in escrow for the benefit of Keen-Summit pending the
approval of a final professional fee application to be submitted on behalf of Keen-Summit; and it
is further

ORDERED, that, if a Secured Creditor is the Successful Bidder for an Asset by means of
a credit bid, and there are no other sources of cash available from other Successful Bids to fund
the Keen-Summit expense reimbursement, the entry of an order approving the credit bid shall be
contingent upon the funding of the Keen-Summit expense reimbursement.  Nothing herein shall
prejudice the right of a Secured Creditor to seek contribution regarding the expense
reimbursement from other Secured Creditors; and it is further

ORDERED, that the Transaction Fee and expense reimbursement due Keen-Summit
(including the portions thereof allocable to a sale of less than all of the assets) shall be treated as
administrative expense claims in the Debtors' bankruptcy cases, but with respect to a sale of less
than all of the assets, only the allocable share of the Transaction Fee and expense reimbursement
attributable to that sale shall be chargeable against the proceeds of the assets sold; and it is
further

4

**ORDERED**, that none of the fees payable to Keen-Summit hereunder shall constitute a "bonus" under applicable law; and it is further

**ORDERED**, that Keen-Summit is exempt from all requirements to keep time records in connection with its retention in the Debtors' cases; and it is further

**ORDERED**, that notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Order shall be effective and enforceable immediately upon its entry.  Any subsequent modification or vacatur of this Order shall not invalidate or impair any actions taken pursuant to this Order prior to such modification or vacatur; and it is further

**ORDERED**, that, with the exception of discussing (i) any matter with other Secured Creditors, (ii) the sale of the Secured Creditor's own secured claim, note or security interest to a third party, or (iii) financing arrangements with a prospective counter-party to a Transaction, each and every Secured Creditor is directed not to initiate or engage in discussions with a prospective counterparty to a Transaction, but to forward and direct to Keen-Summit all such communications from or with prospective counterparties to a Transaction; and it is further

**ORDERED**, that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

**ORDERED**, that the Court has and shall retain core jurisdiction to hear and determine all matters arising from or related to the implementation of this Order and neither the Debtors nor Keen-Summit shall be required to seek authorization from any other jurisdiction with respect to the relief granted by this Order.

# # #

**EXHIBIT F**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

WASSERMAN, JURISTA & STOLZ, P.C.
225 Millburn Avenue - Suite 207
P.O. Box 1029
Millburn, New Jersey  07041
Phone: (973) 467-2700
Fax: (973) 467-8126
Counsel for Donald V. Biase, Chapter 11
Trustee
DANIEL M. STOLZ

In Re:

BAYWAY HAND CAR WASH CORP., et als.

Debtors.

Order Filed on June 10, 2015
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Case No.:  13-32632(MBK)

Jointly Administered

Hon. Michael B. Kaplan

Chapter: 11

Recommended Local Form:   ☐ Followed   ☒ Modified

### ORDER AUTHORIZING RETENTION OF
### KEEN-SUMMIT CAPITAL PARTNERS, LLC AS
### ADVISOR TO THE CHAPTER 11 TRUSTEE

The relief set forth on the following pages, numbered two (2), is hereby **ORDERED**.

**DATED: June 10, 2015**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

In re:  Bayway Hand Car Wash Corp., et als.

Case Nos.:  13-32632(TBA)

Applicant:

    &#9746; Trustee:   &#9633; Chap. 7   &#9633; Chap. 11   &#9633; Chap. 13

    &#9633; Debtor:   &#9746; Chap. 11   &#9633; Chap. 13

    &#9633; Official Committee of _____

Name of Professional:  Keen-Summit Capital Partners, LLC

Address of Professional:  10 E. 53rd Street, 28th Floor, New York, NY 10022

    &#9633; Attorney for:

        &#9633; Trustee   &#9633; Debtor-in-possession

        &#9633; Official Committee of _____

    &#9633; Accountant for:

        &#9633; Trustee   &#9633; Debtor-in-possession

        &#9633; Official Committee of _____

    &#9746; Other Professional:

        &#9633; Realtor   &#9633; Appraiser   &#9633; Special Counsel   &#9633; Auctioneer

        &#9746; Other (specify): Real Estate Advisors   .

_____

Upon the applicant's request for authorization to retain the professional named above,

It is hereby **ORDERED** as follows:

1.    The applicant, Donald V. Biase, Chapter 11 Trustee, is authorized to retain the professional, Keen-Summit Capital Partners, LLC to act as Advisors to the Chapter 11 Trustee.

2.    The applicant seeks an Order authorizing the employment of Keen-Summit as of the date of this Agreement, as professional persons pursuant to Section 327 of the Code (with compensation subject to the standard of review of Section 328(a) of the Code and not any other standard, including that provided in Section 330 of the

2

Code).  None of the fees payable to Keen-Summit hereunder shall constitute a "bonus" under applicable law.

3.      Keen-Summit is exempt from the requirement to keep time records (unless Keen-Summit services are being billed by the hour) and the necessity of filing a fee application.

4.      Keen-Summit's fees and expenses shall be treated as administrative expense claims in the Company's bankruptcy case.

5.      Keen-Summit's fees and expenses shall be entitled to a carve-out for payment pursuant to Section 506(c) of the Bankruptcy Code.

6.      The terms and conditions of this Agreement are "reasonable."  If the Order authorizing the employment of Keen-Summit is obtained, Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement and the Order without the need for further application to or order of the Bankruptcy Court.

7.      Bankruptcy Court has and shall retain core jurisdiction to hear and determine all matters arising from the implementation of this Agreement, and neither the Company nor Keen-Summit shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement.

8.      The effective date of the retention is the date the Application was filed with the Court.

**<u>EXHIBIT G</u>**

**FILED**

MAR 1 1 2015

United States Bankruptcy Court
Columbia, South Carolina

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Briar's Creek Golf, LLC d/b/a
The Golf Club at Briar's Creek,

Debtor.

Case No. 15-00712

Chapter 11

---

### ORDER AUTHORIZING EMPLOYMENT OF KEEN-SUMMIT CAPITAL PARTNERS LLC AS REAL ESTATE ADVISOR FOR THE DEBTOR, EFFECTIVE FEBRUARY 26, 2015, AND APPROVING PAYMENT OF FEES TO KEEN-SUMMIT

Upon the application (the "Application") of Briar's Creek Golf, LLC d/b/a The Golf Club at Briar's Creek ("Debtor"), for an order pursuant to sections 327(a) and 328(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing them to retain Keen-Summit Capital Partners LLC ("Keen-Summit") as financial advisor effective as of February 26, 2015 upon the terms of the Application and the Engagement Letter attached to the Application as Exhibit A (the "Engagement Letter"). Due and adequate notice of the Application having been given; it appearing that no other notice need be given; it further appearing that Keen-Summit is not representing any adverse interests in connection with these cases; and it appearing that the relief requested in the Application is in the best interest of the Debtor; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Application be, and it hereby is, granted upon the terms set forth in the Application and the Engagement Letter, as set forth or amended herein; and it is further

ORDERED that the capitalized terms not defined herein shall have the meanings ascribed to them in the Application or the Engagement Letter; and it is further

ORDERED that to the extent of any inconsistency between the application, the affidavit, the engagement letter, and this order, the terms of this order shall govern.

ORDERED that in accordance with section 327(a) of the Bankruptcy Code, the Debtor is authorized to employ and retain Keen-Summit as of February 26, 2015 as its real estate advisor to market the Debtor's assets and seek higher or otherwise better bids as set forth in the Engagement Letter and the Application; and it is further

ORDERED that, as set forth in the Application, the Debtor is authorized to pay Keen-Summit its Engagement Fee. Keen-Summit shall only be reimbursed for expenses after consideration of a fee application for approval of such expenses; and it is further

ORDERED that the Engagement Fee and reimbursement of Keen-Summit's expenses shall be subject to review in a final fee application pursuant to the standards set forth in sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that, as set forth in the Application, the <u>Transactional Fee</u> of 17.5% (the "Transactional Fee") of the amount by which the eventual gross sale proceeds exceed the current proposed purchase price of $11,300,000 (as more fully described in the Debtor's sale motion filed with the Court on February 10, 2015), if any, will be considered earned and shall be paid in full, off the top, from the gross sale proceeds simultaneous with closing or other consummation of a sale transaction, subject to Bankruptcy Court approval of Keen-Summit's final fee application; and it is further

ORDERED that the Transactional Fee, if any, shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and shall not be evaluated under any other standard of review, including the standard set forth in section 330 of the Bankruptcy Code; and it is further

ORDERED that, the Transactional Fee, if any, will be considered earned and shall be paid in full, off the top, from the gross sale proceeds simultaneous with a sale closing or other consummation of a sale transaction; and it is further

ORDERED that Keen-Summit shall be compensated for its services as set forth above, and Keen-Summit shall be required to file a final fee application with this Court for review and approval of its compensation in this matter; and it is further

ORDERED that the Debtor is authorized to promptly, directly pay, or advance to Keen-Summit as necessary, the estimated $17,500 in third-party advertising and marketing expenses relating to Keen-Summit's Marketing Budget. Any marketing expenses advanced by the Debtor shall be subject to Bankruptcy Court review and approval upon the filing of a final fee application; and it is further

ORDERED that the indemnification provisions set forth in the Engagement Letter are approved, provided however, that notwithstanding anything to the contrary:

A.    All requests of Keen-Summit for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought;

B.    In no event shall Keen-Summit be indemnified if the Debtor or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Keen-Summit's own bad-faith, self-dealing, breach of fiduciary duty, negligence, gross negligence or willful misconduct;

C.    In the event that Keen-Summit seeks reimbursement for attorneys' fees from the Debtor pursuant to the indemnity provisions in the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Keen-Summit's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

D.    Keen-Summit shall not be entitled to reimbursement by the Debtor for any fees, disbursements and other charges of Keen-Summit's counsel other than those incurred in connection with a request of Keen-Summit for payment of indemnity; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this order and neither the Debtor nor Keen shall be required to seek authorization from any other jurisdiction with respect to the relief granted by this Order;.

John E. Waites                    3/11/15
John E. Waites                    Date
U.S. Bankruptcy Court Judge
District of South Carolina

**EXHIBIT H**

Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
    mdelaney@bakerlaw.com

Attorneys for Debtor and Debtor in Possession,
SARKIS INVESTMENTS COMPANY, LLC

**FILED & ENTERED**

**JAN 23 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:13-bk-29180-RK |
| SARKIS INVESTMENTS COMPANY, LLC, | Chapter 11 |
| Debtor and Debtor in Possession. | **ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY GA KEEN REALTY ADVISORS, LLC AS REAL ESTATE BROKER**<br><br>[No Hearing Required – LBR 9013-1(o)] |

On or about April 15, 2014, Sarkis Investments Company, LLC ("Sarkis" or the "Debtor") filed the amended *Application to Employ GA Keen Realty Advisors, LLC as Real Estate Broker* (the "Application") [Docket Entry 184] pursuant to the Retention Agreement dated April 15, 2014 (the "Retention Agreement"). Thereafter, on or about April 28, 2014, secured creditor MSCI 2007-IQ13 Ontario Retail Limited Partnership ("MSCI") filed its *Objection to Debtor's Amended Application [Docket No. 184] to Employ GA Keen Realty Advisors, LLC As Real Estate Advisor* (the "Objection") [Docket Entry 189].

On or about December 5, 2014, Sarkis, MSCI, and GA Keen Realty Advisors, LLC ("GA Keen" and, collectively with Sarkis and MSCI, the "Parties") entered into the *Stipulation Regarding the Employment of GA Keen Realty Advisors, LLC as Real Estate Broker for the Estate* (the "Stipulation") [Docket Entry 240]. By and through the Stipulation, the Parties

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

resolved the Objection to the Application by agreeing to extend the exclusivity period and clarifying the treatment of any claim arising under the indemnity provision of the Retention Agreement.  On or about December 8, 2014, this Court entered an order approving the Stipulation [Docket Entry 242].  Thereafter, on or about December 18, 2014, MSCI withdrew the Objection [Docket Entry 250] and filed a Notice of Non-Opposition with respect to the Application [Docket Entry 246].

Having considered the Application, Stipulation and Retention Agreement, receiving no objection to the Application or retention of GA Keen pursuant to the Retention Agreement as modified by the Stipulation, finding notice of the Application due and proper and in accordance with all applicable rules, and good cause appearing therefor

**IT IS HEREBY ORDERED** that the Application is GRANTED;

**IT IS FURTHER ORDERED** that pursuant to 11 U.S.C. §§ 327(a) and 328, the Debtor is hereby authorized to retain GA Keen as its real estate broker to act as an agent to the Debtor in the Debtor's capacity as debtor in possession, effective April 15, 2014, on the terms set forth in the Retention Agreement, as modified by the Stipulation;

**IT IS FURTHER ORDERED** that GA Keen shall be compensated and reimbursed for its out-of-pocket expenses in accordance with paragraph III of the Retention Agreement;

**IT IS FURTHER ORDERED** that the Debtor is authorized to pay GA Keen a marketing advance of Twenty-Seven Thousand Dollars ($27,000.00) pursuant to paragraph III.A of the Retention Agreement without further order of this Court;

**IT IS FURTHER ORDERED** that each Transaction Fee (as defined in paragraph II.C.1) earned pursuant to the terms of the Retention Agreement shall be presented to the Court for approval simultaneously with the request for the Court's approval of the Transaction itself, and GA Keen shall not be required to seek approval of the Transaction Fees via an interim or final fee application;

**IT IS FURTHER ORDERED** that, notwithstanding the preceding paragraph and excluding fees for which GA Keen seeks to be paid by the hour, if any, the compensation and expense reimbursement payable to GA Keen pursuant to the Retention Agreement and this Order

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

shall be subject to review only pursuant to the standard set forth in §328(a) of the Bankruptcy Code;

  **IT IS FURTHER ORDERED** that this Court has and shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order and neither the Debtor nor GA Keen shall be required to seek authorization from any other jurisdiction with respect to the relief granted by this Order;

  **IT IS FURTHER ORDERED** that the Debtor is authorized to take any and all steps necessary to effectuate this Order, the Retention Agreement, and/or the Stipulation;

  **IT IS FURTHER ORDERED** that the terms and conditions of GA Keen's engagement are deemed "reasonable" and none of the fees payable to GA Keen hereunder shall constitute a "bonus" under applicable law; and

  **IT IS FURTHER ORDERED** that GA Keen is exempt from the requirement to keep time records (unless Keen's services are being billed by the hour.

  **IT IS SO ORDERED.**

# # #

Date: January 23, 2015

_____

Robert Kwan
United States Bankruptcy Judge

ORDER GRANTING APPLICATION TO EMPLOY GA KEEN REALTY ADVISORS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**<u>EXHIBIT I</u>**

ENTERED
12/18/2014

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Case No. 14-70427 |
| AZIZ CONVENIENCE STORES, L.L.C., | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## AGREED ORDER AUTHORIZING THE EMPLOYMENT OF GA KEEN REALTY ADVISORS, LLC, AS INVESTMENT BANKER FOR THE DEBTOR, PURSUANT TO §§105(a), 327(a) AND 328(a) OF THE BANKRUPTCY CODE

CAME ON FOR CONSIDERATION Aziz Convenience Stores, L.L.C., Debtor and Debtor-in-Possession's Motion for Order Pursuant to §§105(a), 327(a) and 328(a) of the Authorizing the Employment of GA Keen Realty Advisors, LLC ("Keen") as Investment Banker for the Debtor (the "Application").[1] The Court having been satisfied that Keen does not hold or represent an interest adverse to the Debtor's estate and that Keen is a "disinterested person" as that term is defined by the Bankruptcy Code; and due and proper notice of the Application having been given; and it appearing that no other or further notice of the Application is required; and it appearing this Court has jurisdiction to consider the Application; and it appearing that the relief requested in the Application and provided for herein is in the best interest of the Debtor, its estate and creditors; and after due deliberation and sufficient cause spearing therefore, it is hereby

ORDERED that the Application is GRANTED; it is further

ORDERED that the pursuant to §§327(a) and 328 of the Bankruptcy Code, the Debtor is hereby authorized to retain Keen as its investment banker, effective November 25, 2014, on the terms set forth in the Agreement, as modified by this Order; it is further

---

[1] All capitalized words not defined herein are ascribed the same meaning given to them in the Motion.

ORDERED that the Agreement is hereby modified as follows:

   i.   The term of the Agreement may be extended, as provided in paragraph IV of the Agreement, by the mutual consent of the parties only if PlainsCapital Bank ("PCB") consents or by further order of this Court.

   ii.   The term "Properties" as used in the Agreement shall refer to the list of properties contained on Exhibit A to this Order.

   iii.   Before incurring any expenses in excess of $2,500 that are not included in the marketing budget approved by the Debtor and presented to the Court as an exhibit at the hearing on the Application, Keen shall obtain approval of both the Debtor and PCB. Keen shall provide the Debtor and PCB with a reconciliation of the budget compared to the actual expenses incurred on no less than a monthly basis.

   iv.   Keen shall provide directly to PCB, with a copy to Debtor's counsel, all final marketing materials. In addition, every two weeks, Keen shall provide directly to PCB, with a copy to Debtor's counsel, a marketing summary setting out all marketing activities that took place in the prior two week period.

ORDERED that Keen shall be compensated and reimbursed for its out-of-pocket expenses in accordance with the terms and conditions of the Retention Agreement without the need to file interim fee applications; it is further

ORDERED that each Sale Fee or Financing Fee earned pursuant to the terms of the Agreement shall be presented to the Court for approval simultaneous with the request for the Court's approval of the Transaction itself, and Keen shall not be required to seek approval of such fee via interim fee application prior to payment by the Debtor; it is further

ORDERED that the Foreclosure/Credit-Bid Fee shall be an ordinary administrative expense of the Debtor's estate and shall not be imposed against PCB, its claims, or its collateral under §§ 506(c) or 552 of the Bankruptcy Code; it is further

ORDERED that at the conclusion of this case, Keen will seek final approval of all Sale Fees, Financing Fees and expenses paid during the case through a final fee application. In addition, to the extent Keen is due any additional fees not previously paid during the case, it shall seek payment of such fees in its final fee application. Keen's application for final allowance of

Gardere01 - 6534880v.2

compensation and reimbursement of expenses incurred in connection with the services performed for the Debtor in the instant chapter 11 case will be filed and heard pursuant to the Bankruptcy Code, the Bankruptcy rules, the Local Rules and any applicable orders of this Court; it is further

ORDERED that, notwithstanding the preceding paragraph and excluding fees for which Keen seeks to be paid by the hour, if any, the compensation and expense reimbursement payable to Keen pursuant to the Agreement and this Order shall be subject to review only pursuant to the standard set forth in §328(a) of the Bankruptcy Code; it is further

ORDERED that this Court has and shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order and neither the Debtor nor Keen shall be required to seek authorization from any other jurisdiction with respect to the relief granted by this Order; it is further

ORDERED that the Debtor is authorized to take any and all steps necessary to effectuate this Order; it is further

ORDERED that the terms and conditions of Keen's engagement are deemed "reasonable" and none of the fees payable to Keen hereunder shall constitute a "bonus" under applicable law; it is further

ORDERED that Keen is exempt from the requirement to keep time records (unless Keen's services are being billed by the hour); it is further

ORDERED that notwithstanding anything in the Agreement or this Order to the contrary, all parties in interest, including the Debtor, reserve the right to ask this Court to terminate the Agreement for cause; it is further

Gardere01 - 6534880v.2

ORDERED that, to the extent the provisions contained in this Order conflict with or are inconsistent with the provisions of Stipulation and Agreed Final Order Authorizing the Debtor's Use of Cash Collateral [Docket No.           ] (the "Cash Collateral Order"), the Cash Collateral controls; and it is further

ORDERED that, notwithstanding any terms to the contrary in the Agreement or this Order and unless Greenwich in writing agrees otherwise in its sole and absolute discretion, Greenwich shall not be required to pay Keen any fee or other consideration under any of the following circumstances: the obligations owed to Greenwich and secured by liens against The 200 Acres are not satisfied in full; Greenwich is the successful purchaser through credit bids at an auction of The 200 Acres; or Greenwich forecloses on The 200 Acres.

SIGNED this 18th day of December, 2014.

THE HONORABLE RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

**AGREED:**

**OKIN & ADAMS LLP**

By: /s/ Matthew S. Okin
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
George Niño
Texas Bar No. 00786456
1113 Vine St. Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118
**COUNSEL FOR AZIZ CONVENIENCE
STORES, L.L.C., PLAINTIFF, DEBTOR AND
DEBTOR-IN-POSSESSION**

Gardere01 - 6534880v.2

**WALKER & TWENHAFEL, L.L.P.**

By: /s/ Mark A. Twenhafel
Mark W. Walker
Texas Bar No. 20717350
Mark A. Twenhafel
P. O. Drawer 3766
McAllen, Texas 78502-3766
Telephone: (956) 687-6225 ext. 203
Fax: (956) 686-1276.
Email: markt@rgvlawyers.com

and

Jeffrey Peterson
Gray Plant Mooty
1010 W. St. Germain, Ste. 500
St. Cloud, MN 56301
Telephone: (320) 202-5339
Fax: (320) 257-5724
Email: Jeffrey.Peterson@gpmlaw.com

**COUNSEL FOR DEFENDANT, GREENWICH INVESTORS XLV TRUST 2013-1**

Gardere01 - 6534880v.2

**<u>EXHIBIT J</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
:
: **Chapter 11**
:
**In re:** : **Case No. 14–10867 (BLS)**
:
**COLDWATER CREEK INC., et al.,**[1] : **(Jointly Administered)**
:
**Debtors.** : Ref. Docket No. 406
:
-------------------------------------------------------x

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## GA KEEN REALTY ADVISORS, LLC AS REAL ESTATE ADVISOR
## TO THE DEBTORS *NUNC PRO TUNC* TO THE
## DATE OF THE RETENTION AGREEMENT

Upon the application (the "**Application**")[2] of Coldwater Creek Inc., on behalf of

itself and its affiliated debtors and debtors in possession in the above-captioned cases

(collectively, the "**Debtors**"), for an order (this "**Order**") authorizing the Debtors to retain and

employ GA Keen Realty, LLC ("**GA Keen Realty**"), as real estate advisor to the Debtors

effective as of the date of the Retention Agreement; and upon the consideration of the

Mark P. Naughton Declaration attached to the Application as Exhibit A; and it appearing that

this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012; and it appearing that venue of these chapter

11 cases and the Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Coldwater Creek Inc. (9266), Coldwater Creek U.S. Inc. (8831), Aspenwood Advertising, Inc. (7427), Coldwater Creek The Spa Inc. (7592), CWC Rewards Inc. (5382), Coldwater Creek Merchandising & Logistics Inc. (3904) and Coldwater Creek Sourcing Inc. (8530). Debtor CWC Sourcing LLC has the following Idaho organizational identification number: W38677. The Debtors' corporate headquarters is located at One Coldwater Creek Drive, Sandpoint, Idaho 83864.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Court having determined that GA Keen Realty is a "disinterested person," as defined in section

101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and

this Court having further determined that the relief requested in the Application is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Application has been given and that, except as

otherwise ordered herein, no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The Application is GRANTED as set forth herein.

2.    In accordance with sections 327(a) and 328(a) of the Bankruptcy Code,

Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, the Debtors are

authorized to employ and retain GA Keen Realty in accordance with the terms and conditions set

forth in the Application and the Retention Agreement, as modified herein, effective as of the date

of the Retention Agreement. The terms and conditions of the Retention Agreement are

reasonable.

3.    The Debtors are authorized to employ GA Keen Realty to act as an agent

to the Debtors to advertise, market, negotiate and coordinate the closing of the sale of the

Debtors' interests in the Leases; provided, however, that if GA Keen Realty is subsequently

authorized to market the Debtors' lease with the Wood County Development Authority

("**WCDA**"), as more fully described in the WCDA's limited objection [Docket No. 452], GA

Keen Realty agrees to communicate with the WCDA about the identity of potential prospects

interested in the lease and to reasonably cooperate with the WCDA in marketing the lease.

2

01:15464229.4

4.      The structure of the Transaction Fee and Reduction Fee are approved pursuant to section 328(a) of the Bankruptcy Code and shall not be evaluated under the reasonableness standard set forth in section 330 of the Bankruptcy Code; provided that the Transaction Fee and Reduction Fee are subject to this Court's approval of a final fee application.  For the avoidance of doubt, nothing in this Order is pre-approving the overall amounts of fees and expenses payable to GA Keen Realty, and the U.S. Trustee's right to object to (i) fees that do not appear to meet the terms of employment set forth in the Retention Agreement approved hereunder and (ii) expenses that do not appear to be actual and necessary is fully reserved.

5.      GA Keen Realty shall file fee applications for interim and final allowance of reimbursement of Consulting Fees and expenses pursuant to the procedures set forth in the Retention Agreement, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of this Court; *provided* that the United States Trustee for the District of Delaware shall have the right to object to GA Keen Realty's Consulting Fees and expenses based on the reasonableness standard set forth in section 330 of the Bankruptcy Code.

6.      None of the fees payable to GA Keen Realty shall constitute a "bonus" or fee enhancement under applicable law.

7.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court or any guidelines regarding submission and approval of fee applications, in light of services to be provided by GA Keen Realty and the structure of GA Keen Realty's compensation pursuant to the Retention Agreement, GA Keen Realty and its professionals shall be excused from maintaining time records as set forth in Local

3

Rule 2016-2 and the United States Trustee Fee Guidelines in connection with the services to be rendered pursuant to the Retention Agreement; *provided, however*, for Consulting Fees charged on an hourly basis, GA Keen Realty will maintain records of its services rendered to the Debtors in one tenth-hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to this Court.

8.      All of GA Keen Realty's fees and expenses shall be treated as administrative expense claims in the Debtors' chapter 11 cases.

9.      Notwithstanding any provision in the Application and Retention Agreement to the contrary, the Debtors are authorized to indemnify and hold harmless GA Keen Realty and its respective directors, officers, employees, agents, representatives, and controlling persons (collectively, the "**Indemnified Parties**"), pursuant to the terms and conditions set forth in the Retention Agreement, subject to the following conditions:

(a)     the Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are provided for in the Retention Agreement and approved by this Court;

(b)     notwithstanding anything to the contrary in the Retention Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to an Indemnified Party, for any claim or expense that is: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from an Indemnified Party's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors alleges the breach of an Indemnified Party's contractual obligations unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which an Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order;

4

(c)     if, during the pendency of these Chapter 11 Cases, the indemnification provided in Schedule B of the Retention Agreement is held unenforceable by reason of the exclusions set forth in subparagraph (b) above and GA Keen Realty makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the limitations on GA Keen Realty's obligations shall not apply; and

(d)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these cases, an Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Retention Agreement, including without limitation the advancement of defense costs, the Indemnified Party must file an application before this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for payment by an Indemnified Party for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.

10.     Notwithstanding anything to the contrary in the Retention Agreement, Great American Group, LLC shall not be considered an Indemnified Party.

11.     Notwithstanding anything to the contrary in the Retention Agreement, during the course of these chapter 11 cases, GA Keen Realty shall have whatever fiduciary duty is imposed upon it by applicable law.

12.     To the extent there is any inconsistency between the terms of the Retention Agreement, the Application and this Order, the terms of this Order shall govern.

13.     The Debtors are authorized, empowered, and directed to take all actions necessary to implement the relief granted pursuant to this Order.

5

14.     During the pendency of these chapter 11 cases, this Court shall retain

jurisdiction with respect to all matters arising from or related to the implementation of this Order

and neither the Debtors nor GA Keen shall be required to seek authorization from any other

jurisdiction with respect to the relief granted by this Order.


Dated:  Wilmington, Delaware
        June 12, 2014

                                              _____
                                              BRENDAN LINEHAN SHANNON
                                              UNITED STATES BANKRUPTCY JUDGE

6