UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:

ORGANIC AVENUE LLC,

          Chapter 7
          15-12787 (REG)

                Debtor.

-----------------------------------------------------------------X

**ORDER, PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AND RULES 2002, 4001, 6004, 6006, 9008 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE SEEKING ENTRY OF ORDERS: (I) APPROVING (A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTIONS AND SALE HEARING, (C) SCHEDULING AUCTIONS AND SALE HEARING, AND (D) ASSUMPTION PROCEDURES AND RELATED NOTICES; AND (II) APPROVING THE SALE OF THE ESTATE'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS <u>AND ENCUMBRANCES AND GRANTING RELATED RELIEF</u>**

Upon the Chapter 7 Trustee's Motion Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Rules 2002, 4001, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure, Seeking Entry of Orders:  (I) Approving (A) Bid Procedures, (B) Notice of Sale, Auctions and Sale Hearing, (C) Scheduling Auctions and Sale Hearing, and (D) Assumption Procedures and Related Notices; and (II) Approving the Sale of the Estate's Assets Free and Clear of Liens, Claims Encumbrances and Granting Related Relief dated October 30, 2015 (the "**Motion**"), of Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") of the chapter 7 bankruptcy estate ("**Estate**") of Organic Avenue, LLC, the above-captioned debtor (the "**Debtor**"); and the Motion having sought entry, pursuant to 11 U.S.C. §§ 105, 363 and 365 and Rules 2002, 4001, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure, of an order, among other things, (a) approving bid procedures, in the form annexed hereto as **Exhibit I** (the "**Bid Procedures**") in connection with the Trustee's proposed sale (the "**Sale**") of the Estate's right, title, and interest in substantially all of the Debtor's assets (collectively, the "**Assets**"), (b)  scheduling a live auction (the "**Live Auction**") for the Assets, an on-line auction (the "**On-**

Line Auction" and together with the Live Auction, the "Auctions") solely for the Debtor's machinery and equipment, a sale hearing (the "Sale Hearing") and approving the form and manner of notice thereof; (c) approving the procedures to be used in connection with the assumption and assignment of unexpired leases for real property and executory contracts and related notices (the "Assignment Procedures"); and upon the Court's consideration of the Motion, the record of the hearing held on November 3, 2015 with respect to the Motion (the "Bid Procedures Hearing"); and good and sufficient notice of the Motion and the Bid Procedures Hearing having been given and no other or further notice of the Motion or the Bid Procedures Hearing being required; and upon all of the proceedings had before the Court; and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.    The Court has jurisdiction over this Motion, this matter and over the property of the Estate pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 4001, 6004, 6006, 9008, and 9014.  Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The relief granted herein is in the best interests of the Estate, all creditors and other parties in interest.

C.    The notice of the Motion and the Bid Procedures Hearing given by the Trustee constitutes due and sufficient notice thereof.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

D.    The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Bid Procedures and the Assignment Procedures, (ii) approve the form and manner of notice of the Auction and the Sale Hearing; and (v) schedule the date of the Auctions and the Sale Hearing.

E.    The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Assets considering the circumstances.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.    The Motion is granted, as provided herein.

2.    The Bid Procedures, substantially in the form annexed hereto as **<u>Exhibit I</u>**, are incorporated herein by reference and are hereby approved.  The failure specifically to include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision.

3.    Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Bid Procedures.

4.    The Bid Deadline (as defined in the Bid Procedures) is **November 18, 2015 at 12:00 noon (Eastern Time)**.

5.    The Live Auction for Leases, Intellectual Property and Turn Key Bids shall be held on **November 20, 2015 at 10:00 a.m. (Eastern Time)** at Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, New York or such other location reasonably determined by the Trustee in advance of the Auction, provided that the Trustee may change the location of the Auction upon reasonable notice to Qualified Bidders (as defined in  Bid Procedures) and further provided that the Trustee shall have the right to adjourn or cancel the

3

Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders.

6.      The On-Line Auction for M&E shall run from **November 16, 2015 at 10:00 a.m. through November 20, 2015 at 5:00 p.m. (Eastern Time)**.

7.      The Court shall hold the Sale Hearing on **November 24, 2015, at 9:45 a.m. (Eastern Time)**, at which time the Court will consider the approval of the Sale of the Assets to the Successful Bidder(s), the approval of the Trustee's selection of the Back-Up Bidder(s), resolve Cure Objections, if any, and confirm the results of the Auctions, if any.

8.      Objections to the Sale, if any, must be in writing and (a) must be filed with the Clerk of the Bankruptcy Court (with a copy to chambers) on or before **November 23, 2015 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**") and (b) served on or before the Objection Deadline (x) via e-mail on the Trustee and all parties that have filed a notice of appearance and request for service and (y) via facsimile on the Office of the United States Trustee.

9.      The failure to file and serve an objection to the Sale by the Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

10.     Objections to Cure Amounts (as defined in the Motion) must:  (a) be in writing; (b) be signed by counsel or attested to by the objecting party; (c) identify the Leases to which the objector is party; (d) describe with particularity any cure the claimant contends is required under section 365 of the Bankruptcy Code (the "**Cure Amount**") and identify the basis(es) of the Cure Amount under the Lease; (e) attach all documents supporting or evidencing the Cure Amount. Objections to Cure Amount must be (a) filed with the Clerk of the Bankruptcy Court (with a copy to chambers), on or before **November 13, 2015 at 5:00 p.m. (Eastern Time)** (the "**Cure Objection Deadline**") and (b) served on or before the Cure Objection Deadline (x) via e-mail on

the Trustee, Keen-Summitt and all parties that have filed a notice of appearance and request for service and (y) via facsimile on the Office of the United States Trustee.

11.     Unless a Cure Objection is filed and served by the Cure Objection Deadline, all Lease Counterparties (as defined in the Bid Procedures) who have been served with notice hereof shall be deemed to have waived and released any right to assert such a Cure Objection and to have otherwise consented to the cure amount set forth in Exhibit 5 to the Bid Procedures and shall be forever barred and estopped from asserting or claiming against the Debtor's Estate or an assignee that any additional amounts are due or defaults exist.

12.     A Lease Counterparty who receives an Adequate Assurance Package shall (notwithstanding that the Lease Counterparty has not executed a confidentiality agreement) be required to keep the Adequate Assurance Package confidential to the extent set forth in the Bid Procedures.

13.     The Sale Hearing may be adjourned from time to time without further notice other than by announcement of the adjournment in open Court or the entry of a notice of such adjournment on the Court's docket.

14.     The Trustee is authorized to take any and all actions as contemplated by the Bid Procedures prior to the Auction and the Sale Hearing, including, without limitation, actions to notify creditors or other interested parties regarding the Sale Transaction and to obtain any and all necessary consents or approvals regarding the Sale Transaction.

15.     Notice of (a) the Motion, (b) the Bid Procedures and Lease Assignment Procedures, (c) the Auctions, (d) the Objection Deadline, (e) the Cure Objection Deadline, and (f) the Sale Hearing shall be good and sufficient, and no other or further notice shall be required, if notice is given as follows:  within two (2) business days after entry of this Order, the Trustee

or her agents shall serve a notice, in substantially the form attached hereto as **Exhibit II** (the "**Sale Notice**") and the Bid Procedures, upon (i) the Office of the United States Trustee; (ii) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (iii) all known creditors of the Debtor and all entities known to have asserted any claims against the Assets or the Estate's interest in the Assets and other entities known to have asserted a lien, interest or encumbrance in or upon any of the Assets (without exhibits); and (iv) all known bona fide entities that have previously expressed an interest in purchasing the Assets in the last twelve months preceding the date of the Motion.

16.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
November 5, 2015

_s/ Robert E. Gerber_____
HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

1084805

# EXHIBIT I

# Bid Procedures

Jil Mazer-Marino, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**Telephone:  (516) 741-6565**
**Facsimile:  (516) 741-6706**

*Counsel for the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
In re:

**ORGANIC AVENUE LLC,**

                                                            **Debtor.**
--------------------------------------------------------------X

Chapter 7

15-12787 (REG)

## BID PROCEDURES

### Sale Process Overview

The chapter 7 trustee (the "**Trustee**") for Organic Avenue LLC (the "**Debtor**") is offering for sale all of the estate's interests in all of its assets (collectively, "**Assets**"). Those assets consist primarily of leases for nonresidential real property ("**Leases**"), machinery and equipment ("**M&E**"); trademarks, a domain name, website and customer list ("**Intellectual Property**"). You may bid on any one or any combination of the Assets or all of the Assets.

**Bids for M&E.**  If your bid is <u>solely</u> a bid for some or all of the M&E, you need only comply with the M&E Bid Procedures attached hereto as <u>Exhibit A</u>.  M&E is to be auctioned pursuant to an on-line auction conducted by Yellen Partners, LLC.

**Bids for Leases, Intellectual Property or other Assets and Turn Key Bids.**  If your bid includes an offer for Leases, Intellectual Property and other Assets (whether or not the bid also includes an offer for M&E) you must follow the General Bid Procedures attached hereto as <u>Exhibit B</u>.  The Trustee has retained Keen-Summit Capital Partners, LLC ("**Keen-Summit**") as sales and marketing agent for the Leases and the Intellectual Property and to accept "Turn-Key Bids", *i.e.*, bids that are for Leases and/or Intellectual Property together with some or all of the M&E.  Leases, Intellectual Property and Turn-Key Bids will be auctioned at a live auction.  Bidders submitting Turn-Key Bids need not comply with the M&E Bid Procedures.

The Trustee will determine the highest and otherwise best bid for the Assets at the conclusion of the on-line auction and the live auction.  All sales of Assets are subject to bankruptcy court approval.

Please be advised of the following critical dates regarding the M&E Bid Procedures:

| Deadline for Registration for the On-Line Auction: | Bidders must register on-line prior to bidding.  No pre-registration is required |
|---|---|
| Date and Time of On-Line Auction: | Monday, November 16, 2015 from 10:00 a.m. through Friday, November 20, 2015 at 5:00 p.m. (Eastern Time) |
| Website for On-Line Auction | www.yellenpartners.com www.bidspotter.com |
| Deadline for objecting to the sale of Assets: | Monday, November 23, 2015 at 4:00 p.m. Eastern Time |
| Hearing Date: | Tuesday, November 24, 2015 at 9:45 a.m. Eastern Time |

Please be advised of the following critical dates regarding the General Bid Procedures:

| Deadline for Submitting Qualified Bids: | November 18, 2015 at 12:00 noon Eastern Time |
|---|---|
| Date and Time of Live Auction: | November 20, 2015 at 10:00 a.m. Eastern Time |
| Location of Live Auction: | Meyer, Suozzi, English & Klein P.C. 1350 Broadway, Suite 501, New York, New York 10022 |
| Cure Objection Deadline: | November 13, 2015 at 5:00 p.m. Eastern Time |
| Deadline for objecting to the sale of Assets: | November 23, 2015 at 4:00 p.m. Eastern Time |
| Hearing Date: | November 24, 2015 at 9:45 a.m. Eastern Time |

**You are advised to carefully review the M&E Bid Procedures and the General Bid Procedures.  Failure to comply with those procedures could result in your exclusion from the auction process.**

EXHIBIT A

M&E BID PROCEDURES

(For Bid on Machinery & Equipment)

Lots consisting of machinery and equipment will be sold at auction from Monday, November 16, 2015 at 10:00 a.m. Eastern Time through Friday, November 20, 2015 at 5:00 p.m. Eastern Time.  A schedule of the lots offered for sale at the On-Line Auction will be posted on www.yellenpartners.com and www.bidspotter.com.

The On-Line Auction will be conducted in accordance with the terms set forth on Exhibit 1 hereto.

Potential Bidders interested in making a binding offer (a "**Bid**") to purchase M&E must register for the On-Line Auction by visiting www.yellenpartners.com or www.bidspotter.com.  Potential Bidders may register at any time prior to the close of the On-Line Auction.

3

**EXHIBIT 1**

M&E Bid Procedures

# Yellen Partners

## TERMS AND CONDITIONS OF ON-LINE AUCTION SALE

Before bidding on-site or online at the on-line auction by Yellen Partners ("Auctioneer") for Jil Mazer-Marino as trustee ("Trustee" or "Seller") for Organic Avenue, LLC, please read and accept these Terms and Conditions of Sale. By accepting the terms and conditions online and bidding at such auction, you agree that these Terms and Conditions of Sale govern the auction sale and constitute a binding agreement with Auctioneer.

1. **ALL SALES ARE FINAL. NO EXCEPTIONS.** All bids submitted are irrevocable.

2. A premium of fifteen percent (15%) of the bid price will be charged to buyers at auction and added to the price of each item purchased. Taxes are calculated including the buyer's premium.

3. The condition of the merchandise being offered at auction varies. Buyer understands and agrees that: (a) any description or sample of the merchandise given or furnished by Auctioneer is solely for identification, and does not create any warranty, expressed or implied, that the merchandise actually conforms to such description or sample; (2) all merchandise is purchased and accepted by Buyer "as is, where is," 'in place" and "with all faults, known and unknown." Auctioneer makes no warranties or guaranties whatsoever whether written, oral or implied as to quality, quantity, condition, FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY. No sale shall be invalidated and auctioneer shall have no liability for any mistaken description of any article or lot in a catalogue, advertisement or otherwise.   Descriptions have been prepared for guide purposes only and shall not be relied upon by Buyer for accuracy or completeness. Auctioneer recommends that bidders inspect items before bidding.  By submitting a bid, each bidder affirms it has inspected all items or has waived its right to do so prior to bidding. Buyers shall be deemed to have relied entirely upon their own inspections and investigations.

4. Subject to the terms of Paragraph 5 below, all articles will be sold to the highest bidder. Auctioneer reserves the right to sell articles in such lots as it deems appropriate in its discretion. In the event there is a dispute between two or more claims of entitlement as the successful bidder, Auctioneer reserves the right to re-auction the item in dispute. Auctioneer shall regulate all matters relating to the conduct of the auction and its decision shall be final and binding on all bidders. Auctioneer shall be entitled to make changes in the composition of the lots or to withdraw them, up until the last moment before the sale, refuse bids without having to state the reasons, in which case the previous bidders shall be bound to their bids, and to correct itself.

5. Buyer acknowledges that, simultaneously with the conduct of the online auction by auctioneer, Trustee is seeking to sell Organic Avenue's assets as a package in total or by

location, and therefore that Seller may withdraw the Assets at a location or all of the Assets from the online auction run by Auctioneer.

6. It shall be a condition to the obligation of Auctioneer and Trustee that the Bankruptcy Court with jurisdiction over Organic Avenue's bankruptcy case has entered an order (or orders) (collectively, the "Sale Order") authorizing and approving the sale of such Assets free and clear of liens, claims, encumbrances and interests.

7. Buyers will be charged all applicable taxes unless satisfactory proof of exemption is provided to Auctioneer prior to any removal of items purchased. If satisfactory proof of exemption is not provided, Buyer will pay all applicable taxes to Auctioneer. No taxes collected will be refunded once the purchases have left the site. Proof of exemption is subject to approval by Auctioneer in its discretion and may include a valid reseller's permit, a state issued letter of exemption, and a bill of lading provided by a common carrier for out of state shipments. Taxes shall be calculated after inclusion of the buyer's premium.

8. Any specific announcements made on the website prior to the auction take precedence over general terms and conditions or those previously announced or documented in a catalogue or otherwise. Auctioneer reserves the right to correct any mistakes or typographical errors made by itself or on its behalf in any of its announcements or documents.

9. No checkout will be permitted during the auction sale. All invoices must be paid in full before merchandise will be released from the premises. Unless Auctioneer determines otherwise at its sole discretion, checkout will begin on the day following the entry of the Sale Order. Quantities must be checked before removal of purchases. No allowances will be made for claims or shortages once items are removed from the Auction premises. Title shall not pass to the Buyer until full payment is received.

10. All property must be paid for and picked up in the time frames announced by Auctioneer. If not, the merchandise will be deemed abandoned, Buyer will lose any right, title or interest Buyer may have acquired, the merchandise shall revert and repossess to Auctioneer without further notice to Buyer and any deposit will be forfeited. No purchaser may assign, transfer, or dispose of its rights in any article purchased before it has paid the purchase price in full. No reselling will be allowed from the premises.

11. If any applicable conditions are not complied with by Buyer, then, in addition to any other remedies available to Auctioneer, Auctioneer may, at its option, (a) hold Buyer liable for the total purchase price, (b) cancel the sale, retaining all payments made by Buyer, including any deposit made, as liquidated damages and/or (c) resell the merchandise at public auction in which event Buyer will be liable for the cost of removing and reselling the abandoned merchandise, for any deficiency between Buyer's original purchase price and the subsequent resale price, Auctioneer's commission, interest of 1.5% per month, legal fees, moving and storage fees, and all other expenses related to the disposal or reselling of the abandoned property. In addition, Auctioneer may retain any merchandise purchased at auction by a defaulting Buyer as collateral security for Buyer's

obligations to Auctioneer.

12. Buyer is solely responsible to provide any personnel, equipment or material needed to pick up purchases and shall assume all responsibility for the removal of any item of property purchased at the sale and any and all risks associated with such removal including, without limitations, the responsibility for providing **LICENSED AND BONDED** professionals to ensure proper power disconnection, disassembly, removal and loading, and full financial responsibility for any damage or liability to persons or property resulting from any negligent act or omission of Buyer or Buyer's employees, agents and/or representatives during pick-up and removal.

13. Buyer agrees that in the event purchased merchandise contains any environmental hazards, toxic waste or other type of hazardous material in any form whatsoever, Buyer shall provide evidence that Buyer or its representatives are licensed for such removal and shall comply with all applicable local, state and/or federal rules, laws and regulations. Auctioneer, its agents and its representatives will not be responsible for containment, storage or removal of such material.

14. Persons in attendance during inspection, sale or removal of merchandise assume all risks of damage or loss to persons, property, or merchandise, shall exercise proper precautions at all times for the protection of persons and property, and shall comply with all safety and health requirements as directed by Auctioneer and all local, state and federal regulations. Auctioneer, its agents, its employees and representatives shall not be liable by reason of any defect in or about the condition of the premises on which the auction is held and each bidder specifically releases Auctioneer, its agents and representatives from all liability thereof.

15. All risk of loss shall pass to a buyer at the time its bid is accepted and each successful bidder is responsible to insure items purchased immediately. If Auctioneer is unable to deliver an article sold to Buyer due to fire, theft, or any other reasons whatsoever occurring prior to the auction, Auctioneer shall reimburse Buyer for all monies paid to Auctioneer in respect of such article and Auctioneer shall have no further liability to the such buyer arising from or relating to such loss, including without limitation any damages for loss of profits.

16. **In no event shall Auctioneer's liability to a buyer exceed the purchase price actually paid.** A Buyer's claim shall be limited to the amount paid for the merchandise, and shall not extend to any obligation, risk, liability, claim, or remedy for loss of use, revenue or profit, any liability of such buyer to any third party, personal injury, or any other direct, indirect, incidental or consequential damages. Auctioneer is acting as an agent only and is not responsible for the acts of its principals.

17. Buyer agrees to indemnify, defend and hold harmless Auctioneer and its agents and representatives, from any and all demands, claims, losses, damages and liabilities (including attorneys' fees) asserted against, resulting to or imposed upon Auctioneer resulting from the negligence of Buyer or its employees, agents and representatives,

while in, at or about the auction premises during inspection, sale or removal of merchandise.

18. This sales transaction shall be governed by and construed in accordance with the local laws of the State of New Jersey, USA. If any provision of these Terms and Conditions shall be held invalid, illegal, unenforceable or inoperative, the balance of Terms and Conditions shall remain in full force and affect as if such provisions had not been included. These Terms and Conditions with any amendments or modifications expressly made by Auctioneer at the time of the auction constitute all the terms and conditions with respect to the sale of articles at this auction. There are no representations, warranties, terms, conditions, undertakings or collateral agreements except as herein provided.

19. All Buyers acknowledge and accept the Terms and Conditions of Sale included herein.

EXHIBIT B

GENERAL BID PROCEDURES

(For bids for Leases, Intellectual Property and Turn-Key Bids)

I.    <u>Bid Deadline</u>.

    A.    Potential Bidders interested in making a binding offer (a "**Bid**") to purchase Assets must submit binding Bids in the form of the Required Bid Documents (defined below) on or before **<u>12:00 noon (ET) on November 18, 2015</u>** (the "**Bid Deadline**"). The chapter 7 trustee (the "**Trustee**") for Organic Avenue, LLC (the "**Debtor**") will review the Required Bid Documents and based upon that review, will identify those Bidders who have submitted "**Qualified Bids.**" Only those persons or entities that submit a Bid (a "**Bidder**") that has been determined by the Trustee to be a Qualified Bid, if any, will be authorized to participate in the Auction.

    B.    The original set of the Required Bid Documents (including the Deposit) must be submitted to the Trustee's counsel as follows:

          Meyer, Suozzi, English & Klein, P.C.
          990 Stewart Avenue, Suite 300
          PO Box 9194
          Garden City, New York  11530-9194
          Attn: Jil Mazer-Marino
          jmazermarino@msek.com,

          A complete copy of the Required Bid Documents must also be submitted to Keen Summit Capital Partner LLC ("**Keen-Summit**") at:
          hbordwin@keen-summit.com
          mbordwin@keen-summit.com
          rtramantano@keen-sumit.com and
          dgreenspan@keen-summit.com

    C.    Due diligence information can be obtained by contacting Keen-Summit at 646-381-9222 or by visiting its web site, www.Keen-Summit.com.

II.    <u>Required Bid Documents</u>. Unless expressly waived by the Trustee, in order for a Bidder to become a Qualified Bidder, a Bidder must submit the following documents which, taken together, constitute the "**Required Bid Documents**":

    A.    <u>Bidder Registration Form.</u> A Bidder Registration Form in the form attached hereto as <u>Exhibit 1</u>.

    B.    <u>Purchase Agreement</u>. Two executed originals of the purchase agreement and other documents by which the Bidder offers to purchase the Assets or any portion thereof in substantially the form of the Purchase Agreement that is attached hereto

as <u>Exhibit 2</u> together with a redline showing changes or modifications to the form Purchase Agreement; *provided, however,* that:

1.  a Bidder that is bidding solely on Leases shall execute two originals of the Lease Assignment Agreement attached hereto as <u>Exhibit 3</u> for each Lease that is the subject of the Bid in lieu of the purchase agreement together with a redline showing changes or modifications to the form Lease Assignment Agreement; and

2.  a Lease Counterparty bidding on its own Lease shall execute two originals of the Lease Termination Agreement in the form attached hereto as <u>Exhibit 4</u> and submit such executed agreement with its Bid together with a redline showing changes or modifications to the form Lease Termination Agreement.

C.  <u>Deposit</u>: A bank or certified check or wire transfer for the Deposit in the amount of fifteen thousand dollars ($15,000.00), whichever is greater; provided, however, that a Lease Counterparty is not required to tender a Deposit with a Bid for its Lease.

D.  <u>Evidence of Financial Wherewithal</u>.  Evidence of sufficient cash or other acceptable forms of currency on hand or written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Trustee.  This requirement is not applicable to a Lease Counterparty bidding on its own Lease.

E.  <u>Adequate Assurance Package for Bids that Include Leases</u>:  A Qualified Bidder that is bidding on one or more Leases must deliver an Adequate Assurance Package to the Trustee and to the Lease Counterparty and its counsel for each Lease.  Contact information for each Lease Counterparty is included in <u>Exhibit 5</u> hereto.  Adequate Assurance Packages are to be delivered via e-mail to the Lease Counterparties and their counsel to the extent email addresses are provided in Exhibit 5.  Note: that the only Bid Document to be delivered to the Lease Counterparty by a Bidder is the Adequate Assurance Package.  The addresses for the Lease Counterparties are set forth on Exhibit 5 hereto.  The Adequate Assurance Package must include the name, address and corporate history of the proposed Lease assignee, its principals and its legal counsel, along with such other documentation sufficient to satisfy the "adequate assurance of future performance requirement" set forth in Section 365(f)(2)(B) of the Bankruptcy Code.  At a minimum, the Adequate Assurance Package should include one or more of the following documents pertaining to the proposed Lease assignee and/or its guarantor, if any:

1.  Three (3) years historical and YTD audited and/or unaudited financial statements,

2.  Three (3) years historical and YTD tax returns,

5

3.      Three (3) years historical and YTD bank account statements,

4.      Business plans and/or projections,

5.      Any other information related to the proposed business to be conducted at the premises, and/or

6.      any other documentation that the Trustee deems appropriate.

A Lease Counterparty that is credit bidding for its own Lease shall be deemed to have satisfied this requirement.

As set forth in the Order approving these Bid Procedures, a Lease Counterparty and any of its professionals who receive an Adequate Assurance Package (notwithstanding that the Lease Counterparty has not executed a confidentiality agreement) shall be required to keep the Adequate Assurance Package confidential and only use or disclose the information as may be necessary to conduct due diligence on the Qualified Bidder and/or to object to a proposed assignment of its Lease; provided, however, the Lease Counterparty may share the Adequate Assurance Package with its attorneys and professionals that expressly agree to keep the Adequate Assurance Package confidential. Upon request by Bidder, (a) Lease Counterparty will promptly return the Adequate Assurance Package to the Bidder or cause the Adequate Assurance Package to be destroyed and cause its attorneys and other professionals to do the same, (b) confirm in writing that all such material has been either returned or destroyed in compliance with these Bid Procedures, and (c) continue to keep the information contained in the Adequate Assurance Package confidential. Notwithstanding the foregoing, a Lease Counterparty shall be permitted to retain an Adequate Assurance Package, if and so long as, required by law, regulation, administrative or court order, or securities exchange rule and such copies of any electronic data that has been stored due to archiving and backup procedures.

III.    <u>Qualified Bids</u>.  Unless such requirement is waived by the Trustee:

A.      Only Bidders that have submitted Qualified Bids shall be eligible to participate in the Auction.  Lease Counterparties are entitled to attend the Auction as observers without submitting a Qualified Bid.

B.      In order for a Bid to be a "Qualified Bid," a Bid shall:

1.      Price:

(i)     With respect to each asset other than a Lease, a Bid must be for an amount no less than $15,000.00;

(ii)    With respect to a Bidder seeking an assignment of a Lease (other than the Lease Counterparty), a Bid must be for an amount no less than the "Cure Amount" plus $15,000.00 cash and must provide

6

for the Bidder to replace the security deposit held by the Lease Counterparty. For purposes of these Bid Procedures "Cure Amount" shall mean such amounts as are necessary to cure all pre- and post-petition monetary defaults under such Lease. The Cure Amount asserted by the Debtor is set forth on Exhibit 5 hereto. After the Cure Objection Deadline, the Trustee shall file a schedule on the docket of this case that compares the Cure Amount asserted by the Lease Counterparty to the Cure Amount asserted by Debtor;

(iii)    With respect to a Lease Counterparty bidding on its own Lease, a Bid must be for an amount no less than the Cure Amount plus $15,000.00 and contain a waiver of all claims and administrative expenses, including the Section 502(b)(6) rejection claim; provided, however, such claims shall not be deemed waived by the Lease Counterparty up to the amount of the security deposit held by such Lease Counterparty;

2.    include an allocation of the consideration to each Asset that is the subject of the Bid.

3.    include the Deposit and each of the Required Bid Documents;

4.    be a good faith, bona fide, offer to purchase;

5.    not be contingent;

6.    be actually received by the Trustee by the Bid Deadline;

7.    demonstrate the Bidder's ability to consummate promptly the purchase of the Assets; and

8.    be irrevocable until the earlier of (i) the Closing, or (ii) thirty (30) days after the conclusion of the Auction (as adjourned), but in no event later than January 31, 2016 (the "**Irrevocability Period**").

9.    Following the receipt of Bids, the Trustee will ascertain, in the exercise of her reasonable business judgment, whether a Bid is a Qualified Bid.

10.    Keen-Summit will notify each Bidder at the email address set forth on the Offer & Bidder Registration Form if it is a Qualified Bidder.

C.    No Bid shall be deemed to be "accepted" by the Trustee unless and until the Court has entered an order approving the sale of Assets (a "**Sale Order**"). No Bid shall be deemed "rejected" by the Trustee unless and until the sale of an Asset has closed, the offer is rejected in writing, or the Irrevocability Period has lapsed.

IV.    <u>Deposit Requirement</u>.

    A.    Each Bidder shall tender a Deposit with the Required Bid Documents; provided, however, that a Lease Counterparty is not required to tender a Deposit with a Bid for its Lease.

    B.    The Deposit shall be by wire transfer, bank or certified check payable to Meyer, Suozzi, English & Klein, P.C. as Escrow Agent.

    C.    In the event that the Trustee does not consummate a sale of the Assets, for any reason (other than the Bidder's failure to consummate a sale), the Trustee's sole obligation and liability shall be to refund the Deposit to the Bidder.

V.    <u>Bidding by Lease Counterparties</u>.

    A.    A Lease Counterparty bidding on its Lease shall execute a Lease Termination Agreement in the form attached hereto as <u>Exhibit 4</u> and submit such executed agreement with its Bid together with a redline showing any changes or modifications to the form Lease Termination Agreement.

    B.    In addition, with respect to each Lease, a Lease Counterparty may credit bid only an amount equal to its undisputed Cure Amount that is acceptable to the Trustee or such amount as is determined by the Court. The Lease Counterparty shall receive a dollar-for-dollar credit in the amount of the Credit Bid when such Lease Counterparty bids for each Lease. A Lease Termination Agreement(s) shall become effective only if the Lease Counterparty executing such Lease Termination Agreement is the Successful Bidder for its Lease.

VI.    <u>Auction</u>.

    A.    If more than one Qualified Bid for all or a portion of the Assets is received by the Trustee before the Bid Deadline, the Trustee shall conduct an auction.

    B.    One (1) day prior to the Auction, the Trustee shall determine which of the Bids are Qualified Bids, and shall promptly notify all Qualified Bidders as to their status as a Qualified Bidder by no later than **November 19, 2015 at 9:00 p.m. (Eastern Time)**.

    C.    The Auction shall be held on **November 20, 2015 at 10:00 a.m. (Eastern Time)** at the offices of Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, New York 10022.

    D.    Only a Qualified Bidder who is designated as such by the Trustee and that confirms that it understands the Bid Procedures and has not engaged in any collusion with respect to the bidding or the proposed sale is eligible to participate at the Auction. Only the Trustee, Qualified Bidders and their respective agents and Lease Counterparties, shall be permitted to be present at the Auction. A

Lease Counterparty shall be entitled to attend the Auction as an observer only unless it has submitted a Qualified Bid pursuant to these Bid Procedures.

E.    Prior to the Auction, the Trustee shall announce the highest and best Qualified Bid and auction procedures, including bid increments.

F.    The Trustee reserves the right to (a) determine, in her reasonable discretion, which Bid is the highest or otherwise best Bid, (b) withdraw any Assets from the Auction; and (c) reject at any time, without liability, any offer that the Trustee in her reasonable discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor's estate and creditors.

G.    The Auction shall continue until there is only one Bid (or more than one Bid for non-overlapping portions of the Assets) that the Trustee determines, and subject to Court approval, is the highest or otherwise best offer for the Assets from among the Qualified Bidders (such offer or offers, the "**Successful Bid**"). Each Qualified Bidder submitting such Successful Bid shall become a "**Successful Bidder**," and shall have such rights and responsibilities of a purchaser, as set forth in the Purchase Agreement, or modified definitive purchase agreement, as applicable. The offer or offers that together constitute the next highest or otherwise best Bid(s) will be a "**Back-Up Bid**" and the maker of such a Bid will be the "**Back-Up Bidder**."

H.    The Successful Bidder shall, within one business day of the conclusion of the Auction, supplement its Deposit so that the aggregate deposit being held by the Trustee equals ten percent (10%) of the Successful Bid. All supplemental Deposits shall be paid in certified funds, wire transfer, or bank check made payable to Escrow Agent.

I.    The establishment of a Successful Bid and a Back-up Bid does not release any Bidder from its obligations, and all Bids shall remain open through the Irrevocability Period.

VII.    <u>Return of Deposits</u>:

A.    The Trustee reserves the right to hold the Deposit of the Backup Bidder until expiration of the Irrevocability Period.

B.    The Trustee shall return the Deposits of all Bidders other than the Successful Bidder and the Backup Bidder within five business days of the conclusion of the Auction.

9

VIII.    <u>Objection Deadline and Sale Hearing</u>.

    A.    Any objection to any sale of Assets, except as provided for below with respect to the Lease Counterparties, must be filed with the Court on or before **November 23, 2015 at 4:00 p.m. (Eastern Time)**.

    B.    The Sale Hearing will be held in the Court on **November 24, 2015 at 9:45 a.m. (Eastern Time)**. The Sale Hearing may be adjourned without notice except an announcement in open Court.

IX.    <u>Closing</u>

    A.    The Closing of the sale of any Assets sold through the Auction shall occur in accordance with the terms of the Purchase Agreement or Assignment Agreement, as applicable and the Sale Order.

    B.    In the event of the failure by a Successful Bidder to timely consummate a sale of any Assets, the Back-up Bidder for such Assets shall be deemed the Successful Bidder without further Order of the Court. The Trustee shall be entitled to retain the Deposit of any Successful Bidder who fails to close because of a breach or failure by such Successful Bidder and such Deposit shall be deemed forfeited by such defaulting Successful Bidder, shall not be credited against the purchase price for the benefit of a Back-up Bidder, and the Trustee specifically reserves the right to seek all available damages from the defaulting Bidder.

    C.    The balance of the purchase price shall be paid by the Successful Bidder by wire transfer or an endorsed bank or certified check at the Closing.

    D.    At the Closing, the Cure Amounts shall be paid to the Lease Counterparty together with an amount sufficient to replace the security deposit previously furnished to the Lease Counterparty and the Lease Counterparty shall return its existing security deposit to the Trustee.

X.    <u>Cure Procedures and Notices to Lease Counterparties</u>

    A.    In the event that a Qualified Bid for a Lease is received, the Trustee shall provide notice to the affected Lease Counterparty and its counsel via electronic mail of the following information: (i) the names of the Proposed Assignee/Bidder(s) for their Lease(s) and (ii) the Adequate Assurance Package provided by such Proposed Assignees/Bidders to the extent not previously provided. Such notice shall be served no later than **November 18, 2015 by 9:00 p.m.** (Eastern Time).

    B.    Objections, if any, to the cure amounts (the "**Cure Objections**") must: (a) be in writing; (b) be signed by counsel or attested to by the objecting party; (c) identify the Leases to which the objector is party; (d) describe with particularity any cure the claimant contends is required under section 365 of the Bankruptcy Code (the "**Cure Claim**") and identify the basis(es) of the Cure Claim under the Lease; (e) attach all documents supporting or evidencing the Cure Claim; (f) be filed with

the Clerk of the Bankruptcy Court, on or before **November 13, 2015** (the "**Cure Objection Deadline**"); and (g) be served so as to be received on or before the Cure Objection Deadline by the Trustee and Keen-Summit.

C.    Unless a Cure Objection is filed and served by the Cure Objection Deadline, all Lease Counterparties who have been served with notice hereof shall be deemed to have waived and released any right to assert such a Cure Objection and to have otherwise consented to the cure amount set forth in Exhibit 5 hereto and shall be forever barred and estopped from asserting or claiming against the Debtor's estate or an assignee that any additional amounts are due or defaults exist.

D.    Cure Objections timely filed and served shall be considered by the Court at the Sale Hearing, as such hearing may be adjourned. A properly filed and served Cure Objection shall reserve such Lease Counterparty's rights respecting the Cure Amount until resolved by the Lease Counterparty and the Trustee or determined by the Court, but shall not constitute an objection to the relief generally requested in the Motion, with respect to which an objection to the Sale must be filed.

E.    Upon the conclusion of the Auction, with respect to all Leases for which there is a Successful Bidder (other than where the Lease Counterparty is the Successful Bidder), the Trustee will promptly provide written notice to all affected Lease Counterparties via facsimile, overnight mail or e-mail, of the names of the Successful Bidder and the Backup Bidder for the particular Lease(s). All affected Lease Counterparties will be required to submit any objections with respect to adequate assurance of future performance by the Successful Bidder or the Back-up Bidder no later than the Sale Hearing. All other objections to the assumption and assignment of their respective Lease(s), including Cure Objections, must be submitted by the Objection Deadline.

XI.    Reservation of Rights. The Trustee reserves the right to modify the Bid Procedures at or prior to the Auction. The Trustee may impose such other terms and conditions for purposes of the Auction and the Bid Procedures as she may determine, in the exercise of her fiduciary obligations, to be in the best interests of the Debtor's estate and creditors.

11

# EXHIBIT 1

# Bidder Registration Form

## BIDDER REGISTRATION FORM

Bidder, _____, hereby:

seeks to become a Qualified Bidder pursuant to the terms and conditions of the Bidding Procedures approved by the United States Bankruptcy Court for the Southern District of New York in the Chapter 7 Case of Organic Avenue, LLC ("**Bidding Procedures**").

Bidder hereby warrants and represents as follows:

(a) Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bidding Procedures, the terms and conditions of which are incorporated herein by reference.

(b) To the extent that the words and phrases which are capitalized in this Offer & Bidder Registration Form have been defined in the Bidding Procedures or in the Assignment Agreement, those definitions are incorporated herein by reference.

(c) Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Bidding Procedures.

(d) Each Bid along with any subsequent Bids is irrevocable pursuant to the terms of the Bidding Procedures.

(e) Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Assets on an all-cash, as-is, where-is basis, with no contingencies.

(f) Bidder had an opportunity to inspect and examine the Assets and to review all other pertinent documents with respect to the Assets prior to making its Bid and Bidder relied solely on that review and upon its own investigation and inspection of the Leases in making its Bid; and Bidder is not relying upon any written or oral statements, representations, or warranties of the Seller, Seller's Counsel and/or Keen-Summit or any of Seller's other agents or representatives.

(g) Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder is wholly responsible for its broker's commission. Bidder hereby indemnifies and agrees to hold Seller and Keen-Summit and Seller's other agents harmless from claims of a broker seeking a commission based upon Bidder's Bid.

(h) Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. Section 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

AGREED & ACCEPTED this _____ day of _____, 2014

Company: _____

By:_____
Name:
Title:

1

*BIDDER I.D.*

Bidder's Company:

_____

Bidder's Address:_____

Bidder's Contact:_____

Bidder's Phone & Facsimile Numbers:_____

Bidder's Email Address: _____

Bidder's Tax ID Number:_____

*ATTORNEY I.D.*

Attorney Name:_____

Law Firm:

_____

Address:_____

Phone & Facsimile Numbers:_____

Email Address: _____

*BANK REFERENCE*

Bank & Bank Contact:_____

Bank Address:_____

Bank Contact's Phone Number:_____

Bank                              Contact's                              Email
Address:_____

2

1084761

# EXHIBIT 2

# Form Purchase Agreement

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "**Agreement**"), made this ___ day of
_____, 2015, is by and between **Jil Mazer-Marino**, not individually but as trustee for
the chapter 7 bankruptcy estate of **Organic Avenue, LLC,** a _____ limited liability company
and _____, a _____
**[company]** having a principal place of business at _____
("**Buyer**").

## W I T N E S S E T H :

**WHEREAS,** on October 15 (the "**Petition Date**"), Organic Avenue, LLC ("**Organic
Avenue**" or the "**Debtor**") filed a voluntary petition for relief under chapter 7, title 11 of the
United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the
Southern District of New York (the "**Bankruptcy Court**"), Case No. 115-12787 (REG);

**WHEREAS,** on October 16, 2015 Jil Mazer-Marino (the "**Trustee**" or "**Seller**"), was
appointed as interim chapter 7 Trustee for the Debtor;

**WHEREAS,** an order establishing notice, bidding and auction procedures (the "**Bid
Procedures Order**") was entered by the Bankruptcy Court on **[date]**;

**WHEREAS,** Trustee desires to sell to Buyer, and Buyer desires to purchase from Seller,
the Acquired Assets (defined below), subject to and in accordance with the terms and conditions
of this Agreement and the Bid Procedures Order.

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants
hereinafter set forth, the parties hereto agree as follows:

## ARTICLE 1. PURCHASE AND SALE OF ASSETS

Section 1.    Sale of Assets. Subject to and in accordance with the terms of this
Agreement and entry of the Sale Order (defined in Article 9, Section 2), Seller agrees to sell,
transfer and deliver to Buyer, and Buyer agrees to buy from Seller, all of Seller's right, title and
interest in and to the assets listed on Schedule 1.1 attached hereto (collectively, the "**Acquired
Assets**"). Seller is transferring, selling and delivering only the Acquired Assets and is not
transferring, selling or delivering any other asset of whatever nature. All such other assets,
including those assets listed on Schedule 1.2 attached hereto, shall be retained by and remain
assets of the Debtor's estate. All such assets not being sold or assigned are herein referred to as
the "**Excluded Assets**."

Section 2.    Assumption of Liabilities. At the Closing, Buyer shall assume, and Buyer
hereby agrees to thereafter pay, perform and discharge when due, only the following liabilities
(the "**Assumed Liabilities**"):

(a)    all liabilities of Seller for Transaction Taxes (defined in Article 6, Section
1) payable in connection with the transactions contemplated by this Agreement; and

(b)    all liabilities and obligations arising on or after the Closing Date (defined in Article 3, Section 1), other than successor liability claims, relating to or arising out of the Acquired Assets.

Section 3.    Retention of Liabilities.  Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter.  All such other liabilities and obligations shall be retained by and remain liabilities and obligations of the Debtor's estate (all such liabilities and obligations not being assumed are herein referred to as the "**Excluded Liabilities**").

## ARTICLE 2. CONSIDERATION

Section 1.    Consideration.  The aggregate consideration for the sale and transfer of the Acquired Assets is (a) _____ dollars ($_____) in cash (the "**Purchase Price**"), which shall be payable and deliverable on Closing in accordance with Article 3, Section 3 herein; and (b) the assumption by Buyer of the Assumed Liabilities.  The consideration allocable to each Acquired Asset is set forth on Schedule 1.1.

Section 2.    Deposit.  Concurrently with the execution and delivery of this Agreement, Buyer shall, by wire transfer of immediately available funds, transfer to the Seller an aggregate amount equal to _____ dollars ($_____), representing ten percent (10%) of the Purchase Price (such amount, together with all interest earned thereon, if any, the "**Deposit**"), to be held by the Seller in a separate segregated account in accordance with the terms and provisions of this Agreement.  If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Article 8, Section 2.  If the Closing occurs, the Deposit shall be applied (with interest if any) to the Purchase Price.

## ARTICLE 3. CLOSING AND DELIVERIES

Section 1.    Closing.  The consummation of the transactions contemplated hereby (the "**Closing**") shall take place, within fifteen (15) Business Days after entry of the Sale Order, or as otherwise may be agreed to by the parties hereto (the "**Closing Date**"), at the offices of Sellers' counsel or at a place otherwise agreed upon by the parties.

Section 2.    Seller's Deliveries.  At the Closing, Seller shall deliver to Buyer:

(a)    bills of sale, endorsements, assignments and other instruments of transfer and conveyance necessary to effect the sale, transfer, and assignment of the Acquired Assets to Buyer that are consistent with the terms of this Agreement and reasonably satisfactory in form and substance to counsel for Buyer;

(b)    possession of the Acquired Assets (to the extent physically deliverable); and

(c)    a copy of the Sale Order as entered on the docket of the Debtors' bankruptcy cases.

2

Section 3.    <u>Buyer's Deliveries</u>.  At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price (less the Deposit) by wire transfer of immediately available funds in accordance with wire instructions provided by Seller; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller.  Buyer and Seller may agree that <u>Article 1, Section 2</u> hereof may stand in lieu of a separate instrument.

## ARTICLE 4.  REPRESENTATIONS AND WARRANTIES

Section 1.    <u>Representations and Warranties of Seller</u>.  Seller represents and warrants to Buyer as follows:

(a)    <u>Authorization and Validity</u>.  Seller has all power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder.  Subject to the Bankruptcy Court's entry of the Sale Order, the execution and delivery of this Agreement and the performance of the obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery and performance.  This Agreement has been duly executed by Seller and, subject to Bankruptcy Court approval, constitutes Seller's valid and binding obligations, enforceable against Seller in accordance with the terms hereof.

Section 2.    <u>Representations and Warranties of Buyer</u>.  Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>.  Buyer is a _____, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has all requisite power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>.  Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder.  The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery and performance.  This Agreement has been duly executed by Buyer and constitutes the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

(c)    <u>No Conflict or Violation</u>.  The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the organizational documents of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

3

(d)    Consents and Approvals. The execution, delivery and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    Investigation by Buyer. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Debtors' bankruptcy cases. In entering into this Agreement, Buyer has relied upon its own investigation and analysis as well as Seller's representations and warranties contained in Article 4.1(b) (which are subject to the limitations and restrictions contained in this Agreement), and Buyer (i) acknowledges that neither Seller, the Debtor, nor any of their respective Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in this Agreement (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, the Debtors, nor their respective Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), except for Seller's representations and warranties contained in this Agreement and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 3.    Warranties Exclusive. The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT NEITHER SELLER, THE DEBTORS NOR THEIR RESPECTIVE AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE ANY REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL OR OTHER LAWS.

Section 4.    <u>Survival of Representations and Warranties</u>.    None of the representations or warranties of Seller or Buyer set forth in this Agreement or in any certificate delivered pursuant to <u>Article 7, Sections 1(a) or 2(a)</u> shall survive the Closing.    The parties hereto agree that the representations and warranties of Seller contained in this Agreement shall terminate upon the Closing or upon the earlier termination of this Agreement pursuant to <u>Article 8, Section 1</u> and neither Seller nor Buyer shall have any liability for any breach thereof from and after such termination.

**ARTICLE 5. COVENANTS AND OTHER AGREEMENTS**

Section 1.    <u>Covenants of Seller and Buyer</u>.

(a)    <u>Covenants of Seller</u>.

(i)    <u>Approvals</u>.    Seller shall use all commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)    <u>Further Assurances</u>.    At the request and the sole expense of Buyer, at any time after the Closing Date, Seller or its designee, on behalf of Seller, shall execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

(b)    <u>Covenants of Buyer</u>.

(i)    <u>Approvals</u>.    Buyer shall use all commercially reasonable efforts to (A) obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement, and (B) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

(ii)    <u>Personally Identifiable Information</u>.    In connection with its purchase of the Acquired Assets which contain personally identifiable information within the meaning of section 363(b) of the Bankruptcy Code, Buyer agrees to: (A) assume all obligations set forth in the Debtor's privacy policy as in effect as of the Petition Date; (B) to abide by all applicable laws and regulations with respect to such information; and (C) to take such additional reasonable actions as may be agreed between Seller and Buyer.

**ARTICLE 6. TAXES**

Section 1.    <u>Taxes Related to Purchase of Assets</u>.    All federal, state and local sales and transfer taxes, including, without limitation, all state and local taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "Transaction Taxes") that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets shall be paid by Buyer.    Transaction Taxes do not include any tax in the nature of an income tax, including without limitation, any capital gains, franchise, excise, inheritance,

5

estate, succession, or gift taxes. Buyer and Seller agree to cooperate to minimize any such Transaction Taxes and to determine appropriate taxing authorities and amount of Transaction Taxes, if any, payable in connection with the transactions contemplated under this Agreement. Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 2.    <u>Cooperation on Tax Matters.</u>

(a)    Buyer and Seller agree to furnish, or cause to be furnished to each other, (including the execution and delivery of appropriate powers of attorney) as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings as required by law relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer to any governmental or regulatory inquiry relating to tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least six (6) years from the Closing Date, and will give Seller (or Seller's designated successor) notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller, Seller's designated successor and their respective attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller or Seller's designated successor may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete the Debtor's bankruptcy case. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 3.    <u>Allocation of Purchase Price and Purchase Price Allocation Forms</u>. The Purchase Price and the Assumed Liabilities will be allocated among the Acquired Assets in accordance with the allocation of the Purchase Price (the "**Allocation**") set forth on Schedule 6.3 to be delivered by Buyer, or Buyer's designated successor, to Seller no later than one (1) business day prior to the Closing. Any adjustments to the Purchase Price shall result in an adjustment to the Allocation in accordance with section 1060 of the Code and the Treasury Regulations thereunder. The Allocation, as so adjusted, shall be binding on the parties for all purposes. Seller and Buyer agree that the transaction will be treated as an asset acquisition for tax purposes. Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594, including any required amendments or supplements thereto, as provided for in section 1060 of the Code and the Treasury Regulations issued thereunder on a basis

6

consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed. Neither Seller, Seller's designated successor, nor Buyer shall, nor shall they permit their respective Affiliates to, take any position inconsistent with the Form 8594, as appropriately adjusted.

**ARTICLE 7.** CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 1.    <u>Conditions Precedent to Performance by Seller</u>.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in <u>Article 7, Section 1(c)</u>) may be waived by Seller in its sole discretion:

(a)    <u>Representations and Warranties of Buyer</u>.  All representations and warranties made by Buyer in <u>Article 4, Section 2</u> shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder.

(b)    <u>Performance of the Obligations of Buyer</u>.  Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)    <u>Consents and Approvals</u>.  The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)    <u>No Violation of Orders</u>.  No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 2.    <u>Conditions Precedent to the Performance by Buyer</u>.  The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in <u>Article 7, Section 2(c)</u>) may be waived by Buyer in its sole discretion:

(a)    <u>Representations and Warranties of Seller</u>.  All representations and warranties made by Seller in <u>Article 4, Section 1</u> shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect.

(b)    <u>Performance of the Obligations of Seller</u>.  Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)    <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

7

(d)    No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 8. TERMINATION

Section 1.    Termination.  This Agreement may be terminated at any time prior to the Closing Date by either Seller or Buyer if, other than through a default hereunder by the other party hereto:

(a)    by either Seller or Buyer if the Closing shall not have occurred by _____ __, 2015; provided that Buyer may not terminate this agreement if such deadline shall have been missed on account of a default hereunder by Buyer, and provided further, however, that the Closing deadline in this subsection may be extended by Seller and Buyer upon mutual agreement;

(b)    by Seller if Buyer shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Seller to Buyer specifying such breach in reasonable detail;

(c)    by Buyer if Seller shall have breached any of its representations, warranties, covenants or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after the giving of written notice by Buyer to Seller specifying such breach in reasonable detail; or

(d)    by the mutual written consent of Seller and Buyer.

Section 2.    Effect of Termination.  In the event of termination of this Agreement as provided in Article 8, Section 1, this Agreement shall forthwith become void and there shall be no liability on the part of either party other than for the return of the Deposit to Buyer with any interest thereon; provided, however, (i) if the Agreement is terminated under Article 8, Section 1(a) and the Closing deadline was missed on account of default under this Agreement by Buyer, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer; and (ii) if the Agreement is terminated under Article 8, Section 1(c) and Seller is not in breach of the Agreement, Seller shall retain the Deposit and all interest thereon, if any, in addition to any other rights Seller may have against Buyer.  The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination by Buyer.

## ARTICLE 9. BANKRUPTCY COURT MATTERS

Section 1.    Bankruptcy Code 363(b) and (f).  The sale contemplated by this Agreement is to be made in accordance with the provisions of Bankruptcy Code sections 363(b) and (f), with the Acquired Assets being sold free and clear of all liens, claims, interests and

8

encumbrances of whatever kind or nature (the "**Interests**"), but subject to the Assumed Liabilities, with such Interests, if any to attach to the net proceeds of sale.

      Section 2.     Sale Order. Buyer acknowledges that this Agreement and the transactions contemplated herein are subject to entry of an order approving this Agreement and authorizing the sale of the Acquired Assets free and clear of all Interests (the "**Sale Order**") and this Agreement is of no force or effect as to Seller prior to entry of the Sale Order. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist Seller in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" purchaser under section 363(m) or any other section of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of section 363(n) or any other section of the Bankruptcy Code. The Sale Order proposed by Seller to the Bankruptcy Court shall provide that it shall be effective and enforceable immediately upon entry by the Bankruptcy Court notwithstanding rule 6004(d) of the Federal Rules of Bankruptcy Procedure.

      Section 3.     Buyer's Back-Up Commitment. If a competing transaction is approved by the Bankruptcy Court with a bidder or bidders other than Buyer and Buyer has submitted the second highest or best bid for the Acquired Assets, then Buyer shall remain bound to this Agreement, on its existing terms and at the purchase price bid by Buyer at the auction as a back-up bid pursuant to the Bid Procedures Order, unless and until the Competing Transaction is consummated or, if earlier, until the Closing Date deadline set forth in Article 8, section 1(a).

## ARTICLE 10. MISCELLANEOUS

      Section 1.     Successors and Assigns. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto, specifically including, without limitation, the designated successor of Seller.

      Section 2.     Governing Law; Jurisdiction. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by Federal Law. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters or disputes arising under or in connection with the Agreement, and consent to the exclusive personal and subject matter jurisdiction of, the Bankruptcy Court.

      Section 3.     Expenses. Each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated, subject to Article 9. Buyer shall pay the cost of all fees, costs, and expenses associated with recording any assignment of the Acquired Assets.

9

Section 4.    <u>Broker's and Finder's Fees</u>.  Each of the parties represent and warrant that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than _____, whose fees and expenses shall, as between the parties hereto, be the responsibility of Buyer, and, insofar as such party knows, no other broker or other Person is entitled to any commission, finder's fee or similar payment in connection with any of these transactions.

Section 5.    <u>Severability</u>.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 6.    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below, and telephonic confirmation of receipt is obtained promptly after completion of transmission, if prior to 3:00 p.m. on a Business day, and otherwise on the next Business Day; (iii) on the Business Day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service providing for delivery on such Business Day and the procuring of a signed receipt; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Jil Mazer-Marino, Chapter 7 Trustee
c/o Meyer, Suozzi, Engish & Klein, P.C.
990 Stewart Avenue
P.O. Box 9194
Garden City, New York 11530-9194
Facsimile: 516-741-6706

If to Buyer:

_____

(b)    Any party may change its address for the purpose of this <u>Article 10, Section 6</u> by giving the other party written notice of its new address in the manner set forth above.

10

Section 7.    Amendments; Waivers.    This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance.    Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a further or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 8.    Entire Agreement.    This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.    All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.    No Third Party Beneficiaries.    Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller, Seller's designated successor and Buyer and their respective successors and permitted assigns.    Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller, Seller's designated successor or Buyer. This Agreement is not intended to nor shall it give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.    Headings, Interpretation, Gender.    Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation."    Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise.    No party to this Agreement shall be considered the draftsman.    On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties.    The captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.    All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement.    All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 11.    Counterparts.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

11

Section 12.    <u>Further Action</u>.    Pending the Closing, the parties hereto shall use all reasonable efforts to take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law as may be consistent with the terms of this Agreement, or required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Acquired Assets.

## ARTICLE 11. DEFINITIONS

Section 1.    <u>Certain Terms Defined</u>.    As used in this Agreement, the following terms which are not otherwise defined above, shall have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended.

"<u>IRS</u>" means the Internal Revenue Service.

"<u>Material Adverse Effect</u>" means a state of facts, event, change or effect that results in a material adverse effect on the value of the Acquired Assets taken as a whole and considering the reasonable prospects of monetizing the full value of the Acquired Assets, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes in economic, regulatory or political conditions generally; or (B) any hostilities, acts of war, military actions, sabotage or terrorism.

"<u>Person</u>" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or government.

"<u>Related Person</u>" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"<u>Tax Return</u>" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any taxes (including estimated taxes).

*[Signatures are on the following page.]*

13

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Jil Mazer-Marino, Chapter 7 Trustee for Organic Avenue, LLC., as Seller

By:    /
       Name: Jil Mazer-Marino
       Title:  Chapter 7 Trustee

[                    ], as Buyer

By:
       Name:
       Title:

14

## SCHEDULES

Schedule 1.1 —Acquired Assets and allocation of purchase price to each Acquired Asset

Schedule 1.2 – Excluded Assets

All cash or Cash Equivalent

Schedule 6.3 – Allocation of Purchase Price

17

# EXHIBIT 3

# Form Lease Assignment Agreement

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "**Agreement**"), dated as of _____, 2015, by and between Jil Mazer-Marino, not individually but solely in her capacity as chapter 7 trustee for Organic Avenue, LLC ("**Assignor**"), and _____, a _____corporation ("**Assignee**").

WHEREAS, Organic Avenue, LLC filed a voluntary petition for relief pursuant to chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (together with any other court having proper jurisdiction, the "**Bankruptcy Court**") under the Chapter 7 Case No. 15-12787 (REG);

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (the "**Assigned Asset**") with respect to the premises set forth on Schedule A (the "**Premises**") on the terms and conditions set forth herein and as authorized under sections 363 and 365 of the Bankruptcy Code, the [*Order Approving the Sale of the Estate's Assets Free and Clear of All Liens, Claims and Encumbrances* entered by the Bankruptcy Court on November __, 2015,[Docket No. ____]] and Assignor has determined that an assumption and assignment in accordance with sections 363 and 365 of the Bankruptcy Code is in the best interests of its creditors and interest holders.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

1.    Assignment and Assumption.

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title and interest in and to the Assigned Asset.

(b)    Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned Asset.

2.    Payment of Purchase Price.  Assignee shall on the date hereof deliver the purchase price for the Assigned Asset in the amount of $_____ (the "**Purchase Price**") in immediately available funds wired to the account specified by Assignor.

3.    Assumption of Liabilities.  In addition to assuming all remaining obligations that exist with respect to the Assigned Asset, including, but not limited to, accrued but unbilled adjustments for CAM, real estate taxes and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Assigned Asset.

4.    Security Deposit.  Assignee hereby agrees to replace the security deposit(s) currently held by the lease counterparty for the Assigned Asset.

5.    No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Asset.

6.      Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey and assign to Assignee Assignor's rights to the Assigned Asset.

7.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset.  Without in any way limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Asset.  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Assigned Asset and all such other matters relating to or affecting the Assigned Asset as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Asset, Assignor is doing so based upon such independent inspections and investigations.  Accordingly, Assignor will accept the Assigned Asset "AS IS" and "WHERE IS".

8.      Taxes Related to Purchase of Assets.  All federal, state and local sales and transfer taxes, including, without limitation, all state and local taxes in connection with the transfer of the Assigned Asset, and all recording and filing fees (collectively, "Transaction Taxes") that may be imposed by reason of the sale, transfer, assignment and delivery of the Assigned Asset shall be paid by Buyer.  Transaction Taxes do not include any tax in the nature of an income tax, including without limitation, any capital gains, franchise, excise, inheritance, estate, succession, or gift taxes.

9.      Compliance With Law.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

10.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.  Any and all disputes hereunder shall be resolved in the Bankruptcy Court, as to which the parties consent to have exclusive jurisdiction at all times that the Assignor's bankruptcy case is pending.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

By:_____

Jil Mazer-Marino, not individually but solely in her capacity as chapter 7 trustee for Organic Avenue, LLC

[Name of Assignee]

By:_____
Name:
Title:

SCHEDULE A

1084772

# EXHIBIT 4

# Form Lease Termination Agreement

## LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (the "Agreement") is made as of this ___ day of _____, 2015, by and between _____, ("Landlord") and Jil Mazer-Marino, not individually but solely in her capacity as chapter 7 trustee (the "Trustee") for Organic Avenue, LLC ("Tenant" or "Debtor").

W I T N E S S E T H:

WHEREAS, Landlord and Tenant entered into a certain lease dated _____, (as the same may have been amended from time to time, and together with any and all other leases or agreements affecting the subject premises (the "Lease"), covering certain premises commonly known as _____ (together, the "Premises"), on the terms and conditions set forth therein; and

WHEREAS, the Tenant filed a voluntary petition for relief pursuant to chapter 7 of Title 7 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (together with any other court having proper jurisdiction, the "Bankruptcy Court") under the chapter 7 case number 15-12787(REG); and

WHEREAS, subject to the conditions set forth herein, the parties desire to terminate the Lease effective as of such date as may be elected by the Trustee, which shall be no later than _____ (the "Termination Date").

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Trustee hereby covenant and agree as follows subject only to Bankruptcy Court approval:

Effective as of the occurrence of the Termination Date with respect to the Lease, Landlord shall pay by the next business day to Trustee the sum of _____ Dollars ($_____) at _____.

As of the Termination Date, Trustee hereby surrenders the Premises to Landlord and does hereby give, grant and surrender unto Landlord all of Tenant's bankruptcy estate's right, title and interest in and to the Premises, including, without limitation, all of the estate's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender. Except as otherwise expressly provided herein, each of the parties hereto acknowledge performance of all obligations of the other party under the Lease or otherwise in connection with the Premises through and including the Termination Date. The Lease is hereby agreed to be null and void and of no further force and effect as of the Termination Date. In addition, any and all rights and obligations of the parties that may have arisen in connection with the Premises shall be deemed to have expired and terminated as of the Termination Date.

2401104.1

As of the Termination Date, except as to the obligations of Tenant expressly set forth in this Agreement, Landlord hereby releases and discharges any and all claims as defined in Bankruptcy Code section 101(5) and claims for administrative expenses as defined in Bankruptcy Code section 503, including claims for cure and lease rejection damage claims; provided, however, that:

(i)     Landlord shall be permitted to apply the Tenant's security deposit to all such claims; and

(ii)    This release and discharge shall not include any past, present or future claims for which the Tenant owes the Landlord any indemnification, defense and/or hold harmless obligation pursuant to the Lease that would be covered by insurance issued to, on behalf of, or for the benefit of the Tenant; provided further, that Landlord agrees not to assert any such claims against the bankruptcy estate, and is limited to asserting any such claims solely as against the Tenant's applicable insurance.

To the extent the Landlord has filed or files any proof of claims with respect to the Lease or the Premises, Landlord consents to the disallowance and expungement of such claims, with prejudice.

This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Trustee's successors and assigns.

The parties hereto each warrant and represent that it has the right and authority to enter into this Agreement.

This Agreement, and any agreement and/or instruments delivered in connection herewith, contain the entire agreement between the parties hereto and except as otherwise specifically set forth herein, supersede all prior agreements and undertakings between the parties hereto or any of them or any of their affiliates relating to the subject matter hereof.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of the Agreement to present any copy, copies or facsimiles signed by the parties to be charged.

This Agreement shall be governed by the laws of the State of New York, and any disputes shall be resolved by the Bankruptcy Court which shall have exclusive jurisdiction at all times that the Tenant's bankruptcy case is pending.

2401104.1

Any and all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the termination of the Lease shall be the sole responsibility of Landlord and shall be paid, if applicable, to the proper governing body on the Termination Date.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date and year first written above.

[LANDLORD NAME]

By: _____

    Name:

    Title:

_____

Jil Mazer-Marino, not individually but solely as chapter 7 trustee for Organic Avenue, LLC

2401104.1
1084776

# EXHIBIT 5

# Non-Residential Real Property Leases

# and Cure Amounts

## NON-RESIDENTIAL REAL PROPERTY LEASES & CURE AMOUNTS[1]

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 115 East Ninth Street, New York, New York a/k/a 30 Third Avenue New York, New York | Organic Avenue LLC | 115 East 9th Street Retail, L.P. 400 West 59th Street, 3rd Fl., New York, NY 10019<br><br>c/o Urban Associates Attn: Margaret O'Connor 400 West 59th Street New York, New York 10019 Tel: (212) 957-6160, ext. 5574 | $0.00 |
| 206 East 86th Street, New York, New York a/k/a 205 East 85th Street, New York, New York | Organic Avenue LLC | Bar-Mar Associates c/o Howard Grun, Esq. Kaufman Friedman Plotnicki & Grun, LLP 300 East 42nd Street - 8th Floor New York, NY 10017 Tel: (212) 687-1700 Email: hrun@kfpgllp.com | $85,381.00 |

[1] The Trustee intends to file an updated schedule of Cure Amounts to reflect the Cure Amounts asserted by Lease Counterparties to the extent they differ from the Cure Amount set forth herein. That schedule will be filed on the docket of the Debtor's case on November 14, 2015.

[2] Cure amounts are based on the Debtor's schedules and have not been independently verified by the Trustee or her agents.

1

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 10-01 45th Road, Long Island City, New York | Organic Avenue LLC | DH Vernon LLC Steven Simkin, Esq. Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 Tel: (212) 373-3073 Fax: (212) 492-0073 Email: ssimkin@paulweiss.com | $39,784.00 |
| 43-46 10th Street, Long Island City, New York | Organic Avenue LLC | Schuman 43-46 10th Street LLC 36-04 Skillman Avenue, Long Island City, NY 11101  c/o Andrew Ebenstein Email: aeberstein@gmail.com | $13,537.00 |
| 43-37 9th Street, Long Island City, New York | Organic Avenue LLC | Schuman 43-50 10th Street LLC 36-04 Skillman Avenue Long Island City, NY 11101  c/o Andrew Ebenstein Email: aeberstein@gmail.com | $21,032.60 |
| 43-43 9th Street, Long Island City, New York | Organic Avenue LLC | Schuman 43-50 10th Street LLC 36-04 Skillman Avenue Long Island City, NY 11101  c/o Andrew Ebenstein Email: aeberstein@gmail.com | $22,875.00 |

2

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 254 Park Avenue South, New York, New York | OA 254 Park Avenue South LLC | 254 Pas Trevi LLC c/o Trevi Retail LLC 130 East 59th Street, Suite 14A New York, NY 10022<br><br>c/o Rob Dunn Hubb NYC 130 E. 59th Street, Suite 14 New York, New York 10022 Tel: (646) 565-3912 Email: rdunn@hubbnyc.com | $43,238.75 |
| 640 Broadway, New York, New York | Organic Avenue 640 LLC | 640 Broadway Owners LLC c/o Winhaven Management Services Corp. 590 Madison Avenue, 21st Floor New York, NY 10022<br><br>c/o Robert Masters, Esq. 411 Theodore Femd Avenue, Suite 300 Rye, New York 10580 Tel: (914) 288-8100 Fax: (914) 428-3646 Email: rmasters@acadiarealty.com | $42,818.30 |

3

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 261 West 21st Street, New York, New York | Organic Chelsea, LLC | Chelsea 8th Avenue, LLC 347 Fifth Avenue, 16th Fl., New York, NY 10016<br><br>c/o Jeffrey C. Chancas Borah Goldstein Altschuler Nahins & Goidel, P.C. 377 Broadway, 6th Floor New York, New York 10013 Tel: (212) 431-1300 Fax: (212) 334-0960 Email: jchancas@borahgoldstein.com | $56,903.00 |
| 515 Hudson Street, New York, New York | Organic Avenue WV LLC | Double Horse, Inc. c/o Helen Wong, President 67-25 Dartmouth Street, Suite 7J Forest Hills, NY 11375<br><br>and<br><br>David A. Kaminsky, Esq. David A. Kaminsky & Assoc., P.C. 325 Broadway, Suite 504 New York, NY 10007 Tel: (212) 571-1227 Fax: (212) 571-7004 Email: david@davidakaminsky.com | $37,968.00 |

4

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 1021 Lexington Avenue, New York, New York | Organic Avenue Lexington LLC | John A. Werwaiss d/b/a Knickerbocker Realty Co. c/o Werwaiss & Co., Inc. 230 Park Avenue, # 945 New York, NY 10162<br><br>c/o Patrick Collins, Esq. Farrell Fritz 1320 RXR Plaza Uniondale, New York 11556-1320 Tel: (516) 227-0649 Email: pcollins@farrellfritz.com | $0.00 |

5

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 5 Bryant Park a/k/a 1065 Avenue of the Americas, New York, New York | OA 1065 Avenue of the Americas | Trizechahis 1065 Avenue of the Americas Property Owner LLC c/o Equity Office, 1140 Avenue of the Americas, New York, NY 10036 Attn: Property Manager<br><br>and<br><br>TrizecHahn 1065 Avenue of the Americas Property Owner LLC c/o Equity Office, 2 North Riverside Plaza, Suite 2100 Chicago, IL 60606 Attn: Chief Counsel<br><br>c/o Michael Brownstein, Esq. BLANK ROME LLP The Chrysler Building 405 Lexington Avenue New York, New York 10174-0002 Tel: (212) 885-5520 Fax: (212) 885-5002 Email: mbrownstein@blankrome.com | $72,081.00 |

6

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 461 Amsterdam Avenue, New York, New York | Organic Avenue 82 LLC | 82GFG LLC c/o A.R. Walker and Company, Inc. 225 West 80th Street, New York, NY 10024<br><br>c/o Jonathan L. Flaxer and Michael Weinstein Golenbock, Eiseman Assor Bell & Peskoe LLP 437 Madison Avenue New York, New York 10022 Tel: (212) 907-7347 Fax: (212) 754-0777 Email: jflaxer@golenbock.com mweinstein@golenbock.com | $27,342.22 |

7

| Location of Premises | Tenant | Name and address of Lease Counterparties | Cure Amount as per Debtor[2] (Amount is exclusive of amounts accrued or accruing after October 15, 2015) |
|---|---|---|---|
| 649 Lexington Avenue, New York, New York | Organic Avenue 55 LLC | 136 East 55th St., Inc. William C. Rudin, Esq. Goldfarb & Fleece LLP 345 Park Avenue, New York, New York 10154 <br><br> c/o Jonathan L. Flaxer and Michael Weinstein Golenbock, Eiseman Assor Bell & Peskoe LLP 437 Madison Avenue New York, New York 10022 Tel: (212) 907-7347 Fax: (212) 754-0777 Email: jflaxer@golenbock.com mweinstein@golenbock.com | $25,153.00 |

8

1084791v.3

# EXHIBIT II

# Sale Notice

HEARING DATE:  November 24, 2015 at 9:45 a.m.
OBJECTION DEADLINE:  November 23, 2015 at 4:00 p.m.
LIVE AUCTION DATE:  November 20, 2015 at 10:00 a.m.
ONLINE AUCTION DATE:  Nov 16, 2015, 10:00 a.m. through Nov. 20, 2015 at 5:00 p.m.
BID DEADLINE FOR LIVE AUCTION:  November 18, 2015 at 12:00 noon
CURE OBJECTION DEADLINE:  November 13, 2015 at 5:00 p.m.

Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
Garden City, New York 11530-9194
Telephone:    (516) 741-6565
Email: jmazermarino@msek.com

*Proposed Counsel for the Interim Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

ORGANIC AVENUE LLC,                                    Chapter 7

                                                       15-12787 (REG)

                              Debtor.
-----------------------------------------------------------------X

**NOTICE OF CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105, 363
AND 365 AND RULES 2002, 4001, 6004, 6006, 9008 AND 9014 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE, SEEKING ENTRY OF ORDERS:  (I)
APPROVING (A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTIONS AND SALE
HEARING, (C) SCHEDULING AUCTIONS AND SALE HEARING, AND (D)
ASSUMPTION PROCEDURES AND RELATED NOTICES; AND (II) APPROVING
THE SALE OF THE ESTATE'S ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS AND ENCUMBRANCES AND GRANTING RELATED RELIEF**

        PLEASE TAKE NOTICE that on October 30, 2015, Jil Mazer-Marino, the
chapter 7 trustee (the "Trustee") of the chapter 7 estate ("Estate") of Organic Avenue, LLC, the
above-captioned debtor (the "Debtor"), by her proposed attorneys Meyer, Suozzi, English &
Klein, P.C. ("MSEK"), filed the *Chapter 7 Trustee's Motion, Pursuant to 11 U.S.C. §§ 105, 363
and 365 and Rules 2002, 4001, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy
Procedure, Seeking Entry of Orders: (I) Approving (A) Bid Procedures, (B) Notice of Sale,
Auctions and Sale Hearing, (C) Scheduling Auctions and Sale Hearing, and (D) Assumption
Procedures and Related Notices; and (II) Approving the Sale of the Estate's Assets Free and
Clear of all Liens, Claims and Encumbrances and Granting Related Relief* (the "Motion") with

the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that on November 5, 2015, the Bankruptcy Court entered the *Order, Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Rules 2002, 4001, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure, Approving (A) Bid Procedures, (B) Notice of Sale, Auctions and Sale Hearing, (C) Scheduling Auctions and Sale Hearing, and (D) Assumption Procedures and Related Notices* that, among other things, approves the procedures to be used in connection with the Trustee's sale of the Debtor's Assets (the "Bid Procedures").

PLEASE TAKE FURTHER NOTICE that the Motion seeks, among other things, approval of the Trustee's sale of substantially all of the assets of the Debtor's Estate (the "Assets"), with such sale to be free and clear of all liens, claims, encumbrances, and interests and subject to higher and better offers under Bankruptcy Code sections 363(b), (f) and (m) and 365.

PLEASE TAKE FURTHER NOTICE that if the Trustee timely receives competing bids that are Qualified Bids (as that term is defined in the Bid Procedures), the Trustee may conduct a live auction of the Assets (the "Live Auction") and a separate on-line auction (the "On-Line Auction") for those bidders that wish to bid only for machinery and equipment.

PLEASE TAKE FURTHER NOTICE that the Trustee is soliciting bids for any and all of the Assets. All bids for the Assets must conform to the Bid Procedures annexed hereto. There are Bid Procedures for bidders that wish to submit bids for Leases, Intellectual Property, or Turn-Key Bids (as defined the Bid Procedures), which will be sold in the Live Auction. There are separate Bid Procedures for bidders that only wish to bid on machinery and equipment, which will be sold in the On-Line Auction.

PLEASE TAKE FURTHER NOTICE that all bids for Leases, Intellectual Property and Turn-Key Bids must be delivered so as to be received by the Trustee's Counsel at the address set forth below and Keen-Summit Capital Partners, LLC (via email at: hbordwin@keen-summit.com, mbordwin@keen-summit.com, rtramantano@keen-sumit.com, and dgreenspan@keen-summit.com) on or before **NOVEMBER 18, 2015 AT 5:00 P.M. (EASTERN TIME)**. You are referred to the Bid Procedures for additional requirements respecting the submission of bids.

PLEASE TAKE FURTHER NOTICE that the Live Auction will be held on **November 20, 2015 at 10:00 A.M.** at the offices of Meyer, Suozzi, English, and Klein, P.C., 1350 Broadway Suite 501, New York, New York 10018. The On-Line Auction will run from **November 16, 2015 at 10:00 A.M. through November 20, 2015 at 5:00 P.M. (EASTERN TIME)**. The Live Auction and the On-Line Auction may be adjourned at the discretion of the Trustee.

PLEASE TAKE FURTHER NOTICE that additional information respecting the Assets, the Auction process, and the Live Auction may be obtained by contacting Keen-Summit Capital Partners, LLC ("Keen-Summit"), 646- 381-9222; rtramantano@keen-sumit.com.

Additional information respecting the Machinery & Equipment and the On-Line Auction may be obtained by contacting Yellen Partners, LLC, (224) 804-6040; www.yellenpartners.com.

PLEASE TAKE FURTHER NOTICE that the Motion seeks authority to assume and assign non-residential real property leases and executory contracts. The procedures for assuming and assigning such leases and contracts are included with the Bid Procedures, including procedures for objecting to Cure Amounts (as defined in the Bid Procedures). All objections to Cure Amounts shall be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, set forth the information required under the Bid Procedures, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers). Such Cure Objection shall also be served (x) via e-mail on the Trustee (jmazermarino@msek.com), Keen-Summit (hbordwin@keen-summit.com, mbordwin@keen-summit.com, rtramantano@keen-sumit.com, and dgreenspan@keen-summit.com) and all parties that have filed a notice of appearance and request for service, and (y) via facsimile on the Office of the United States Trustee for Region 2, Attention Andy Velez-Rivera (212) 668-2255. The Cure Objection must be filed and served on or before **November 13, 2015 at 5:00 p.m. (Eastern Time)** (the "**Cure Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that a hearing (the "Sale Hearing") will be held seeking approval of the sale of the assets to the Qualified Bidder(s) that the Trustee determines to have submitted the highest or otherwise best bid(s) for the Assets.

PLEASE TAKE FURTHER NOTICE that the Sale Hearing will be held on **November 24, 2015 AT 9:45 a.m. (Eastern Time)** or as soon thereafter as counsel can be heard, before the Honorable Robert E. Gerber, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408, Courtroom 523. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

PLEASE TAKE FURTHER NOTICE THAT objections to the relief requested in the Motion ("Sale Objection"), including the Trustee's request to approve the sale of Assets free and clear of all liens, claims, encumbrances and interests and the Trustee's request to assume and assign Leases, must be in writing. Such objections shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers). Such objections shall also be served (x) via e-mail on the Trustee (jmazermarino@msek.com), Keen-Summit (hbordwin@keen-summit.com, mbordwin@keen-summit.com, rtramantano@keen-sumit.com, and dgreenspan@keen-summit.com and all parties that have filed a notice of appearance and request for service, and (y)

via facsimile on the Office of the United States Trustee., Attention Andy Velez-Rivera (212) 668-2255. The Sale Objection must be filed and served on or before **November 23, 2015 AT 5:00 P.M. (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and the Bid Procedures may be obtained by (i) contacting Keen-Summit Capital Partners, LLC 646- 381-9222; rtramantano@keen-sumit.com; (ii) accessing the Bankruptcy Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); and (iii) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

Dated: Garden City, New York
      November _, 2015

                         MEYER, SUOZZI, ENGLISH & KLEIN P.C.

                         By:    /s/ Jil Mazer-Marino
                                  Jil Mazer-Marino, Esq.
                         990 Stewart Avenue, Suite 300
                         Garden City, New York 11530-9194
                         Phone: (516) 741-6565
                         Email: jmazermarino@msek.com

                         *Proposed Counsel for the Interim Chapter 7 Trustee*

1084871