Jil Mazer-Marino, Esq.
Howard Kleinberg, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Email: jmazermarino@msek.com

*Counsel for the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In re:

**ORGANIC AVENUE LLC,**

Debtor.
-----------------------------------------------------------X

**Chapter 7**

**15-12787 (REG)**

**CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 SEEKING ENTRY OF AN ORDER AUTHORIZING THE TRUSTEE TO DESIGNATE ARROW EQUITY FUND LLC AS STALKING HORSE BIDDER AND APPROVING BREAK-UP FEE AND BID PROTECTIONS**

Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for the above-captioned debtor (the "**Debtor**") hereby submits this motion and respectfully sets forth as follows:

**PRELIMINARY STATEMENT**

1. The Trustee obtained bankruptcy court approval of bid procedures to be used in connection with the Trustee's sale of substantially all of the Debtor's assets. The Trustee has received a bid that she intends to use as the stalking horse bid at the auction. The $1,630,000.00 bid from Arrow Equity Fund LLC ("**Arrow**") is for substantially all of the Debtor's assets. The Trustee believes that the offer is substantial and establishes a meaningful floor for the auction.

2. Arrow's offer is conditioned on the Trustee obtaining approval of a break-up fee of $50,000.00 (roughly 3% of the purchase price). The offer also requires that bidding for substantially all of the assets proceed in increments of $20,000.00 and the initial minimum

overbid be $1,700,000.00 (*i.e.*, the purchase price plus the break-up fee plus $20,000.00). The Trustee believes the break-up fee and the other bid protections are reasonable in the context of this case and by this motion is requesting entry of an order authorizing the Trustee to designate Arrow as the stalking horse bidder for the Trustee's live auction and approving the break-up fee and the other bid protections. By way of clarification, notwithstanding the stalking horse offer, the Trustee intends to entertain bids that are for less than all of the assets at the live auction in addition to bids for substantially all of the Debtor's assets.

3. The Trustee's sale process is proceeding on an expedited basis with the auction scheduled for November 20, 2015. In that connection, filed contemporaneously herewith, is an application for entry of an order shortening time for notice of the hearing on this Motion. Specifically, the Trustee respectfully requests that the hearing on this motion be held on the afternoon of November 17, 2015. Notice of this motion and the application to shorten notice is being emailed to all parties that filed a notice of appearance in this case and the Debtor's counsel and is being faxed to the Office of the United States Trustee.

## JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").

## BACKGROUND

A. **The Bankruptcy Case**

6. On October 15, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

7.  On October 16, 2015, the Trustee was appointed as the interim chapter 7 trustee in the Debtor's case.

8.  The Trustee qualified as permanent Trustee after the Bankruptcy Code section 341 meeting of creditors held on November 9, 2015.

### B.  The Debtor's Business

9.  The Debtor was in the business of producing and retailing "grab and go" organic or all natural juices, cleanses, and food items. The Debtor produced its products at its commissary located in Long Island City, New York and sold its products at retail boutiques in prime Manhattan locations that operated under the name Organic Avenue. The Debtor directly or indirectly, through wholly owned limited liability companies, leases the commissary space and the retail locations.

### C.  The Sale Process

10.  On November 20, 2015, the Trustee is conducting a live auction (the "**Live Auction**") to entertain bids for all or any portion of the Debtor's leases, intellectual property, certain other assets and for turn-key bids (*i.e.*, bids for some combination of leases, intellectual property and/or machinery and equipment). The Bid Deadline is November 18, 2015. The Trustee is also conducting an on-line auction (the "**On-Line Auction**" and together with the Live Auction, the "**Auctions**") for bids solely for the Debtor's machinery and equipment. The on line auction will run from November 16, 2015 through November 20, 2015.

11.  The deadline for submitting bids for the Live Auction is November 18, 2015.

12.  On November 5, 2015, this Court entered an order approving the bid procedures (the "**Bid Procedures**") to be used in connection the Trustee's sale of substantially all of the Debtor's assets. Due to the compressed marketing period, the Trustee did not contemplate that a stalking horse bidder would be located and a purchase agreement negotiated prior to the Bid

3

Deadline. Accordingly, the Bid Procedures do not include procedures to designate a stalking horse bidder; however, the Bid Procedures contemplate modifications to the procedures and specifically provide that:

> The Trustee reserves the right to modify the Bid Procedures at or prior to the Auction. The Trustee may impose such other terms and conditions for purposes of the Auction and the Bid Procedures as she may determine, in the exercise of her fiduciary obligations, to be in the best interests of the Debtor's estate and creditors.

### D.  The Stalking Horse Bidder and the Bid Protections

13. The proposed stalking horse bidder is Arrow Equity Fund LLC, a newly formed New Jersey limited liability company. The proposed asset purchase agreement is attached hereto as Exhibit "A."

14. The Material Terms of the proposed asset purchase agreement are as follows:

**Purchase Price**   $1,630,000.00.

**Acquired Assets:**   All of the Debtor's estate's right, title and interest in and to all existing assets of the Debtor (collectively, the "**Acquired Assets**"), including without limitation, all machinery and equipment, intellectual property, trade names, domain name, website, and customer lists, together with all of the non-residential real property leases set forth on Schedule 1 to the Purchase Agreement (the "**Assumed Leases**"). Exluded from the Acquired Assets are the Debtor's estate's cash, cash equivalents, the Debtor's estate's interests in any security deposits under its non-residential real property leases (including but not limited to the security deposits under the Assumed Leases), or any of the Debtor's estate's causes of action under chapter 5 of the Bankruptcy Code.

**Intended use of Assets**   Buyer desires to use the Acquired Assets to operate retail stores under the name "Organic Avenue" that sell juice, yogurt and related products produced by Norman's Dairy LLC d/b/a Norman's Dairy ("**Norman's Dairy**")

**Closing**   The Closing shall take place within three (3) Business days after the entry of the Sale Order or as otherwise agreed to by the parties.

15. The proposed purchase agreement includes the following bid protections:

**Break-Up Fee:**   $50,000.00 (the "**Break-Up Fee**"), which shall constitute an allowed administrative expense claim pursuant to Bankruptcy Code section 503(b)

4

| | |
|---|---|
| | and shall be payable to the Buyer from the proceeds of any alternative sale transaction(s) |
| **Minimum Initial Overbid:** | $1,700,000.00 (i.e., Purchase Price plus Break-Up Fee plus $20,000) (the "**Minimum Initial Overbid**") |
| **Bid Increments for Bids for all Acquired Assets:** | $20,000 (the "**Minimum Bid Increment**") |
| **Credit Toward Purchase Price:** | If buyer is the Successful Bidder (as defined in the bid procedures approved by the Bid Procedures Order) as a result of submitting an additional bid or bids at the auction of the Acquired Assets that increase the Purchase Price, then the Break-Up Fee shall be deemed a credit against the Final Purchase Price. |

16. The Purchase Agreement contemplates that the Trustee will entertain bids that are similar to the Purchase Agreement in that they are for substantially all of the assets and in such case the Minimum Initial Overbid and $20,000 Bid Increment would apply. However, the Purchase Agreement acknowledges that the Trustee is entertaining bids for individual assets and leases and, the Minimum Initial Overbid and $20,000 Bid Increment would not apply to the On-line auction or "piecemeal bids."

## BASIS FOR RELIEF[1]

### A. Bid Procedures

17. Courts have made clear that a trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *C.f. Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are

---

[1] Capitalized terms used but not defined in this section of the motion shall have the meaning ascribed to them in the Bid Procedures.

"presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).

18. Bankruptcy courts have approved bidding incentives similar to the Break-Up Fee under the business judgment rule, which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., Integrated Res., Inc.*, 147 B.R. at 656-62 (approving break-up fee expense reimbursement and noting that break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *995 Fifth Ave. Assocs.*, 96 B.R. at 28 (respecting the debtors' business judgment that bidding incentives were "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal citation and quotation marks omitted).

19. Courts have authorized debtors in possession to choose a stalking horse bidder after approval of the Bid Procedures and therefore there is a basis for allowing a chapter 7 trustee to do the same in certain circumstances. *See, e.g., In re Footstar, Inc.*, No. 04-22350 (Bankr. S.D.N.Y. Apr. 5, 2004), ECF No. 3 16 (approving a break-up fee if the debtors, after consultation with the DIP lenders and the creditors' committee, determined in their business judgment to enter into a stalking horse asset purchase agreement); *In re Rhythms NetConnections Inc.*, No. 01-14283 (Bankr. S.D.NY. Aug. 8, 2001), ECF No. 51 (approving a break-up fee if the debtors determined in their sound business judgment that it was in the best interests of the estates to enter into a stalking horse asset purchase agreement).

20. The Trustee believes it is in the best interests of the Debtor's estate and creditors

to designate Arrow as the stalking horse bidder and to modify the bid procedures to include the Break-Up Fee, an initial minimum overbid of $1,700,000, and to fix the bid increments for the auction of substantially all of the assets at $20,000.00 (although this increment would not be applied to the on-line auction or bids for less than substantially all of the assets). The Trustee believes that having a stalking horse bid of $1,630,000.00 establishes a substantial floor for the live auction and will assist the Trustee to obtain the highest or otherwise best bid for the Debtor's assets. The Trustee believes that the Break-Up Fee is reasonable in amount in light of the facts that Arrow is not entitled to receive any expense reimbursement and the Break-Up Fee is approximately 3% of the Purchase Price.

## NOTICE

21. The Trustee provided notice of this Motion to the Office of the United States Trustee and all parties that filed in this case a notice of appearance and request for service of papers or other pleading in this case. The Trustee respectfully submits that no further notice of this motion is necessary.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and appropriate.

| | |
|---|---|
| **Dated: Garden City, New York**<br>**November 16, 2015** | **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**<br>*Counsel for the Chapter 7 Trustee*<br><br>By: */s/ Jil Mazer-Marino*<br>    Jil Mazer-Marino<br>    Howard B. Kleinberg<br>990 Stewart Avenue, Suite 300<br>Garden City, New York 11530-9194<br>Telephone: (516) 741-6565 |

1087187

# EXHIBIT A

# ASSET PURCHASE AGREEMENT
(to be supplied)

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**In re:**

**ORGANIC AVENUE LLC,**

                             **Debtor.**
-----------------------------------------------------------------X

**Chapter 7**

**15-12787 (REG)**

### ORDER AUTHORIZING THE TRUSTEE TO DESIGNATE ARROW EQUITY FUND LLC AS STALKING HORSE BIDDER AND APPROVING BREAK-UP FEE AND BID PROTECTIONS

Upon the motion (the "**Motion**") of Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for Organic Avenue LLC, the above-captioned chapter 7 debtor (the "**Debtor**"), for an order under sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing the Trustee to designate Arrow Equity Fund LLC as the stalking horse bidder and approving a break-up fee and bid protections, and upon the record of the hearing (the "**Hearing**") held on November __, 2015 with respect to the Motion; and any objections having been withdrawn, resolved, or overruled; and good and sufficient notice of the Motion and the Hearing having been given and no other or further notice of the Motion or the Hearing being required; and after due deliberation, and sufficient cause appearing therefor it is hereby

**ORDERED**, the Motion is granted to the extent set forth herein; and it is further

**ORDERED**, that the Trustee is authorized to designate Arrow Equity Fund LLC as the stalking horse bidder, on the terms and conditions set forth in the purchase agreement annexed to the Motion as Exhibit "A," for the Live Auction (as such term is defined in the Motion) to be conducted by the Trustee; and it is further

**ORDERED**, the Break-Up Fee, Minimum Initial Overbid, and Minimum Bid Increment all as defined in the Motion are approved.

Dated: New York, New York
     November __, 2015

_____
HON. ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

1087592